IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
M WAIKIKI LLC,                                          :
                                                        :
    Plaintiff,                       :   CASE NO. 11-CV-6488(BSJ)
                                                        :
    -v-                              :
                                                        :
MARRIOTT HOTEL SERVICES, INC.,                          :
I.S. INTERNATIONAL, INC. and IAN SCHRAGER,              :
                                                        :
    Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                        :
MARRIOTT HOTEL SERVICES, INC.,                          :
                                                        :
    Counterclaim Plaintiff,          :
                                                        :
    -v-                              :
                                                        :
M WAIKIKI LLC,                                          :
                                                        :
    Counterclaim Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DECLARATION OF DAMIAN MCKINNEY

    I, Damian McKinney, subject to the laws concerning perjury, hereby submit this Declaration pursuant to 28 U.S.C. § 1746, as follows:

    1.    My name is Damian McKinney.  I am over the age of eighteen years and have never been convicted of a felony or a crime involving moral turpitude.  I have personal knowledge and/or knowledge based on my review of relevant documents of, and am fully competent to testify to, the facts stated herein.  I make this Declaration in Support of the Motion to Transfer Venue ("Motion") filed by M Waikiki LLC ("M Waikiki") in the above-captioned matter (the "Action").

**A.    M Waikiki Acquires The Hotel And Engages Defendants To Renovate And Manage It.**

2.      I am the Manager of eRealty Fund LLC, which is the entity that manages M Waikiki, plaintiff in the Action.  M Waikiki is a Hawaii limited liability company created in 2006 to acquire a hotel located in Honolulu, Hawaii, known today as The Modern Honolulu (the "Hotel").  M Waikiki purchased the Hotel for approximately $112 million.  M Waikiki spent an additional $128 million renovating the Hotel.

3.      On July 9, 2008, M Waikiki entered into two separate agreements:  (1) the Design and Technical Services and Pre-Opening Agreement by and among M Waikiki, Marriott Hotel Services, Inc. ("Marriott"), and I.S. International, LLC ("Schrager LLC") ("TSA"); and (2) the Management Agreement by and between Marriott and M Waikiki ("Management Agreement"). Pursuant to the TSA, Marriott, Schrager LLC, and Ian Schrager (together, "Defendants") were to, among other things, provide services regarding:  (1) design and construction of the Hotel; (2) design and procurement of the furniture, fixtures, systems and equipment for the Hotel; and (3) pre-opening promotion, advertising and marketing.  Pursuant to the TSA, Ian Schrager was to be personally involved in the design and direction of the Hotel and be available for key meetings. Pursuant to the Management Agreement, Marriott was to, among other things, operate the Hotel in a reasonable and prudent manner and diligently pursue feasible measures to operate the Hotel in accordance with the annual business plan.

**B.    M Waikiki Files The Action And Terminates The Management Agreement.**

4.      Defendants failed to comply with their obligations, and, thus, on May 26, 2011, M Waikiki filed the Action in the Supreme Court of the State of New York, County of New York ("New York State Court").

5.     M Waikiki sued Defendants for breaches of the TSA and their fiduciary duties arising out of the principal-agency relationship created by the TSA.  M Waikiki also sued Marriott for breaching its contractual duties and fiduciary duties arising out of the principal-agency relationship created by the Management Agreement by failing to manage the Hotel in a reasonable and prudent manner and act in the best interests of M Waikiki.

6.     The Hotel's performance continued to deteriorate subsequent to filing the Action. As of August 2011, the Hotel was still under-performing its competitive set by a considerable margin.   The Hotel, under Marriott's management, was suffering losses that were simply unsustainable by M Waikiki.  Accordingly, on August 28, 2011, fearing the total loss of its business under the continued mismanagement of Marriott, M Waikiki terminated the Management Agreement and Marriott's agency, assumed control of the Hotel, and replaced Marriott with Modern Management Services, LLC ("Modern Management") as the manager of the Hotel.

C.     **M Waikiki Files For Bankruptcy And Removes The Action To This Court.**

7.     On August 31, 2011 ("Petition Date"), M Waikiki filed for bankruptcy relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Hawaii ("Hawaii Bankruptcy Court").  M Waikiki filed the Bankruptcy Case because, in part, reinstatement of Marriott as manager of the Hotel would have significantly injured its equity in the Hotel.

8.     On September 19, 2011, M Waikiki removed the Action to the United States District Court for the Southern District of New York.

**D.**     **In The "Interest Of Justice" And For The "Convenience Of The Parties" The Court Should Transfer This Action To The District Of Hawaii.**

9.     M Waikiki requests the Court to transfer this case to the United States District Court for the District of Hawaii ("Hawaii District Court") because it would serve the "interest of justice."     Specifically, M Waikiki believes that a transfer would further the efficient administration and resolution of both the Bankruptcy Case and the Action because the Hawaii District Court and the Hawaii Bankruptcy Court will be in the best position to coordinate the numerous proceedings in the Bankruptcy Case and the proceedings in the Action to ensure the just, speedy, and efficient resolution of all issues between M Waikiki and Marriott.

10.     Indeed, the Hawaii Bankruptcy Court is already addressing issues related to the Action.  For example, on September 1, 2011, M Waikiki filed, among other things, its Motion to Reject the Management Agreement with Marriott ("Motion to Reject") because of, in large part, Defendants' conduct giving rise to the Action.  In connection with the Motion to Reject, discovery will be conducted concerning Marriott's operation of the property prior to the Petition Date and actions it has taken after the Petition Date.  These issues are also relevant to the issues pending in the Action.  It is M Waikiki's position that the Hawaii courts can best ensure all these interrelated issues are litigated and resolved efficiently and expeditiously.

11.     In addition, Marriott has filed with the Bankruptcy Court a Motion for Relief from the Stay to Enforce Specific Provision in the Temporary Restraining Order ("Motion to Enforce").  In particular, Marriott is asking the Hawaii Bankruptcy Court to enforce certain provisions of the TRO that was entered by the New York State Court in the Action. Accordingly, the Hawaii Bankruptcy Court is already addressing issues arising out of the Action. In connection with the Motion to Enforce, Marriott and M Wakiki are conducting depositions of several people including:  (1) Mike Rock, the formal general manager of the Hotel under

Marriott; (2) Roula McCann, former director of finance at the Hotel; (3) Marriott's corporate representative; (4) Vittal Calamur, director of transitions and new openings at Bond HD; (5) Christian Oles, the director of security at the Hotel; (6) Khara Markham, the new director of finance at the Hotel; and (7) Shastri Maraj, Marriott's IT consultant. The above-referenced depositions are being conducted this week in Honolulu, Hawaii.

12.    In general, the acts and omissions forming the factual bases for M Waikiki's claims in the Action largely occurred in Honolulu, Hawaii. For example, the facts underlying M Waikiki's claims under the TSA occurred in Honolulu because Defendants' services under the TSA were largely provided on-site at the Hotel. Further, the facts underlying M Waikiki's and Marriott's competing claims also occurred in Honolulu because, among other things, Marriott's day-to-day management services were largely provided by its employees on-site at the Hotel and any alleged misconduct associated with the transition of the management of the Hotel in August 2011 also occurred, if at all, on-site at the Hotel.

13.    A transfer to the Hawaii District Court would also be "convenient for the parties" because the majority of the witnesses material to the Action either reside or work – at least part time – in Hawaii. Prior to the Petition Date, Marriott employed the staff at the Hotel. More than 200 of these employees have become employees of the new manager, Modern Management Services LLC ("Modern Management"). Many of these individuals will be material witnesses in the Action and in proceedings in the Bankruptcy Case. In addition, the persons involved in the transition of management of the Hotel (which include me, M Waikiki's asset manager, Bond HD, Modern Management, and certain third-party independent contractors in the areas of security and information technology) will also be material witnesses in both the Action and the proceedings in the Bankruptcy Case.

14.     It will also be more "convenient for the parties" if the Action is transferred because the Hotel's books and records are located in Hawaii. Those books and records contain the most relevant documents in the Action. The Hawaii Bankruptcy Court is already addressing issues concerning certain of those documents in connection with Marriott's Motion to Enforce.

15.     In addition, Hawaii is a convenient forum for Marriott because Marriott has been actively participating in the Bankruptcy Case. As stated above, Marriott filed its Motion to Enforce with the Hawaii Bankruptcy Court seeking to enforce provisions of the TRO entered by the New York State Court in the Action. The Hawaii Bankruptcy Court has already had a preliminary hearing on the motion, a status conference was held on Wednesday, October 5, 2011, and a final hearing on the motion is scheduled for Thursday, October 13, 2011.

16.     Moreover, Marriott is a member of the unsecured creditors committee appointed in the Bankruptcy Case. Marriott has already retained at least two law firms to represent it in connection with the issues in the Bankruptcy Case. In fact, I understand that Jenner & Block, counsel to Marriott in the Action, is taking the lead role for Marriott in the depositions being conducted in connection with the Motion to Enforce.

17.     Furthermore, Marriott has expressed its intent to assert a claim in excess of $70 million against M Waikiki in the Bankruptcy Case. My understanding is that Marriott will need to file a proof of claim in the Bankruptcy Case to preserve its ability to seek damages against M Waikiki. It is M Waikiki's position that the Hawaii courts are in the best position to coordinate proceedings in connection with objections to Marriott's proof of claim and the issues in the Action. Indeed, many of those issues will overlap and the Hawaii courts can best address how to manage such parallel proceedings, along with all other issues that may arise in the future between Marriott and M Waikiki in the Bankruptcy Case.

18.     The Bankruptcy Case also involves a number of vendors who provided goods or services to the Hotel.  They are creditors and parties in interest in the Bankruptcy Case.  Some of them are expected to be material witnesses in the Action and proceedings in the Bankruptcy Case.

19.     Attached as Exhibit 1 is a true and correct copy of the TSA.

20.     Attached as Exhibit 2 is a true and correct copy of the Management Agreement.

21.     Attached as Exhibit 3 is a true and correct copy of M Waikiki's Memorandum Regarding The Terminability of Marriott's Management Agreement and the Revocability of Marriott's Agency Thereunder, dated August 30, 2011.

22.     Attached as Exhibit 4 is a true and correct copy of the Motion to Reject.

23.     Attached as Exhibit 5 is a true and correct copy of M Waikiki's List of the 20 Largest Unsecured Creditors, dated September 6, 2011, which it filed in the Bankruptcy Case.

24.     Attached as Exhibit 6 is a true of correct copy of Marriott's Opposition Memorandum to Debtor's Motion to Reject, dated September 6, 2011.

25.     Attached as Exhibit 7 is a true and correct copy of the Notice of Appointment of Committee of Creditors, dated September 9, 2011.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _8th_ day of October, 2011.

Damian McKinney

5252491.21
2147-02