# EXHIBIT 2

FINAL

EDITION
WAIKIKI, HAWAII

# MANAGEMENT AGREEMENT

by and between

**MARRIOTT HOTEL SERVICES, INC.**

as "MANAGER"

and

**M WAIKIKI LLC**

as "OWNER"

Dated as of July 9, 2008

401502v9



# TABLE OF CONTENTS

PAGE

**ARTICLE I    MANAGEMENT OF THE HOTEL**

| | | |
|---|---|---|
| 1.01 | Engagement | 1 |
| 1.02 | Delegation of Authority | 2 |
| 1.03 | Construction of the Hotel Improvements and Flagging of the Hotel | 2 |
| 1.04 | Management Responsibilities | 3 |
| 1.05 | Licenses, Permits and Agreements | 4 |
| 1.06 | Employees | 4 |
| 1.07 | Owner's Right to Inspect | 6 |
| 1.08 | Regular Meetings | 6 |
| 1.09 | System Standards and Criteria for Approvals | 7 |
| 1.10 | Central Office Services | 7 |
| 1.11 | Chain Services | 7 |
| 1.12 | Related Party Transactions | 8 |
| 1.13 | Profit and Cost Transactions Relating to the Hotel | 8 |
| 1.14 | Marriott Rewards Program | 9 |
| 1.15 | Procurement Rebates and Fees | 10 |
| 1.16 | Limitations on Manager's Authority | 10 |

**ARTICLE II    TERM**

| | | |
|---|---|---|
| 2.01 | Term | 11 |
| 2.02 | Performance Termination | 11 |
| 2.03 | Limitation on Termination by Owner | 13 |

**ARTICLE III    COMPENSATION OF MANAGER**

| | | |
|---|---|---|
| 3.01 | Management Fees | 14 |
| 3.02 | Distribution of Operating Profit | 14 |

**ARTICLE IV    ACCOUNTING AND REPORTING MATTERS**

| | | |
|---|---|---|
| 4.01 | Accounting and Interim Distributions | 14 |
| 4.02 | Books and Records; Annual Operating Statement | 15 |
| 4.03 | Hotel Accounts and Expenditures | 16 |
| 4.04 | MBS Systems | 17 |
| 4.05 | Direct Deductions and Direct Deductions Report | 18 |
| 4.06 | Annual Profit Transactions Report | 18 |
| 4.07 | Chain Services Report | 18 |
| 4.08 | Business Plan | 18 |
| 4.09 | Working Capital | 20 |



# TABLE OF CONTENTS

|   |   | PAGE |
|---|---|---|
| 4.10 | FIXED ASSET SUPPLIES | 20 |
| 4.11 | REAL ESTATE AND PERSONAL PROPERTY TAXES | 21 |

**ARTICLE V    REPAIRS, MAINTENANCE AND REPLACEMENTS**

| 5.01 | REPAIRS AND MAINTENANCE COSTS WHICH ARE EXPENSED | 21 |
|---|---|---|
| 5.02 | FF&E RESERVE | 22 |
| 5.03 | CAPITAL EXPENDITURES | 25 |
| 5.04 | OWNERSHIP OF REPLACEMENTS | 26 |
| 5.05 | MANAGEMENT OF HOTEL RENOVATION AND CONSTRUCTION PROJECTS | 26 |

**ARTICLE VI    INSURANCE**

| 6.01 | PROPERTY INSURANCE | 27 |
|---|---|---|
| 6.02 | OPERATIONAL INSURANCE | 30 |
| 6.03 | GENERAL CONDITIONS OF MANAGER'S INSURANCE PROGRAM | 32 |

**ARTICLE VII    DAMAGE, REPAIR AND CONDEMNATION**

| 7.01 | DAMAGE AND REPAIR | 32 |
|---|---|---|
| 7.02 | CONDEMNATION | 33 |

**ARTICLE VIII    OWNERSHIP OF THE HOTEL**

| 8.01 | OWNERSHIP OF THE HOTEL | 33 |
|---|---|---|
| 8.02 | MORTGAGES | 34 |
| 8.03 | SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT | 35 |
| 8.04 | NO COVENANTS, CONDITIONS OR RESTRICTIONS | 36 |
| 8.05 | LIENS; CREDIT | 36 |

**ARTICLE IX    DEFAULTS**

| 9.01 | EVENTS OF DEFAULT | 37 |
|---|---|---|
| 9.02 | REMEDIES | 38 |
| 9.03 | ADDITIONAL REMEDIES | 39 |

**ARTICLE X    ASSIGNMENT AND SALE**

| 10.01 | ASSIGNMENT | 39 |
|---|---|---|
| 10.02 | SALE OF THE HOTEL | 40 |



## TABLE OF CONTENTS

PAGE

**ARTICLE XI    MISCELLANEOUS**

| | | |
|---|---|---|
| 11.01 | RIGHT TO MAKE AGREEMENT | 43 |
| 11.02 | CONSENTS AND COOPERATION | 43 |
| 11.03 | RELATIONSHIP | 43 |
| 11.04 | APPLICABLE LAW AND VENUE | 44 |
| 11.05 | RECORDATION | 44 |
| 11.06 | HEADINGS | 44 |
| 11.07 | NOTICES | 44 |
| 11.08 | ENVIRONMENTAL MATTERS | 45 |
| 11.09 | CONFIDENTIALITY | 47 |
| 11.10 | PROJECTIONS | 47 |
| 11.11 | ACTIONS TO BE TAKEN UPON TERMINATION | 47 |
| 11.12 | TRADEMARKS AND INTELLECTUAL PROPERTY | 50 |
| 11.13 | TRADE AREA RESTRICTION AND COMPETING FACILITIES | 52 |
| 11.14 | WAIVER | 53 |
| 11.15 | PARTIAL INVALIDITY | 53 |
| 11.16 | SURVIVAL | 53 |
| 11.17 | NEGOTIATION OF AGREEMENT | 53 |
| 11.18 | ESTOPPEL CERTIFICATES | 54 |
| 11.19 | RESTRICTIONS ON OPERATING THE HOTEL IN ACCORDANCE WITH SYSTEM STANDARDS | 54 |
| 11.20 | DECISION BY EXPERTS | 54 |
| 11.21 | WAIVER OF JURY TRIAL AND CONSEQUENTIAL AND PUNITIVE DAMAGES | 55 |
| 11.22 | COUNTERPARTS | 55 |
| 11.23 | EXTRAORDINARY EVENTS | 56 |
| 11.24 | ENTIRE AGREEMENT | 56 |
| 11.25 | NON-HOTEL MARKETING ACTIVITIES | 56 |
| 11.26 | KEY MONEY | 56 |
| 11.27 | ADJUSTMENT TO OWNER'S PRIORITY AND PERFORMANCE TERMINATION THRESHOLD | 57 |

**ARTICLE XII    DEFINITION OF TERMS**

| | | |
|---|---|---|
| 12.01 | DEFINITION OF TERMS | 57 |



## TABLE OF CONTENTS

                                                                                          **PAGE**

Exhibit A    -  Legal Description of the Site
Exhibit B    -  Listing of Central Office Services
Exhibit C    -  Listing of Current Chain Services
Exhibit C-1  -  Listing of Current Marketing Fee Services
Exhibit D    -  Listing of Current Direct Deductions
Exhibit E    -  Permitted Exceptions
Exhibit F    -  Equity Ownership of Owner
Exhibit G    -  Form of Memorandum of Management Agreement
Exhibit H-1  -  Description of Restricted Area One
Exhibit H-2  -  Map of Restricted Area One
Exhibit I    -  Registered Marks



## MANAGEMENT AGREEMENT

**THIS MANAGEMENT AGREEMENT** ("Agreement") is executed as of the 9th day of July, 2008 ("Effective Date"), between **M WAIKIKI LLC** ("Owner"), a Hawaii limited liability company, with offices at c/o eRealty Fund, LLC, 12780 High Bluff Drive, Suite 160, San Diego, California 92130, and **MARRIOTT HOTEL SERVICES, INC.** ("Manager"), a Delaware corporation, with a mailing address at c/o Marriott International, Inc., 10400 Fernwood Road, Bethesda, Maryland 20817.

### R E C I T A L S

A. Owner is the owner of fee title to the parcel of real property (the "Site") described on Exhibit A, which is attached to this Agreement and incorporated by reference herein. Owner will improve the Site with a building or buildings containing approximately 353 Guest Rooms, a lobby, restaurants, bars, lounges, meeting rooms, spa, administrative offices, parking, and certain other amenities and related facilities (collectively, the "Hotel Improvements"). The Site and the Hotel Improvements to be constructed thereon by Owner, in addition to certain other rights, improvements, and personal property as more particularly described in the definition of "Hotel" in Section 12.01 hereof, are collectively referred to as the "Hotel."

B. All capitalized terms used in this Agreement shall have the meanings ascribed to such terms in Section 12.01 hereof.

C. Owner desires to engage Manager to manage and operate the Hotel and Manager desires to accept such engagement upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Owner and Manager agree as follows.

### ARTICLE I

### MANAGEMENT OF THE HOTEL

1.01 Engagement

Owner hereby engages Manager to supervise, direct and control the management and operation of the Hotel for the Term. Manager accepts said engagement and agrees to manage and operate the Hotel during the Term in accordance with the terms and conditions hereinafter set forth.



1.02    Delegation of Authority

The operation of the Hotel shall be under the exclusive supervision and control of Manager which, except as otherwise specifically provided in this Agreement, shall be responsible for the proper and efficient operation of the Hotel. In fulfilling its obligations under this Agreement, Manager shall act as a reasonable and prudent operator of the Hotel, having regard for the status of the Hotel and maintaining the System Standards. Manager shall operate the Hotel with the goal of achieving long-term profitability, subject to the requirement that the Hotel be managed, operated and maintained as part of the EDITION Hotel System (except as otherwise set forth in Section 1.03.B) and in accordance with System Standards. Subject to the terms hereof, Manager shall have discretion and control in all matters relating to management and operation of the Hotel, free from interference, interruption or disturbance, but in all respects subject to the provisions of this Agreement.

1.03    Construction of the Hotel Improvements and Flagging of the Hotel

A.    Owner agrees to complete the construction and renovation of the Hotel, including the Flagging Renovation, in accordance with the Technical Services Agreement. Owner and Manager agree that their rights and obligations under this Agreement with respect to the construction and pre-opening stages of the Hotel shall be governed by the Technical Services Agreement, in addition to those provisions in this Agreement that are otherwise generally applicable during the Term.

B.    Beginning on the Effective Date and through the Flagging Date, Owner and Manager agree that Manager shall not be obligated to brand the Hotel as an EDITION hotel, use EDITION Trademarks in the name of the Hotel, identify the Hotel as a member of the EDITION Hotel System, or do any other thing that would indicate that the Hotel is affiliated with the EDITION Hotel System; however, the Hotel will otherwise be operated in accordance with System Standards, and otherwise incorporate the sales, marketing and operating philosophies, techniques and procedures (including the inclusion in any central reservation system and/or marketing system, all on an unbranded basis, utilized by Manager and its Affiliates for the EDITION Hotel System), which will be used by Manager in the operation of the EDITION Hotel System. Provided that Owner satisfies all the conditions to the Flagging Date set forth in the Technical Services Agreement, Manager shall cause the Hotel to be branded with EDITION Trademarks in the name of the Hotel by no later than December 31, 2011. Manager shall provide Owner with written notice approximately one hundred eighty (180) days prior to the Flagging Date, and from and after the date of such notice Owner shall diligently pursue efforts to cause the conditions to the Flagging Date set forth in the Technical Services Agreement to be achieved by the Flagging Date proposed in such notice. Notwithstanding anything in this Agreement to the contrary, during the period (the "Unbranded Period") from the Opening Date to the earlier of (i) the Flagging Date, or (ii) such time as Owner ceases to diligently pursue efforts to cause the conditions to the Flagging Date set forth in the Technical Services Agreement to be achieved as and when required pursuant to the immediately preceding sentence, the Base Management Fee shall be reduced to three percent (3%) of Gross Revenues, and the Incentive Management Fee shall be reduced to twenty percent (20%) of Available Cash Flow.

2



For the avoidance of doubt, upon expiration of the Unbranded Period, the Base Management Fee shall equal four percent (4%) of Gross Revenues and the Incentive Management Fee shall equal twenty-five percent (25%) of Available Cash Flow.

1.04    Management Responsibilities

A.    Manager shall manage the Hotel in accordance with the standards set forth in Section 1.02 and perform each of the following functions (the costs and expenses of which shall be Deductions) with respect to the Hotel:

1.   Establish employment policies and recruit, employ (subject to Section 1.06.E), supervise, direct and discharge the employees at the Hotel.

2.   Establish prices, rates and charges for services provided in the Hotel, including Guest Room rates and rates for commercial space and other space in the Hotel.

3.   Establish and revise, as necessary, administrative policies and procedures, including policies and procedures for the control of revenue and expenditures, for the purchasing of supplies and services, for the control of credit, and for the scheduling of maintenance, and verify that the foregoing procedures are operating in a sound manner.

4.   Receive, hold and disburse funds, maintain bank accounts and make payments on accounts payable and handle collections of accounts receivable.

5.   Subject to Section 1.03.B, undertake publicity and promotion, arrange for and supervise public relations and advertising, prepare marketing plans, and make available to the Hotel the benefits of various marketing and guest loyalty and recognition programs in use in the EDITION Hotel System as they may exist from time to time, such as the Marriott Rewards Program.

6.   Procure all Inventories and replacement Fixed Asset Supplies.

7.   Prepare and deliver interim accountings, annual accountings, Annual Operating Statements, Building Estimates, FF&E Estimates, and such other information as is required by this Agreement and be available at reasonable times to discuss generally with Owner the above-listed items as well as the operations at the Hotel.

8.   Plan, execute and supervise repairs, maintenance and FF&E purchases at the Hotel in accordance with the terms of Article V of this Agreement.

9.   Provide, or cause to be provided, risk management services relating to the types of insurance required to be obtained or provided by Manager under this Agreement.

10.   Provide food and beverage services.

3



11. Except as provided in the Technical Services Agreement, use reasonable efforts to obtain and keep in full force and effect, either in Manager's name or in Owner's name, as may be approved by Manager or as required by applicable law, any and all operating licenses and permits.

12. Subject to Section 1.16, enter into leases, licenses and concessions for the Hotel (including rooftops and all other spaces related to the Hotel), which Manager may execute on behalf of the Hotel or Owner.

B. Manager will use its reasonable efforts to comply with and abide by all applicable Legal Requirements (except for certain Legal Requirements which are Owner's responsibility under Section 5.03 and Section 11.08 hereof) pertaining to its operation of the Hotel. Owner will use its reasonable efforts to comply with and abide by all applicable Legal Requirements pertaining to the Hotel Improvements or to Owner's ownership interest in the Hotel (including, without limitation, Owner's obligations under Section 5.03 and Section 11.08 hereof). Either Owner or Manager shall have the right, but not the obligation, in its reasonable discretion, to contest or oppose, by appropriate proceedings, any such Legal Requirements. The reasonable expenses of any such contest of a Legal Requirement by Owner or Manager shall be paid from Gross Revenues as Deductions.

1.05   Licenses, Permits and Agreements

Upon request by Manager, Owner shall execute, without charge, (i) applications for licenses and permits necessary for operation of the Hotel, and (ii) any leases, agreements or contracts relating to the operation of the Hotel, provided that such leases, agreements and contracts comply with the applicable provisions of this Agreement. Owner shall be responsible for obtaining all permits and other approvals required for construction and opening of the Hotel, such as the building permit, occupancy permit and elevator permits for the Hotel. Manager shall be responsible for obtaining all permits and licenses required for the operation of the Hotel, such as the hotel operating license, liquor licenses and other miscellaneous licenses.

1.06   Employees

A. All personnel employed at the Hotel shall, at all times from and after the Effective Date, be the employees of Manager (or one of its Affiliates). Manager shall have absolute discretion with respect to all personnel employed at the Hotel, including, without limitation, decisions regarding hiring (except as set forth in Section 1.06.E below), promoting, transferring, compensating, supervising, terminating, directing and training all employees at the Hotel, and, generally, establishing and maintaining all policies relating to employment. Manager will use reasonable due care and diligence in the selection, hiring, training, discharge and supervision of all employees at the Hotel, and Manager will ensure that its employment policies comply with all applicable Legal Requirements. With respect to food and beverage operations at the Hotel, Manager shall engage persons to manage such operations who are qualified and have experience managing such operations consistent with System Standards. All information regarding individual employees, such as employee records and individual compensation information, is



proprietary to Manager and confidential and shall not be disclosed to Owner except as required by law. Manager shall be permitted to provide free accommodations and amenities to its employees and representatives visiting the Hotel in connection with its management or operation, provided that Manager shall use reasonable efforts to avoid displacing paying guests of the Hotel, and implement policies to enforce the same. No person shall otherwise be given gratuitous accommodations or services without prior joint approval of Owner and Manager except in accordance with usual practices of the hotel and travel industry. If Manager shall be required to recognize a labor union, or to enter into collective bargaining with a labor union, with respect to the Hotel, it shall (i) promptly notify Owner, (ii) promptly meet with Owner to discuss a strategy for negotiating any collective bargaining agreement with a labor union, (iii) in good faith take into account Owner's suggestions and recommendations, and (iv) otherwise keep Owner apprised of the course of any such union negotiations. Subject to the foregoing, Manager shall have authority to negotiate and enter into such agreements and Owner shall have no right of approval or disapproval; provided that the term of any such agreement shall not extend beyond the Term without the prior written consent of Owner.

   B. All settlements or payments of Employee Claims (in excess of amounts covered by applicable insurance) shall be made by Manager exercising its reasonable discretion and shall be paid as Deductions, provided, however, that Manager shall obtain the approval of Owner to settle Employee Claims for amounts in excess of $300,000 if such Employee Claims are not fully covered by applicable insurance.

   C. With respect to all Litigation or arbitration involving Employee Claims in which both Manager and Owner are involved as actual or potential defendants, Manager shall have exclusive and complete responsibility for the resolution of such Employee Claims. In the event that any Employee Claim is made against Owner, but not against Manager, Owner shall give notice to Manager of the Employee Claim in a timely manner so as to avoid any prejudice to the defense of the Employee Claim, provided that Manager shall in all events be so notified within twenty (20) days after the date such Employee Claim is made against Owner. Manager will thereafter assume exclusive and complete responsibility for the resolution of such Employee Claim. Manager shall pay from its own funds, and not from Gross Revenues, any Employee Claim where the basis of such Employee Claim is conduct by Manager that: (i) is a violation of the standards of responsible labor relations as generally practiced by prudent owners or operators of similar hotel properties in the general geographic area of the Hotel; and (ii) is not the isolated act of individual employees, but rather is a direct result of corporate policies of Manager that either encourage or fail to discourage such conduct. Any dispute between Owner and Manager as to whether or not certain conduct by Manager is not in accordance with the aforesaid standards shall be resolved by a panel of Experts in accordance with Section 11.20.

   D. Manager shall have the right to allocate the services and time of a Hotel employee between the Hotel and (i) other hotels (including hotels under development) managed by Manager or its Affiliates, and/or (ii) local, regional or central office(s). The compensation and other costs (including, without limitation, termination costs, if any) of such Hotel employee (x) shall be allocated to the Hotel and such other hotels or regional or central office on a fair and consistent basis, and (y) shall not otherwise be financially disadvantageous to Owner or the Hotel. Manager shall disclose such allocation upon Owner's request.



E.   Manager shall have the authority to hire, dismiss or transfer the Hotel's general manager and director of marketing; provided, however, that Manager shall keep Owner reasonably informed with respect to such actions, including prior notification to Owner of Manager's desire to transfer the general manager and director of marketing, and shall give Owner the opportunity to participate in the initial hiring of and any replacement of the Hotel's general manager and director of marketing as follows:

1.   Manager shall provide Owner at least thirty (30) days' prior notice of any proposed hiring of the general manager or director of marketing. Manager shall consult with Owner to obtain any suggestions by Owner as to the preferred background and specific expertise of candidates for such Hotel position, which suggestions, if any, Manager shall utilize in arriving at a preferred profile for candidates for such position.

2.   Manager shall submit to Owner for its approval a reasonably qualified candidate for such position. Owner shall have a period of ten (10) days from its receipt of the applicable candidate's resume within which to interview and evaluate such candidate (provided that such candidate and the necessary representatives of Owner are reasonably available during such period of time for such interview or evaluation, and such candidate shall not be required to provide additional information or undertake testing of any sort as part of such process). Owner shall be deemed to have approved such candidate unless Manager receives Owner's written disapproval of such candidate within such ten (10) day period. If Owner disapproves the first (1st) candidate (based on the process described above), Manager shall submit a second (2nd) candidate, using the same process described above. If such second (2nd) candidate is disapproved by Owner (based on the same process described above), Manager shall submit a third (3rd) candidate, using the same process as described above. If Owner disapproves three (3) candidates for the position submitted by Manager pursuant to the provisions of this Section 1.06.E, Manager shall have the right to select the person to be offered the position of general manager or director of marketing, as applicable, in Manager's sole discretion, from the three (3) candidates proposed to Owner.

1.07   Owner's Right to Inspect

Owner and its agents shall have access to the Hotel at any and all reasonable times for the purpose of inspection or showing the Hotel.

1.08   Regular Meetings

At Owner's request, Owner and Manager shall have quarterly meetings at the Hotel and at mutually convenient times. Manager shall be represented at such meetings by the general manager of the Hotel and such other members of the executive committee at the Hotel as the general manager may deem appropriate. At Owner's request, Manager shall also cause to attend such meetings such regional personnel as may be necessary to address certain situations or issues. The purpose of the meetings shall be to discuss the performance of the Hotel and other related issues, including any variations from the Business Plan for the preceding quarter.

