IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

M WAIKIKI LLC,                                          :
                                                       :
    Plaintiff,                       :       Case No.:  11-CV-6488(BSJ)
                                                       :
    -v-                              :

MARRIOTT HOTEL SERVICES, INC.,                          :
I.S. INTERNATIONAL, INC. and IAN SCHRAGER,              :
                                                       :
    Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                       :
MARRIOTT HOTEL SERVICES, INC.,                          :
                                                       :
    Counterclaim Plaintiff,          :
                                                       :
    -v-                              :
                                                       :
M WAIKIKI LLC,                                          :
                                                       :
Counterclaim Defendant.                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFF'S BRIEF IN SUPPORT OF
## ITS MOTION TO TRANSFER VENUE


**BICKEL & BREWER**

William A. Brewer III (WB 4805)
Alexander D. Widell (AW 3934)
767 Fifth Avenue, 50th Floor
New York, New York 10153
Telephone: (212) 489-1400
Facsimile:  (212) 489-2384

**ATTORNEYS FOR M WAIKIKI LLC**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. PRELIMINARY STATEMENT ....................................................................1

II. SUMMARY OF ARGUMENT ...................................................................1

III. FACTUAL AND PROCEDURAL BACKGROUND...........................................2

 A. M Waikiki Acquires The Hotel And Engages Defendants To Renovate And Manage It. ............................................................................2

 B. M Waikiki Files This Action Against Defendants....................................4

 C. M Waikiki Terminates The Management Agreement And Removes Marriott As The Manager Of The Hotel. .............................................5

 D. The New York State Court's Grant Of The TRO Is Against The Great Weight Of Authority. ...................................................................6

 E. M Waikiki Files Bankruptcy And Removes The Action To This Court. ................7

IV. ARGUMENT .........................................................................................9

 A. The "Interest Of Justice" Favors Transfer Of This Action To The District of Hawaii......................................................................9

  1. Factors 1 and 2:  A transfer would promote economic and efficient administration of M Waikiki's bankruptcy estate and further interests of judicial economy. ...........................10

  2. Factor 3:  The parties will obtain a fair trial in District of Hawaii. ...........12

  3. Factor 4:  The District of Hawaii has an interest in deciding this Action..................................................................13

  4. Factors 5-7:  A judgment will be enforceable in the District of Hawaii and a transfer will not impact the learning curve. ..........14

 B. The "Convenience Of The Parties" Favors Transfer Of This Action To The District of Hawaii. .......................................................15

V. CONCLUSION AND REQUEST FOR RELIEF............................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Home Assur. Co. v. Starr Technical Risks Agency, Inc.*,
  11 Misc 3d 1051(A), 2006 WL 304746 (N.Y. Sup. Ct. Feb. 8, 2006) ....................................6

*BFP 245 Park Co., LLC v. GMAC Commercial Mort. Corp.*,
  12 AD 3d 330 (1st Dept. 2004).....................................................................................................7

*Flintkote Co. v. Allis-Chalmers Corp.*,
  73 F.R.D. 463 (S.D.N.Y. 1977) ....................................................................................................13

*G.K. Alan Assoc., Inc. v. Lazzari*,
  44 A.D.3d 95, 840 N.Y.S.2d 378 (2d Dep't 2007) ..................................................................6

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947).....................................................................................................................13

*In re Collins & Aikman Corp. Sec. Litig.*,
  438 F. Supp. 2d 392 (S.D.N.Y. 2006).....................................................................................11, 12

*In re Dunmore Homes, Inc.*,
  380 B.R. 663 (Bankr. S.D.N.Y. 2008) ......................................................................................10

*In re EB Capital Mgmt. LLC*,
  2011 WL 2838115 ........................................................................................................................10

*In re Enron Corp.*,
  274 B.R. 327 (Bankr. S.D.N.Y. 2002) ..........................................................................10, 13, 14

*In re Enron Corp.*,
  317 B.R. 629 (Bankr. S.D.N.Y. Dec. 13, 2004) ............................................................. passim

*In re Enron Corp.*,
  No. 01–3626 (AJG), 2002 WL 32153911 (Bankr. S.D.N.Y. Apr. 12, 2002)..............10, 12, 14

*In re Harnischfeger Indus., Inc.*,
  246 B.R. 421 (Bankr. N.D. Ala. 2000) ......................................................................................11

*In re Ionosphere Clubs, Inc.*,
  No. 89 CIV. 8250 (MBM), 1990 WL 5203 (S.D.N.Y. Jan. 24, 1990) ....................................11

*In re JCC Capital Corp.*,
  147 B.R. 349 (Bankr. S.D.N.Y. 1992)........................................................................................9

*In re M Waikiki LLC,*
    No. 11-02371 (Bankr. D. Haw. filed August 31, 2011) ........................................................ 7

*In re Nw. Airlines Corp.,*
    384 B.R. 51 (S.D.N.Y. 2008) ..................................................................................... 9, 10

*Krausz Indus., Ltd. v. Romac Indus., Inc.,*
    719 F. Supp. 2d 241 (W.D.N.Y. 2010) ............................................................... 13, 15

*Lothian Cassidy LLC v. Ransom,*
    428 B.R. 555 (E.D.N.Y. 2010) ............................................................................ 9, 11

*Morgan Guar. Trust Co. of N.Y. v. Tisdale,*
    No. 95 Civ. 8023 (BSJ), 1996 WL 544240 (S.D.N.Y. Sept. 25, 1996) .................... 11

*Preston Corp. v. Fabrication Centers, Inc.,*
    68 N.Y. 2d 397 (1986) ............................................................................................. 7

*Sea Lar Trading Co., Inc. v. Michael,*
    107 Misc. 2d 93, 433 N.Y.S.2d 403 (N.Y. Sup. Ct. 1980) ..................................... 6

*Smith v. Conway,*
    198 Misc. 886, 101 N.Y.S.2d 529 (N.Y. Sup. Ct. 1950) ........................................ 6

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.,*
    No. 03 Civ. 3227(CBM), 2003 WL 22743829 (S.D.N.Y. Nov. 20, 2003) .............. 13

*United Ins. Co. Ltd. v. World Wide Web,*
    No. 11–CV–1177 (CBA) (JMA), 2011 WL 1870599 (E.D.N.Y. Apr. 27, 2011) ........ 6

*Wilson Sullivan Co. v Int'l Paper Makers Realty Corp.,*
    307 N.Y. 20, 119 N.E.2d 573 (1954) ...................................................................... 6

*Woolley v. Embassy Suites,*
    227 Cal. App. 3d 1520 (1st Dist. 1991) .................................................................. 6

**STATUTES AND RULES**

11 U.S.C. § 502 ................................................................................................................ 12

28 U.S.C 1404 .......................................................................................................... 1, 8, 9, 10, 11

28 U.S.C. § 1412 ........................................................................................................... 9, 10

N.Y. GEN. OBLIG. LAW § 5-1511(2) ..................................................................................... 6

FED. R. CIV. P. 45(c)(3)(A)(ii) .......................................................................................... 16

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF AGENCY § 118 (1958) ........................................................................7

RESTATEMENT (THIRD) OF AGENCY § 3.06 (2006).........................................................................7

M Waikiki LLC ("M Waikiki" or "Plaintiff") submits this brief of law in support of its Motion to Transfer Venue pursuant to 28 U.S.C 1404(a) (the "Motion"), as follows:

## I.

## PRELIMINARY STATEMENT

This action (the "Action") arises from Defendants' breaches of their contractual and common law duties in connection with the provision of pre-opening services and the management of Plaintiff's quarter of a billion dollar hotel in Honolulu, Hawaii. In an effort to recoup significant monetary losses caused by Defendants' material breaches of their duties, Plaintiff commenced this action in May 2011. Because Plaintiff was unable to sustain further losses of nearly $1 million per month under Marriott's management of the hotel, Plaintiff exercised its common law right to terminate Marriott's agency on August 28, 2011, and, on August 31, 2011, sought bankruptcy relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii ("Hawaii Bankruptcy Court").

In order to efficiently manage its estate, Plaintiff removed this action on September 16, 2011, pursuant to 28 U.S.C. §§ 1334, 1446(a), and 1452. By this motion, Plaintiff seeks to transfer this action to the United States District Court for the District of Hawaii ("District of Hawaii") in the interests of justice and for the convenience of the parties.

## II.

## SUMMARY OF ARGUMENT

The Action should be transferred to the District of Hawaii in the "interest of justice" and for the "convenience of the parties." Transfer serves the "interest of justice" because: (1) it promotes the economic and efficient administration of M Waikiki's bankruptcy estate; (2) it furthers interests of judicial economy; (3) the parties will be able to obtain a fair trial in the District of Hawaii; (4) the District of Hawaii has a strong interest in deciding this Action; (5) any

judgment will be enforceable in the District of Hawaii; and (6) a transfer will not impact the learning curve because the Action is still in its initial stages.  It is "convenient for the parties" to transfer this case because:  (1) M Waikiki's primary asset, the hotel, is located in Hawaii; (2) the majority of witnesses who are expected to testify in this Action are located in Hawaii; and (3) the District of Hawaii will have subpoena power over most unwilling witnesses, if any.

**III.**

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     M Waikiki Acquires The Hotel And Engages Defendants To Renovate And Manage It.**

In July 2006, M Waikiki, a Hawaii limited liability company, purchased a hotel known today as The Modern Honolulu   (the "Hotel").[1]   The purchase price of the Hotel was approximately $112 million and M Waikiki spent another $128 million renovating it.[2]   In connection with the acquisition, M Waikiki sought a management company to assist in the renovation and provide design, technical, and pre-opening services.[3]   Convinced by Marriott of its ability to prudently and profitably manage the Hotel within Marriott's new brand called "Edition," on July 9, 2008, M Waikiki entered into two separate agreements:  (1) the Design and Technical Services and Pre-Opening Agreement by and among M Waikiki, Marriott, and I.S. International, LLC ("Schrager LLC") ("TSA"); and (2) the Management Agreement by and between Marriott and M Waikiki ("Management Agreement").[4]

---

[1]   *See* accompanying Declaration of Damian McKinney, dated October 8, 2011 ("McKinney Decl."), at ¶ 2.

[2]   *See id.*

[3]   *See id.* ¶ 3.

[4]   *See generally* TSA (McKinney Decl. Ex. 1); Management Agreement (McKinney Decl. Ex. 2).

Marriott and its affiliates comprise the world's largest hotel company with 3,500-plus hotels which are largely managed by its on-site management at the individual hotels. Ian Schrager ("Schrager") is the president of Schrager LLC, a closely-held limited liability company, and together, Marriott and Schrager LLC planned to develop the "Edition" brand of hotels.[5] The "Edition" brand was to be a new "lifestyle" hotel brand within the Marriott family designed to compete with major boutique hotel brands such as Starwood's W Hotel. Edition, however, has been a well-publicized failure. Schrager, in an equally well-publicized move, has turned his attention away from Edition and to developing his own competing brand of lifestyle hotels.

Pursuant to the TSA, Marriott and Schrager LLC were to, among other things, provide services regarding: (1) design and construction of the Hotel; (2) design and procurement of the furniture, fixtures, systems and equipment for the Hotel; and (3) pre-opening promotion, advertising and marketing.[6] The TSA required Schrager's personal involvement in the design and direction of the Hotel and that he be available for key meetings.[7] Pursuant to the Management Agreement, Marriott was to, *inter alia*, operate the Hotel in a "reasonable and prudent" manner and "diligently pursue feasible measures to operate the Hotel in accordance with the Business Plan."[8]

Defendants, however, materially breached their obligations under the TSA and Management Agreement and under the common law.[9] For example, Defendants unnecessarily doubled the Pre-Opening Expenses budget from $3.8 million to $8.7 million, which resulted in

---

[5] *See* TSA, Recitals (McKinney Decl. Ex. 1).

[6] *See, e.g.*, TSA Recitals C, §§ 2.1.1, 2.1.4, 5.1 (McKinney Decl. Ex. 1).

[7] *See id.* § 4.2.

[8] *See* Management Agreement § 1.02, 1.03(B) (McKinney Decl. Ex. 2).

[9] *See* Complaint filed May 18, 2011 ("Complaint"), ¶¶ 57-100 (DE #1).

3

Schrager LLC being paid several hundred thousand dollars in concept fees.[10]  At the same time, Ian Schrager failed to personally perform the services he was required to perform in connection with the Hotel and, in fact, started a competing brand of hotels.[11]

In addition, Marriott has failed to operate the Hotel in a reasonable or prudent manner. Indeed, after the Hotel opened, Marriott lost a staggering $6 million of M Waikiki's money in only the first six months of operation and the Hotel's Revenue Per Available Room (RevPAR) was less than 50% of competitive hotels in the area.[12]  Through July 2011, the Hotel lost $8.4 million under Marriott's management.[13]  Further, despite the abysmal performance of the Hotel, Marriott failed to lower variable costs in the face of low demand and rates and act in the best interests of M Waikiki.[14]

## B.    M Waikiki Files This Action Against Defendants.

Accordingly, on May 16, 2011, M Waikiki filed this Action in the Supreme Court of the State of New York, County of New York ("New York State Court") alleging, among other things, breach of the TSA and Management Agreement, and the fiduciary duties arising out of those agreements and common law.[15]

Specifically, with respect to the TSA, M Waikiki alleges that Marriott and Schrager LLC breached the TSA and Defendants breached the fiduciary duties arising out of the principal-agency relationship created by the TSA by failing to:   (1) develop final Edition technical standards; (2) direct their actions in a manner intended to achieve the opening date; (3) undertake

---

[10] *See id.* ¶¶ 58-60.

[11] *See id.* ¶ 36.

[12] *See id.* ¶ 70.

[13] *See* McKinney Decl. ¶ 6.

[14] *See* Complaint ¶ 71 (DE #1).

[15] *See id.*  ¶¶ 74-100.

adequate pre-opening promotion and advertising; (4) ensure adequate staffing; (5) ensure the personal involvement of Schrager in the design, conception, and direction of the Hotel; and (6) disclose the development of a competing hotel brand and act in the best interests of M Waikiki.[16]

With respect to the Management Agreement, M Waikiki alleges that Marriott breached its contractual duties and fiduciary duties arising out of the principal-agency relationship created by the Management Agreement by failing to manage the Hotel in a reasonable and prudent manner and acting in the best interests of M Waikiki.[17]   M Waikiki seeks, among other relief: (1) monetary damages; (2) declaratory relief that Marriott committed a material event of default under the Management Agreement; and (3) attorneys' fees and expenses.[18]

## C.   M Waikiki Terminates The Management Agreement And Removes Marriott As The Manager Of The Hotel.

On August 28, 2011, fearing the total loss of its business under the continued mismanagement of Marriott, M Waikiki terminated the Management Agreement and Marriott's agency, and replaced Marriott with Modern Management Services, LLC ("Modern Management") as the manager of the Hotel.[19]   Modern Management immediately commenced operations of the Hotel.[20]

Despite M Waikiki's unfettered right to terminate its agent and the successful installation of Modern Management, on August 30, 2011, Marriott filed a counterclaim and an Application

---

[16] *See id.* ¶¶ 36,57-61,74-84.

[17] *See id.* ¶¶ 62-73, 80-84, 90-100.

[18] *See id.*, Request for Relief.

[19] *See* McKinney Decl. ¶ 6.

[20] The transition was conducted by representatives of M Waikiki, Modern Management, Bond HD, and third-party independent contractors, most of whom reside in Hawaii.   *See* McKinney Decl. ¶ 12.

for Temporary Restraining Order ("TRO") against M Waikiki in the New York State Court seeking to be reinstated as manager of the Hotel and asserting a claim for damages.[21]

## D.    The New York State Court's Grant Of The TRO Is Against The Great Weight Of Authority.

The New York State Court held the TRO hearing on August 30, 2011.[22] M Waikiki argued that it has an unfettered power under New York law to revoke Marriott's authority.[23] In support of its position, M Waikiki provided the court with substantial authority from the New York Court of Appeals, persuasive authority from other jurisdictions, and secondary sources such as the Restatement (Second and Third) of Agency,[24] that uniformity established M

---

[21] *See* Complaint of Counterclaim-Plaintiff Marriott Hotel Services, Inc. Against Counterclaim-Defendant M Waikiki LLC, dated August 30, 2011, Prayer for Relief ("Counterclaim") (DE #1); Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction, dated August 30, 2011 ("TRO Order") (DE #1).

[22] *See* TRO Order (DE #1).

[23] *See* Memorandum Regarding the Terminability of Marriott's Management Agreement and the Revocability of Marriott's Agency Thereunder, dated August 30, 2011 ("Brief") (McKinney Decl. Ex. 3).

[24] M Waikiki cited, among others, the following authorities in its Brief. *See, e.g.*, *Wilson Sullivan Co. v Int'l Paper Makers Realty Corp.*, 307 N.Y. 20, 24, 119 N.E.2d 573, 574 (1954); *G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 102, 840 N.Y.S.2d 378, 385 (2d Dep't 2007) (slip opinion) ("A principal is always free to terminate the agency relationship, subject to a claim for damages by the agent. The disloyalty of the agent entitles the principal to avoid such claims, at least to the extent that the claims involve future compensation.") (citation omitted); *Sea Lar Trading Co., Inc. v. Michael*, 107 Misc. 2d 93, 96-97, 433 N.Y.S.2d 403, 403 (N.Y. Sup. Ct. 1980) ("A principal has the right at any time to revoke the authority of any agent.") (citation omitted); *American Home Assur. Co. v. Starr Technical Risks Agency, Inc.*, 11 Misc 3d 1051(A), 2006 WL 304746 at *3 (N.Y. Sup. Ct. Feb. 8, 2006) ("It is well settled that . . . a principal has the power to revoke at any time his agent's authority to represent him."); *Smith v. Conway*, 198 Misc. 886, 101 N.Y.S.2d 529, 531 (N.Y. Sup. Ct. 1950) ("[A] principal, at least generally, is permitted to revoke an agency when he pleases, even though he has contracted with agent for definite period of time"); *see also United Ins. Co. Ltd. v. World Wide Web*, No. 11–CV–1177 (CBA) (JMA), 2011 WL 1870599, at *2 (E.D.N.Y. Apr. 27, 2011) ("New York law clearly provides that a principal has an inviolate right to revoke its agency at any time."); N.Y. GEN. OBLIG. LAW § 5-1511(2) ("An agent's authority terminates when . . . the principal revokes the agent's authority"); *Woolley v. Embassy Suites*, 227 Cal. App. 3d 1520, 1530 (1st Dist. 1991) ("It should always be within the power of the principal to manage his own business and that includes

Waikiki's <u>power</u> to terminate Marriott's agency and the Management Agreement.[25]   The New York State Court, however, ignored established precedent and the great weight of authority and granted the TRO ordering reinstatement of Marriott as manager of the Hotel.[26]   This ruling is not entitled to be given preclusive effect in subsequent proceedings among the parties.[27]

**E.**     **M Waikiki Files Bankruptcy And Removes The Action To This Court.**

On August 31, 2011, M Waikiki filed for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Hawaii ("Hawaii Bankruptcy Court").[28]   M Waikiki filed for bankruptcy protection because, in part, reinstatement of Marriott as manager of the Hotel would have put at risk its equity in the Hotel.[29]

Since the filing, a significant amount of activity has taken place in the Bankruptcy Case. For example, on September 1, 2011, M Waikiki filed, among other things, a Motion to Reject the Management Agreement with Marriott, in large part, because of Marriott's conduct giving rise to the Action.[30]   In addition, Marriott appeared in the Bankruptcy Case and filed a Motion for Relief from Stay to Enforce Specific Provision in the TRO relating solely to its intellectual

---

the power of the principal to reassume the control over his own business which he has but delegated to his agent."); RESTATEMENT (THIRD) OF AGENCY § 3.06 (2006) ("An agent's actual authority may be terminated by . . . a manifestation of revocation by the principal to the agent."); RESTATEMENT (SECOND) OF AGENCY § 118 (1958) ("Authority terminates if the principal or the agent manifest to the other descent to its continuance.").

[25] *See generally* Brief.

[26] *See* TRO Order (DE #1).

[27] *See BFP 245 Park Co., LLC v. GMAC Commercial Mort. Corp.*, 12 AD 3d 330, 332 (1st Dept. 2004); *Preston Corp. v. Fabrication Centers, Inc.*, 68 N.Y. 2d 397, 402 (1986) (an interlocutory ruling "granting or refus[ing] a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for").

[28] *See In re M Waikiki LLC*, No. 11-02371 (Bankr. D. Haw. filed August 31, 2011).

[29] *See* McKinney Decl. ¶ 7.

[30]   *See* Motion to Reject the Management Agreement, dated September 1, 2011 (Bankruptcy Case DE #11) (McKinney Decl. Ex. 4).

property and confidential business information.[31]  Marriott has not sought to continue as manager under the Management Agreement.  The final hearing for both motions is scheduled for October 13, 2011.[32]

On September 6, 2011, M Waikiki filed its DIP financing motion and a list of its 20 largest unsecured creditors listing Marriott as its largest creditor with a claim of $5.4 million.[33] Marriott was appointed as a member of the Committee of Creditors ("Creditors' Committee").[34] Marriott, however, has stated in its filings in the Bankruptcy Case that its proof of claim will be in the amount of approximately $72 million based on the same allegations it makes in this Action.[35]

On September 16, 2011, pursuant to 28 U.S.C. §§ 1334, 1446(a) and 1452, M Waikiki removed the Action to this Court.[36]  Pursuant to 28 U.S.C § 1404(a), M Waikiki files this Motion to transfer this Action to the District of Hawaii for ultimate referral to the Hawaii Bankruptcy Court in the "interest of justice" and for the "convenience of the parties."

---

[31]  *See* Motion for Relief from Stay to Enforce Specific Provision in Temporary Restraining Order, dated September 1, 2011 (Bankruptcy Case DE #130).

[32]  *See* Notice of Hearing, dated September 13, 2011 (Bankruptcy Case DE #110).

[33]  *See* List of Creditors Holding 20 Largest Unsecured Claims, dated September 6, 2011 (Bankruptcy Case DE #62) (McKinney Decl. Ex. 5).

[34]  Notice of Appointment of Committee of Creditors, dated September 9, 2011 (Bankruptcy Case DE #81) (McKinney Decl. Ex. 7).

[35]  *See* Opposition Memorandum to Debtor's Motion to Reject Management Agreement, dated September 6, 2011, at 10 (Bankruptcy Case DE #57) (McKinney Decl. Ex. 6).

[36]  *See* Notice of Removal, dated September 16, 2011 (DE #1).

# IV.

# ARGUMENT

Pursuant to 28 U.S.C. § 1404(a) ("Section 1404"),[37] a court may transfer venue of an adversary proceeding in the:   (1) "interest of justice"; or (2) for the "convenience of the parties."[38]   A court applies the same criteria in determining whether to transfer a "non-core" proceeding under Section 1404 as a "core" proceeding under 28 U.S.C. § 1412 ("Section 1412") (*i.e.*, "interest of justice" and "convenience of the parties").[39]   Under Section 1404, the movant has the burden to establish that transfer of venue is warranted.[40]   In this case, both the "interest of justice" and the "convenience of the parties" weigh heavily in favor of the transfer of the Action to the District of Hawaii.

## A.   The "Interest Of Justice" Favors Transfer Of This Action To The District of Hawaii.

In considering the "interest of justice" rationale, this Court "applies a broad and flexible standard" and "considers whether transfer of venue will promote the efficient administration of

---

[37] *See, e.g., In re Nw. Airlines Corp.*, 384 B.R. 51, 60 (S.D.N.Y. 2008) ("Transfer of venue for non-core proceedings is governed by 28 U.S.C. § 1404(a)."); *In re JCC Capital Corp.*, 147 B.R. 349, 356 (Bankr. S.D.N.Y. 1992) ("A motion to transfer an adversary proceeding that is non-core or related to a case under title 11 is controlled by 28 U.S.C. § 1404, the general change of venue provision, rather than 28 U.S.C. § 1412, because the latter statute contains no reference to related proceedings.").

[38] 28 U.S.C. § 1404(a).

[39] *Compare* 28 U.S.C. § 1404(a) *with* 28 U.S.C. §1412; *see also In re JCC Capital Corp.*, 147 B.R. at 356 ("The factors courts consider in determining a motion under section 1404(a) are the same as those considered in deciding a motion under section 1412."); *In re Nw. Airlines Corp.*, 384 B.R. at 60, n.1 ("Courts have construed the criteria under Sections 1404(a) and 1412 to be substantially similar.") (citations omitted); *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 561 (E.D.N.Y. 2010) (same).   Accordingly, Plaintiff cites herein to cases decided under Sections 1404 and 1412.

[40] *See In re Nw. Airlines Corp.*, 384 B.R. at 60.

the estate, judicial economy, timeliness, and fairness."[41]   The Court should consider the following seven factors:   (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether transfer would further the interests of judicial economy; (3) whether the parties could obtain a fair trial in each of the possible venues; (4) whether either forum has an interest in deciding the controversy; (5) whether the enforceability of any judgment would be affected by the transfer; (6) whether the plaintiff's original choice of forum should be disturbed; and (7) whether transfer will impact the learning curve.[42]   Each of these factors is either neutral or weighs in favor of the transfer of this Action to the District of Hawaii.  None favor leaving the case in New York.

1.   **Factors 1 and 2:   A transfer would promote economic and efficient administration of M Waikiki's bankruptcy estate and further interests of judicial economy.**

The most important of the seven factors is the promotion of the economic and efficient administration of the estate.[43]   The efficient administration of a bankruptcy estate is inextricably tied to the interests of judicial economy and courts consider them together in deciding whether to

---

[41] *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002) ("*Enron 1*"); *In re EB Capital Mgmt. LLC*, 2011 WL 2838115 at *4.

[42] *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008); *In re Enron Corp.*, 317 B.R. 629, 638-39 (Bankr. S.D.N.Y. Dec. 13, 2004) ("*Enron 3*") (applying Section 1412 and listing "interest of justice" factors 1-6); *In re Enron Corp.*, No. 01–3626 (AJG), 2002 WL 32153911, at *1 (Bankr. S.D.N.Y. Apr. 12, 2002) ("*Enron 2*") (applying Section 1412 and listing "interest of justice" factor 7); *In re Nw. Airlines Corp.*, 384 B.R. at 60 (S.D.N.Y. 2008) (applying Section 1404 and listing "interest of justice" factor 1).

[43] *Enron 3*, 317 B.R. at 639; *Enron 1*, 274 B.R. at 343; *Enron 2*, 2002 WL 32153911, at *3.

transfer a case.[44]   A transfer of this Action would promote judicial economy and the economic and efficient administration of M Waikiki's bankruptcy estate.

First, courts have created a legal presumption, known as the "home court" presumption, which provides that the proper venue for an adversary proceeding is in the court in which the debtor's bankruptcy case is pending.[45]   That presumption is strengthened where – as here – it is the debtor that seeks to invoke the "home court" presumption.[46]

Second, the Hawaii Bankruptcy Court  has already addressed certain, and is scheduled to hear a number of, issues related to this Action and can coordinate with the District of Hawaii to efficiently resolve them.[47]   For example, the Hawaii Bankruptcy Court has already held a preliminary hearing and has scheduled a final hearing regarding Marriott's Motion to Enforce the

---

[44] *Enron 3*, 317 B.R. at 640 ("[T]he Court will weigh factors 1 and 2 collectively because the economic administration of these bankruptcy estates is necessarily tied to concerns of judicial economy.") (internal quotations omitted).

[45] *Enron 3*, 317 B.R. at 642 (citing *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 439 (Bankr. N.D. Ala. 2000) ("*Harnischfeger*")); *Lotham*, 428 B.R. at 562 ("The Second Circuit has held that the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."); *In re Ionosphere Clubs, Inc.*, No. 89 CIV. 8250 (MBM), 1990 WL 5203, *6 (S.D.N.Y. Jan. 24, 1990) (denying a motion to transfer under 28 U.S.C. 1404(a) because the bankruptcy proceeding for the plaintiff was pending in the transferor court); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 398 (S.D.N.Y. 2006) ("[T]rial efficiency and the interests of justice strongly favor transfer. The Eastern District of Michigan is currently the site of two related cases: C & A's Chapter 11 bankruptcy proceeding and a state law fraud action brought by a major holder of C & A's debt securities containing similar allegations and naming some of the same defendants as the present action . . . The existence of these lawsuits heavily favors transfer); *Morgan Guar. Trust Co. of N.Y. v. Tisdale*, No. 95 Civ. 8023 (BSJ), 1996 WL 544240 (S.D.N.Y. Sept. 25, 1996) (transferring securities fraud suit to district where bankruptcy proceeding was pending).

[46] *See Harnischfeger*, 246 B.R. at 439 (holding that the "home court" presumption is "diluted" if a non-debtor moves to transfer the case).

[47] *See* McKinney Decl ¶ 9.

11

TRO.[48]  Moreover, the Hawaii Bankruptcy Court is also scheduled to hear M Waikiki's Motion to Reject the Management Agreement.[49]  In addition, Marriott is listed in the Bankruptcy Case as M Waikiki's largest creditor with a claim of $5.4 million and has alleged a claim against M Waikiki in the amount of approximately $72 million based on the facts alleged and claim asserted in this Action.[50]  The amount of Marriott's claims (which include the alleged damages in this Action) will likely have to be addressed by the Hawaii Bankruptcy Court in an estimate proceeding under 11 U.S.C. § 502(c) and or in a claim object proceeding.[51]

Third, having the District of Hawaii resolve this Action would allow the parties to conduct more efficient pretrial discovery and streamline depositions and written discovery.[52]  Indeed, a number of witnesses material to this Action (including former and current Hotel employees) are already scheduled to be deposed in the Bankruptcy Case.[53]

## 2.      Factor 3:  The parties will obtain a fair trial in District of Hawaii.

The third factor in deciding whether transfer is in the "interest of justice" is whether the parties will receive a fair trial in the transferee forum.[54]  Clearly, the parties will receive a fair

---

[48]  *See* Order Granting Marriott Adequate Protection Pending Final Hearing, dated September 8, 2011 (Bankruptcy Case DE #77); Minutes of Hearing held on 9/26/2011 (setting the hearing date for the Motion to Reject) (Bankruptcy Case DE #184).

[49]  *See id.*; McKinney Decl. ¶ 9.

[50]  *See id.*; List of Creditors Holding 20 Largest Unsecured Claims (Bankruptcy Case DE # 62) (McKinney Decl. Ex. 5); Opposition Memorandum to Debtor's Motion to Reject Management Agreement, dated September 6, 2011 (listing $72 million claim as all alleged damages) (Bankruptcy Case DE #57) (McKinney Decl. Ex. 6).

[51]  *See* McKinney Decl. ¶ 10.

[52]  *See id.* ¶ 12; *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 398 ("Because litigating related claims in the same tribunal allows for more efficient pretrial discovery, avoids duplicative litigation, prevents inconsistent results, and saves time[ ] and expense for both parties and witnesses.").

[53]  *See* McKinney Decl. ¶ 12.

[54]  *See Enron 3*, 317 B.R. at 644-45; *Enron 2*, 2002 WL 32153911, at *4.

trial in this or the District of Hawaii.   Indeed, pursuant to the Management Agreement, M

Waikiki and Marriott submitted to the non-exclusive jurisdiction of the federal courts of

Hawaii.[55]

### 3.      Factor 4:  The District of Hawaii has an interest in deciding this Action.

The fourth factor to be considered is whether the District of Hawaii has an interest having

this Action decided within its borders.[56]   It is well-established that a forum has an interest in

deciding local controversies.[57]   This Action is local to the District of Hawaii because the conduct

alleged by Plaintiff against Defendants, to wit, misconduct in the performance of the TSA and

Management Agreement, occurred in Honolulu, Hawaii.[58]   In addition, Marriott, in its

counterclaim, seeks reinstatement as manager of the Hotel.[59]   The request raises issues related to

---

[55] *See* Management Agreement § 11.04 ("[E]ach party hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the United States District Court for the District of Hawaii to the fullest extent that Court has subject matter jurisdiction . . . .") (McKinney Decl. Ex. 2).  The parties have waived their rights to a jury trial in this Action, there is no concern about a partial jury.  *See* TSA § 9.13 ("Owner, Manager, and Schrager each hereby absolutely irrevocably and unconditionally waive trial by jury and the right to claim . . . .") (McKinney Decl. Ex. 1); Management Agreement § 11.21 ("Owner and Manager each hereby absolutely, irrevocably and unconditionally waive trial by jury and the right to claim . . . .") (McKinney Decl. Ex. 2).

[56] *See Enron 3*, 317 B.R. at 644-45 ("Factor 4 ("Whether Either Forum Has An Interest In Having The Controversy Decided Within Its Borders)"); *Krausz Indus., Ltd. v. Romac Indus., Inc.*, 719 F. Supp. 2d 241, 245 (W.D.N.Y. 2010) (transferring an action because, among other reasons, the interest in having controversies decided locally).

[57] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home."); *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 466 (S.D.N.Y. 1977) (same).

[58] *See* Complaint ¶¶ 14-73 (DE #1).

[59] *See* Counterclaim (DE #1); *Enron*, *1*, 274 B.R. at 349 ("The learning curve analysis involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue."); *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 Civ. 3227(CBM), 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003) (transferring a case because, among other reasons, it was in its early stages and no discovery had be conducted).

issues pending in Hawaii pursuant to the Motion to Reject.[60]   In contrast, none of the events or occurrences alleged by any party occurred in New York.[61]   As such, the District of Hawaii has a stronger interest in deciding this Action than this Court.

4.    **Factors 5-7:  A judgment will be enforceable in the District of Hawaii and a transfer will not impact the learning curve.**

The remaining factors in the "interest of justice" analysis are:   (1) whether the enforceability of any judgment would be affected by the transfer; and (2) whether the transfer will impact the learning curve.[62]   A transfer will not affect the enforceability of any judgment obtained by either Plaintiff or Defendants because any judgment in that venue will be enforceable in any court pursuant to the Full Faith and Credit Clause of the United States Constitution.[63]   Further, a transfer will not impact the learning curve because this Action was only recently removed to this Court on September 19, 2011, and, other than this motion, no proceedings have occurred in this Court.   On the other hand, the Hawaii Bankruptcy Court is already familiar with certain of the issues in this Action because there has been significant motion practice in the Hawaii Bankruptcy Court including the filing of M Waikiki's Motion to Reject the Management Agreement and Marriott's Motion to Enforce the TRO.[64]

---

[60] *Compare* Counterclaim (DE #1) *with* Motion to Reject (McKinney Decl. Ex. 4).

[61] *See* Complaint ¶¶ 14-73 (DE #1); McKinney Decl. ¶ 9.

[62] *See Enron 3*, 317 B.R. at 645; *Enron 2*, 274 B.R. at 349.  Because Plaintiff has moved to transfer the venue to the District of Hawaii for ultimate referral to the Hawaii Bankruptcy Court, the factor relating to not disturbing Plaintiff's choice-of-forum is inapplicable.

[63] *See Enron 3*, 317 B.R. at 645.

[64] *See* Motion for Relief from Automatic Stay to Enforce Specific Provision in Temporary Restraining Order (Bankruptcy Case DE # 13).

**B.** **The "Convenience Of The Parties" Favors Transfer Of This Action To The District of Hawaii.**

In considering the "convenience of the parties" rationale, the following five factors are considered: (1) the location of the plaintiff and the defendant; (2) the ease of access to the necessary proof; (3) the convenience of the witnesses and the parties and their relative physical and financial condition; (4) the availability of the subpoena power for unwilling witnesses; and (5) the expense of obtaining unwilling witnesses.[65]

The "convenience of the parties" warrants transfer of this Action to the District of Hawaii. First, M Waikiki's only significant asset is the Hotel, located in Honolulu, California, and its management travels to Hawaii routinely for Hotel business.[66]   Moreover, although Marriott is a Delaware corporation with its principal place of business in Bethesda, Maryland, the Marriot's management services were provided largely by its employees on-site at the Hotel and, thus, for purposes of this Action, Marriott's location is Hawaii.[67]   Additionally, Schrager LLC's services under the TSA were also provided largely on-site at the Hotel.[68]   As such, the location of M Waikiki and Defendants favors transfer.   Second, the majority of the witnesses who are expected to testify in connection with this Action reside in Hawaii or California.[69]   For instance, significant testimony is anticipated from Marriott's present and former employees who worked at the Hotel and, to the best of Plaintiff's knowledge, reside in Hawaii.[70]   Other witnesses are likely to include representatives of M Waikiki or its asset manager, Bond HD, the

---

[65] *Enron 3*, 317 B.R. at 639; *Krausz*, 719 F. Supp. 2d at 245.

[66] *See* McKinney Decl. ¶ 2.

[67] *See id.* ¶ 3.

[68] *See id.*

[69] *See id.* ¶¶ 12-13.

[70] *See id.*

majority of whom live in California and Nevada, many of whom work, in part, in Hawaii.[71] Moreover, the vast majority of the anticipated documentary evidence to be offered is the Hotel's "Books and Records" which are located at the Hotel in Hawaii.[72]   Third, given that the majority of the documents and witnesses are located in Honolulu, Hawaii, compelling testimony and documents and subpoenaing witnesses for trial will be easier from Hawaii than this Court.[73]

Accordingly, the "convenience of the parties" warrants transfer of this Action to the District of Hawaii for ultimate referral to the Hawaii Bankruptcy Court.

## V.

## CONCLUSION AND REQUEST FOR RELIEF

For all the foregoing reasons, M Waikiki respectfully requests that the Court transfer venue of this Action to the United States District Court for the District of Hawaii, and grant it such other and further relief that the Court deems just and equitable.

---

[71] *See id.*

[72] *See id.* ¶ 12.

[73] *See* FED. R. CIV. P. 45(c)(3)(A)(ii) (a ground for quashing a subpoena is that a person is required to travel more than 100 miles from where that person resides, is employed, or regularly transacts business).

Dated:  New York, New York
        October 8, 2011

                                    Respectfully submitted,

                                    BICKEL & BREWER


                            By:  _____/s/ Alexander D. Widell_____
                                    William A. Brewer III (WB 4085)
                                    Alexander D. Widell (AW 3934)
                                    767 Fifth Avenue – 50th Floor
                                    New York, New York 10153
                                    (212) 489-1400


                                    ATTORNEYS FOR M WAIKIKI LLC