# EXHIBIT
# 2

Manager, within ten (10) days after receipt of Manager's written request thereof, the sums necessary to establish such reserve; and if Owner fails to timely deliver such sums to Manager, Manager shall have the right (without affecting Manager's other remedies under this Agreement) to withdraw the amount of such expenses from the Operating Accounts, the FF&E Reserve, the Working Capital funds or any other funds of Owner held by or under the control of Manager.

6.03   General Conditions of Manager's Insurance Program

All insurance procured by Manager pursuant to Section 6.01 (if Manager procures such insurance) and Section 6.02 may be obtained by Manager through blanket insurance programs, with shared aggregate coverage levels, sub-limits, deductibles, conditions, and exclusions based on industry conditions and based on what is available at commercially reasonable rates, terms and conditions. The blanket program may apply to one or more insured locations which may incur a loss for the same insured event, which could result in the exhaustion of coverage prior to the resolution of all claims arising from such event. In addition, industry conditions may cause policy terms, sub-limits, conditions or exclusions to result in coverage levels less than the amounts prescribed in Section 6.01 and Section 6.02. Such conditions and limitations shall not constitute a breach of Manager's insurance procurement obligations hereunder.


**ARTICLE VII**

**DAMAGE, REPAIR AND CONDEMNATION**

7.01   Damage and Repair

A.     If, during the Term, the Hotel is damaged by a Minor Casualty, Manager shall, with all reasonable diligence, proceed to process the claim with the applicable insurance carriers, including settling such claim, and to make the necessary arrangements with appropriate contractors and suppliers to repair and/or replace the damaged portion of the Hotel. Owner's consent shall not be needed for Manager to perform any of the foregoing, all of which shall be performed in accordance with Manager's reasonable judgment. Owner agrees to sign promptly any documents which are necessary to process and/or adjust the claim with the insurance carriers, as well as any contracts with such contractors and/or suppliers.

B.     If, during the Term, the Hotel suffers a Total Casualty, this Agreement shall be terminable at the option of either party upon ninety (90) days' written notice to the other party. Such notice must be sent within sixty (60) days after the date of the Total Casualty.

C.     If, during the Term, the Hotel is damaged by fire, casualty or other cause to a greater extent than a Minor Casualty, but not to the extent of a Total Casualty, or if the Hotel suffers a Total Casualty but neither party elects to terminate under Section 7.01.B, Owner shall, at its cost and expense and with all reasonable diligence, repair and/or replace the damaged portion of the Hotel to the same condition as existed previously. Manager shall have the right to discontinue operating the Hotel to the extent it deems necessary to comply with applicable Legal



Requirements or as necessary for the safe and orderly operation of the Hotel. To the extent available, proceeds from the insurance described in Section 6.01 of this Agreement shall be applied to such repairs and/or replacements. If Owner fails to so promptly commence and complete the repairing and/or replacement of the Hotel so that it shall be substantially the same as it was prior to such damage or destruction, such failure shall be an Event of Default by Owner.

### 7.02    Condemnation

A.    In the event all or substantially all of the Hotel shall be taken in any eminent domain, condemnation, compulsory acquisition, or similar proceeding by any competent authority for any public or quasi-public use or purpose, or in the event a portion of the Hotel shall be so taken, but the result is that it is unreasonable to continue to operate the Hotel in accordance with the standards required by this Agreement, this Agreement shall terminate. Owner and Manager shall each have the right to initiate such proceedings as they deem advisable to recover any compensation to which they may be entitled.

B.    In the event a portion of the Hotel shall be taken by the events described in Section 7.02.A, or the entire (or portion of the) Hotel is affected but on a temporary basis, and the result is not to make it unreasonable to continue to operate the Hotel, this Agreement shall not terminate. However, so much of any award for any such partial taking or condemnation as shall be necessary to render the Hotel equivalent to its condition prior to such event shall be used for such purpose; and Manager shall have the right to discontinue operating the Hotel to the extent it deems necessary for the safe and orderly operation of the Hotel.

## ARTICLE VIII

## OWNERSHIP OF THE HOTEL

### 8.01    Ownership of the Hotel

A.    Owner hereby covenants that it holds good and marketable fee title to the Site, subject to the exceptions set forth on Exhibit E (the "Permitted Exceptions"), and that, upon completion of the Hotel, it will have, keep, and maintain good and marketable fee title to the Hotel free and clear of any and all liens, encumbrances or other charges, except as follows:

1.    easements or other encumbrances (other than those described in Section 8.01.A.2 and Section 8.01.A.3 hereof) that do not adversely affect the operation of the Hotel by Manager and that are not prohibited pursuant to Section 8.04 of this Agreement or the Permitted Exceptions;

2.    Qualified Mortgages; or

3.    liens for taxes, assessments, levies or other public charges not yet due or due but not yet payable.



B.      Owner shall pay and discharge, on or before the due date, any and all payments due under any Mortgage that Owner has entered into with respect to the Hotel.  Owner shall indemnify, defend, and hold Manager harmless from and against all claims, litigation and damages arising from the failure to make any such payments as and when required; and this obligation of Owner shall survive Termination.  Manager shall have no responsibility for payment of debt service due with respect to the Hotel, from Gross Revenues or otherwise, and such responsibility shall be solely that of Owner.

C.      Owner covenants that Manager shall quietly hold, occupy and enjoy the Hotel in accordance with the terms of this Agreement throughout the Term hereof free from hindrance, ejection or molestation by Owner or any other party claiming under, through or by right of Owner.  Owner agrees to pay and discharge any payments and charges and, at its expense, to prosecute all appropriate actions, judicial or otherwise, necessary to assure such free and quiet occupation.

8.02   Mortgages

A.      Owner shall be permitted to encumber the Hotel and/or the Site with any Mortgage, provided that such Mortgage meets all of the following requirements:

1.      The proposed Mortgage is from an Institutional Lender and is on commercially reasonable terms and conditions;

2.      As of the date of the closing of the proposed financing, the aggregate principal balance of all Mortgages encumbering the Hotel, including the proposed Mortgage, shall be no greater than seventy-five percent (75%) of the fair market value of the Hotel;

3.      As of the date of the closing of the proposed financing, the ratio of (i) the total, aggregate Operating Profit for the thirteen (13) most recent full Accounting Periods immediately preceding such date (or in the event the Hotel has undergone a major renovation during such thirteen (13) Accounting Periods, the thirteen (13) most recent full Accounting Periods immediately preceding the commencement of the major renovation) to (ii) the annual debt service for all Mortgages encumbering the Hotel, including the proposed Mortgage, equals or exceeds one and one-quarter to one (1.25:1); and

4.      Owner, Manager and the holder of such Mortgage shall have entered into a Subordination Agreement (to be recorded in the real property records in the jurisdiction where the Site is located) as further described in Section 8.03.

B.      For purposes of this Section 8.02, the fair market value of the Hotel shall be reasonably determined by a licensed appraiser with a nationally recognized company.  If Owner and Manager do not agree on such fair market value, either party may request that a nationally recognized licensed appraiser (reasonably acceptable to both parties) shall determine the fair market value of the Hotel.  If the parties cannot agree on an appraiser within ten (10) days after



the date on which either party notifies the other that it wishes to have the fair market value of the Hotel be determined by an appraisal, either party may elect to have such fair market value determined by a panel of Experts pursuant to Section 11.20.  Any Mortgage which meets all of the requirements set forth in this Section 8.02 shall be referred to in this Agreement as a "Qualified Mortgage."

      C.     In the event Manager receives any reasonable request for information on the Hotel from the holder of any Qualified Mortgage (and including any Affiliate of Manager providing any financing in connection with the Hotel), Owner agrees that Manager is hereby authorized to provide or distribute such information directly to such lender.

      D.     Prior to closing on any Mortgage, Owner shall pay to Manager, at Owner's sole cost, an amount equal to Manager's actual, reasonable out-of-pocket expenses for outside legal services incurred by Manager in connection with such Mortgage.

      8.03    Subordination, Non-Disturbance and Attornment

      A.     Owner shall obtain from any Mortgagee which holds a Mortgage as of the Effective Date or thereafter an agreement (the "Subordination Agreement"), which (i) is reasonably satisfactory in all respects to Manager and such Mortgagee, and (ii) shall be recordable in the jurisdiction where the Hotel is located, pursuant to which:

      1.     The right, title and interest of Manager in and to the Hotel under this Agreement shall be subject and subordinate to the lien of the Mortgage;

      2.     If there is a Foreclosure of such Mortgage, and Termination of this Agreement has not occurred, Manager shall be obligated to each Subsequent Owner to perform all of the terms and conditions of this Agreement for the balance of the remaining Term hereof, with the same force and effect as if such Subsequent Owner were the Owner; and

      3.     If there is a Foreclosure of such Mortgage, (i) this Agreement shall not be terminated, (ii) Mortgagee and all Subsequent Owners shall recognize Manager's rights under this Agreement, (iii) Manager shall not be named as a party in any Foreclosure action or proceeding, and (iv) Manager shall not be disturbed in its right to manage and operate the Hotel pursuant to the provisions of this Agreement.

      B.     In the event that the Subordination Agreement contains provisions requiring Manager (upon a default under the Mortgage, or upon various other stipulated conditions) to pay certain amounts which are otherwise due to Owner under this Agreement to the Mortgagee or its designee (rather than to Owner), Owner hereby gives its consent to such provisions, which consent shall be deemed to be irrevocable until the entire debt secured by the Mortgage has been discharged.

      C.     Prior to encumbering the Hotel or the Site with any Mortgage, Owner shall obtain from the proposed Mortgagee an executed, recordable Subordination Agreement.  Manager



agrees to execute such Subordination Agreement for the benefit of such proposed Mortgagee. If Owner encumbers the Hotel or the Site with a Mortgage without first obtaining such a Subordination Agreement from the Mortgagee: (i) it shall constitute an Event of Default by Owner; and (ii) in addition, Manager shall thereafter have a continuing right to terminate this Agreement upon sixty (60) days' prior written notice to Owner, unless Owner obtains a Subordination Agreement prior to Manager's exercise of such termination right. In addition, any Mortgage described in the preceding sentence shall be subject and subordinate to Manager's rights under this Agreement.

D.     Notwithstanding the subordination of this Agreement which is described in Section 8.03.A.1, if, in connection with the exercise by any Mortgagee of its remedies under any Mortgage which causes Owner to default under this Agreement shall constitute an Event of Default by Owner.

8.04     No Covenants, Conditions or Restrictions

A.     Owner covenants that, as of the Effective Date and during the Term, there will not be (unless Manager has given its prior consent thereto) any covenants, conditions or restrictions, including reciprocal easement agreements or cost-sharing arrangements (individually or collectively referred to as "CC&R(s)") affecting the Site or the Hotel, other than the Permitted Exceptions, (i) which would prohibit or limit Manager from operating the Hotel in accordance with the System Standards, including related amenities proposed for the Hotel; (ii) which would allow the Hotel facilities (for example, parking spaces) to be used by persons other than guests, invitees or employees of the Hotel; (iii) which would allow the Hotel facilities to be used for specified charges or rates which have not been approved by Manager; or (iv) which would subject the Hotel to exclusive arrangements regarding food and beverage operation or retail merchandise.

B.     Unless otherwise agreed by both Owner and Manager, all financial obligations imposed on Owner or on the Hotel pursuant to any CC&Rs shall be paid by Owner from its own funds, and not from Gross Revenues or from the FF&E Reserve unless any such financial obligation would have been treated as a Deduction if such obligation had been a direct expense related solely to the Hotel and not included in a CC&R expense. Manager's consent to any such CC&R shall be conditioned (among other things) on satisfactory evidence that: (i) the CC&R in question provides a reasonable benefit to the operation of the Hotel; (ii) the costs incurred (including administrative expenses) pursuant to such CC&R will be both reasonable and allocated to the Hotel on a reasonable basis; and (iii) no capital expenditures incurred pursuant to said CC&R will be paid from Gross Revenues or from the FF&E Reserve (but rather, such capital expenditures will be paid separately by Owner).

8.05     Liens; Credit

Manager and Owner shall use commercially reasonable efforts to prevent any liens from being filed against the Hotel which arise from any maintenance, repairs, alterations, improvements, renewals or replacements in or to the Hotel, and shall cooperate fully in obtaining



the release of any such liens.  The cost of releasing any lien shall be treated the same as the cost of the matter to which it relates.  In no event shall either party borrow money in the name of or pledge the credit of the other.

## ARTICLE IX

## DEFAULTS

9.01    Events of Default

Each of the following shall constitute a "Default" under this Agreement.

A.      The filing of a voluntary petition in bankruptcy or insolvency or a petition for reorganization under any bankruptcy law by either party, or the admission by either party that it is unable to pay its debts as they become due.  Upon the occurrence of any Default by either party (referred to as the "defaulting party") as described under this Section 9.01.A, said Default shall be deemed an "Event of Default" under this Agreement.  The parties expressly agree that such Event of Default would have a material adverse effect on the non-defaulting party.

B.      The consent to an involuntary petition in bankruptcy or the failure to vacate, within ninety (90) days from the date of entry thereof, any order approving an involuntary petition by either party.  Upon the occurrence of any Default by either party as described under this Section 9.01.B, said Default shall be deemed an "Event of Default" under this Agreement.  The parties expressly agree that such Event of Default would have a material adverse effect on the non-defaulting party.

C.      The entering of an order, judgment or decree by any court of competent jurisdiction, on the application of a creditor, adjudicating either party as bankrupt or insolvent or approving a petition seeking reorganization or appointing a receiver, trustee, or liquidator of all or a substantial part of such party's assets, and such order, judgment or decree's continuing unstayed and in effect for an aggregate of sixty (60) days (whether or not consecutive).  Upon the occurrence of any Default by either party as described under this Section 9.01.C, said Default shall be deemed an "Event of Default" under this Agreement.  The parties expressly agree that such Event of Default would have a material adverse effect on the non-defaulting party.

D.      The failure of either party to make any payment required to be made in accordance with the terms of this Agreement, as of the due date as specified in this Agreement. Upon the occurrence of any Default by either party as described under this Section 9.01.D, said Default shall be deemed an "Event of Default" under this Agreement if the defaulting party fails to cure such Default within ten (10) days after receipt of written notice from the non-defaulting party demanding such cure.

E.      Subject to the provisions of Section 4.1 of the Technical Services Agreement, the failure of Owner to complete the design, construction, furnishing and equipping of the Hotel

37



Improvements, or cause the Flagging Date to occur, in the manner contemplated by the Technical Services Agreement on or before the dates set forth in the time schedules mutually approved by Owner and Manager in Section 4.1 of the Technical Services Agreement and in accordance with the time periods set forth in Section 4.1 of the Technical Services Agreement. Upon the occurrence of any Default by Owner as described under this Section 9.01.E, said Default shall be deemed an "Event of Default" under this Agreement if Owner fails to cure the Default within thirty (30) days after receipt of written notice from Manager demanding such cure.

F.      Owner or any of Owner's Affiliates is or becomes a Specially Designated National or Blocked Person. Upon the occurrence of any Default as described in this Section 9.01.F, said Default shall be deemed an "Event of Default" under this Agreement. The parties expressly agree that such Event of Default would have a material adverse effect on the non-defaulting party.

G.      The failure of either party to perform, keep or fulfill any of the other covenants, undertakings, obligations or conditions set forth in this Agreement, and the continuance of such default for a period of thirty (30) days after the defaulting party's receipt of written notice from the non-defaulting party of said failure. Upon the occurrence of any Default by either party as described under this Section 9.01.G, said Default shall be deemed an "Event of Default" under this Agreement if the defaulting party fails to cure the Default within thirty (30) days after receipt of written notice from the non-defaulting party demanding such cure, or, if the Default is such that it cannot reasonably be cured within said thirty (30) day period of time, if the defaulting party fails to commence the cure of such Default within said thirty (30) day period of time or thereafter fails to diligently pursue such efforts to completion.

9.02    Remedies

A.      Upon the occurrence of an Event of Default, the non-defaulting party shall have the right to pursue any one or more of the following courses of action:

(i)      To institute forthwith any and all proceedings permitted by law or equity with respect to such Event of Default, including, without limitation (but subject to the provisions of Section 11.20 and Section 11.21 hereof), actions for specific performance and/or damages;

(ii)      To avail itself of the remedies described in Section 9.03; and

(iii)      To terminate this Agreement, provided, however, that a non-defaulting party may not terminate this Agreement on the basis of an Event of Default unless and until (x) such Event of Default has a material adverse effect on the non-defaulting party or the operations or financial performance of the Hotel, and (y) if the defaulting party contests the occurrence of the Event of Default or its effect on the non-defaulting party, a court of competent jurisdiction has issued a final, binding and non-appealable order finding that the Event of Default has occurred and that it has such a material adverse effect. The cure periods described under Section 9.01.D and Section 9.01.G shall be tolled until such order is issued.



B.      A non-defaulting party that has the right to terminate this Agreement pursuant to Section 9.02.A(iii) shall do so by written notice to the defaulting party submitted after satisfaction of the provisions of Section 9.02.A(iii).  Such termination shall be effective as of the effective date set forth in such notice, provided that such effective date shall occur at least thirty (30) days after the date on which the defaulting party receives such notice and further provided that, if the defaulting party is Manager, such period of thirty (30) days shall be extended to seventy-five (75) days (or such longer period of time as may be necessary under Legal Requirements pertaining to termination of employment).

9.03    Additional Remedies

A.      Upon the occurrence of a Default by either party under the provisions of Section 9.01.D, the amount owed to the non-defaulting party shall accrue interest, at an annual rate equal to the Prime Rate plus three (3) percentage points, from and after the date on which the Default occurred.

B.      Upon the occurrence of a Default by Owner under the provisions of Section 9.01.D, Manager shall have the right (without affecting Manager's other remedies under this Agreement) to withdraw the amount (plus accrued interest as described in Section 9.03.A) owed to Manager by Owner from distributions otherwise payable to Owner pursuant to Section 3.02 and Section 4.01 of this Agreement.

C.      Manager and/or any Affiliate of Manager shall be entitled, in case of any breach of the covenants of Section 11.11.E, Section 11.11.F or Section 11.12 by Owner or others claiming through it, to injunctive relief and to any other right or remedy available at law or in equity.

D.      The remedies granted under Section 9.02 and Section 9.03 shall not be in substitution for, but shall be in addition to, any and all rights and remedies available to the non-defaulting party (including, without limitation, injunctive relief and damages) by reason of applicable provisions of law or equity and shall survive Termination.

## ARTICLE X

## ASSIGNMENT AND SALE

10.01   Assignment

A.      Manager shall not assign or transfer its interest in this Agreement without the prior consent of Owner; provided, however, that Manager shall have the right, without Owner's consent, to (1) assign its interest in this Agreement to Marriott or any Affiliate of Marriott, (2) assign its interest in this Agreement in connection with a merger or consolidation or a sale of all or substantially all of the assets of Manager or Marriott, and (3) assign its interest in this



Agreement in connection with a merger or consolidation or a sale of all or substantially all of the Boutique System assets owned by Manager, Marriott or any Affiliate of Manager or Marriott.

B.      Owner shall not assign or transfer its interest in this Agreement without the prior consent of Manager; provided, however, that Owner shall have the right, without such consent, to (1) conditionally assign this Agreement as security for a Mortgage encumbering the Hotel in accordance with this Agreement, and (2) assign its interest in this Agreement in connection with a Sale of the Hotel which complies with the provisions of Section 10.02 of this Agreement.

C.      In the event either party consents to an assignment or transfer of this Agreement by the other, no further assignment or transfer shall be made without the express consent in writing of such party, unless such assignment or transfer may otherwise be made without such consent pursuant to the terms of this Agreement.  An assignment or transfer by either Owner or Manager of its interest in this Agreement shall not relieve Owner or Manager, as the case may be, from its respective obligations under this Agreement, and shall inure to the benefit of, and be binding upon, its respective successors, heirs, legal representatives, or assigns. Notwithstanding the foregoing, a Sale of the Hotel made in compliance with the provisions of Section 10.02 below shall relieve Owner of its obligations and liabilities under this Agreement arising or accruing from and after the effective date of such Sale of the Hotel provided the purchaser assumes the obligations of Owner hereunder arising or accruing from and after such date in form and substance reasonably satisfactory to Manager.

10.02   Sale of the Hotel

A.      Owner shall not enter into any Sale of the Hotel to any Person (or any Affiliate of any Person) who:  (1) does not, in Manager's reasonable judgment, have sufficient financial resources and liquidity to fulfill Owner's obligations under this Agreement; (2) is known in the community as being of bad moral character, or has been convicted of a felony in any state or federal court, or is in control of or controlled by persons who have been convicted of felonies in any state or federal court(provided, however, the felony conviction in and of itself will not bar a person who has otherwise generally been deemed rehabilitated within the business community); (3) is engaged in the business of operating (as distinguished from owning or financing) a brand of hotels or other lodging facilities (or operating a group of hotels or other lodging facilities that are not affiliated with a brand but that are marketed and operated as a collective group) in competition with Manager, Marriott or any Affiliate of either; or (4) is, or any of its Affiliates or any other Person related to such Person that is proscribed by applicable law is, a Specially Designated National or Blocked Person.  For purposes hereof, a Person who, following the closing of a Sale of the Hotel would have a verifiable net worth, determined in accordance with generally accepted accounting principles, of at least ten percent (10%) of the purchase price of the Hotel shall be conclusively deemed to have sufficient financial resources and liquidity to fulfill Owner's obligations under this Agreement.

B.      If Owner decides to negotiate a Sale of the Hotel to a third party, then prior to offering the Hotel for sale or negotiating a Sale of the Hotel with any third party, Owner will give Manager notice of such decision, and both Owner and Manager will, during the period of



thirty (30) days after such notice, attempt in good faith to negotiate a mutually satisfactory agreement for the purchase of the Hotel at a price and on terms acceptable to Owner, in Owner's sole discretion. For purposes of this Section 10.02.B, a sale to a third party shall not include any transfer, sale or assignment to a Mortgagee nor to a sale at Foreclosure under a Mortgage. If, after the expiration of thirty (30) days following the date of Owner's notice of its desire to sell the Hotel, Owner and Manager have not entered into a mutually acceptable agreement for the purchase of the Hotel, Owner shall be free to process a Sale of the Hotel to a third party, provided that any such Sale of the Hotel shall be subject to the following further conditions:

1.      Owner shall deliver a written notice (the "Notice of Proposed Sale") of the proposed Sale of the Hotel to Manager stating the name of the prospective purchaser or tenant, as the case may be together with all other information reasonably requested by Manager.

2.      Within fifteen (15) Business Days after the date of receipt of such Notice of Proposed Sale from Owner and such other information, Manager shall elect, by written notice to Owner, one of the following two (2) alternatives:

a.      To consent to such Sale of the Hotel and to the assignment of this Agreement to such purchaser or tenant, provided that concurrently with the closing thereof, the purchaser or tenant, as the case may be, shall, by appropriate instrument in form satisfactory to Manager, assume all of Owner's obligations under this Agreement. An executed original of such assumption agreement shall be delivered to Manager; or

b.      To not consent to such proposed Sale of the Hotel, which refusal to consent may only be based upon such Sale of the Hotel not being in compliance with Section 10.02.A, in which event such Sale of the Hotel shall not be permitted hereunder and it shall be an Event of Default for Owner to proceed with such Sale of the Hotel.

C.      If Manager shall fail to elect one of the alternatives set forth in Section 10.02.B.2, within said fifteen (15) Business Day period, such failure shall be deemed to constitute an election to consent under Section 10.02.B.2.a, and the provisions thereof shall prevail as if Manager had consented in writing thereto. Any proposed Sale of the Hotel with respect to which a Notice of Proposed Sale has been delivered by Owner to Manager hereunder must be finalized within two hundred seventy (270) days following the delivery of such Notice of Proposed Sale. Failing such finalization, such Notice of Proposed Sale, and any response thereto given by Manager, shall be null and void and all of the provisions of Section 10.02.B and Section 10.02.C must again be complied with before Owner shall have the right to finalize a Sale of the Hotel upon the terms contained in said Notice of Proposed Sale, or otherwise.

D.      If Manager consents (or is deemed to have consented) to the proposed Sale of the Hotel, then Manager shall have the option to require (in lieu of receipt of the assumption agreement described in Section 10.02.B.2.a) that such purchaser or tenant enter into a new management agreement with Manager, which new management agreement will be on all of the terms and conditions of this Agreement (except as otherwise agreed by Manager and such purchaser or tenant) except that the Initial Term and Renewal Term(s) of any such new



agreement shall consist only of the balance of the Initial Term and Renewal Term(s) remaining under this Agreement at the time of execution of any such new management agreement. Such new management agreement shall be executed by Manager and such new owner at the time of closing of the Sale of the Hotel, and a memorandum of such new management agreement shall be executed by the parties and recorded immediately following recording of the deed or memorandum of lease (or assignment) and prior to recordation of any other documents.

E.      Owner hereby represents and warrants to Manager that: (i) neither Owner nor any of Owner's Affiliates nor any other Person related to Owner that is proscribed by applicable law is a Specially Designated National or Blocked Person; and (ii) its equity is directly and (if applicable) indirectly owned as shown on Exhibit F.  In connection with the possibility of a Sale of the Hotel achieved by means of a transfer of the controlling interest in Owner, Owner shall, from time to time, within thirty (30) days after written request by Manager, furnish Manager with a list of the names and addresses of the direct and indirect owners of capital stock, partnership interest, or other proprietary interest of Owner.

F.      It is understood that no Sale of the Hotel shall reduce or otherwise affect: (i) the current level of Working Capital; (ii) the outstanding balance deposited in the FF&E Reserve; (iii) the outstanding balance in any of the Operating Accounts maintained by Manager pursuant to this Agreement; or (iv) Owner's Priority.  If, in connection with any Sale of the Hotel, the selling Owner intends to withdraw, for its own use, any of the cash deposits described in the preceding sentence, the selling Owner must obtain the contractual obligation of the buying Owner to replenish those deposits (in the identical amounts) simultaneously with such withdrawal.  The selling Owner is hereby contractually obligated to Manager to ensure that such replenishment in fact occurs.  The obligations described in this Section 10.02.F shall survive such Sale of the Hotel and shall survive Termination.

G.      The terms and provisions of this Agreement shall be binding upon all successors to Owner's interest in the Site and/or the Hotel.  Each selling Owner shall be obligated to Manager to obtain from each buying Owner an assumption (reasonably satisfactory to Manager) of this Agreement with respect to all obligations accruing from and after the date such assignee takes title to the Hotel, and this obligation of the selling Owner (as well as all other obligations under this Agreement) shall survive any Sale of the Hotel and any Termination of this Agreement.

H.      Manager shall have the right (without prejudice to its rights to declare an Event of Default and seek damages or other compensation) to terminate this Agreement, on thirty (30) days' written notice, if title to or possession of the Hotel is transferred by judicial or administrative process (including, without limitation, a Foreclosure, or a sale pursuant to an order of a bankruptcy court, or a sale by a court-appointed receiver) to an individual or entity which would not qualify as a permitted transferee under Section 10.02.A, regardless of whether or not such transfer is the voluntary action of the transferring Owner, or whether (under applicable law) the Owner is in fact the transferor.



I.　Prior to closing on any Sale of the Hotel, Owner shall pay to Manager, at Owner's sole cost, an amount equal to Manager's actual, reasonable out-of-pocket expenses for outside legal services incurred by Manager in connection with such Sale of the Hotel (collectively, the "Transfer Fee").  Payment of the Transfer Fee is intended to cover costs incurred by Manager as a result of the Sale of the Hotel.

## ARTICLE XI

## MISCELLANEOUS

### 11.01　Right to Make Agreement

Each party warrants, with respect to itself, that neither the execution of this Agreement nor the finalization of the transactions contemplated hereby shall violate any provision of law or judgment, writ, injunction, order or decree of any court or governmental authority having jurisdiction over it; result in or constitute a breach or default under any indenture, contract, other commitment or restriction to which it is a party or by which it is bound; or require any consent, vote or approval which has not been taken, or at the time of the transaction involved shall not have been given or taken.  Each party covenants that it has and will continue to have throughout the Term and any extensions thereof, the full right to enter into this Agreement and perform its obligations hereunder.

### 11.02　Consents and Cooperation

Wherever in this Agreement the consent or approval of Owner or Manager is required, such consent or approval unless otherwise noted shall not be unreasonably withheld, delayed or conditioned, shall be in writing and shall be executed by a duly authorized officer or agent of the party granting such consent or approval.  If either Owner or Manager fails to respond within thirty (30) days to a request by the other party for a consent or approval, such consent or approval shall be deemed to have been given, except (i) as otherwise expressly provided in this Agreement, or (ii) in the case of consents or approvals that may be granted or withheld in the sole discretion of a party, in which case a failure to respond shall be deemed to be a withholding of consent or approval.  Additionally, subject to Section 1.16, Owner agrees to cooperate with Manager by executing such leases, subleases, licenses, concessions, equipment leases, service contracts and other agreements negotiated in good faith by Manager and pertaining to the Hotel that, in Manager's reasonable judgment, should be made in the name of the Owner.  Each Owner shall be bound by the approvals and consents granted by any prior Owner.

### 11.03　Relationship

In the performance of this Agreement, Manager shall act solely as an independent contractor; provided, however, Manager shall be deemed to be a fiduciary solely with respect to any funds held by it in the Operating Accounts, the FF&E Reserve or any other funds held by Manager or its Affiliates for Owner (or as part of the MBS System, but not for any other purpose



or function or with respect to any other duty or function under this Agreement). Neither this Agreement nor any agreements, instruments, documents, or transactions contemplated hereby shall in any respect be interpreted, deemed or construed as making Manager a partner, joint venture with, or agent of, Owner. Owner and Manager agree that neither party will make any contrary assertion, claim or counterclaim in any action, suit, Expert resolution pursuant to Section 11.20, arbitration or other legal proceedings involving Owner and Manager.

11.04   Applicable Law and Venue

This Agreement is executed pursuant to, and shall be construed under and governed exclusively by, the laws of the State of New York applicable to contracts formed and to be performed entirely within the State of New York, without regard to New York choice of law rules. Except for any determinations to be made by the panel of Experts pursuant to the terms and conditions of this Agreement, each party hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the United States District Court for the District of Hawaii to the fullest extent that Court has subject matter jurisdiction, and otherwise to the non-exclusive jurisdiction of the Courts of the State of Hawaii in and for the jurisdiction or judicial district in which the Hotel is located. This consent to personal jurisdiction shall be self operative.

11.05   Recordation

The terms and provisions of this Agreement shall run with the parcel of land designated as the Site, and with Owner's interest therein, and shall be binding upon all successors to such interest. Simultaneously with the execution of this Agreement, the parties shall execute a recordable "Memorandum of Management Agreement," in the form which is attached hereto as Exhibit G. Such memorandum shall be recorded or registered promptly following the Effective Date in the jurisdiction in which the Hotel is located. Any cost of such recordation shall be reimbursed from Gross Revenues and treated as a Deduction.

11.06   Headings

Headings of articles and sections are inserted only for convenience and are in no way to be construed as a limitation on the scope of the particular articles or sections to which they refer.

11.07   Notices

Notices, statements and other communications to be given under the terms of this Agreement shall be in writing and delivered by hand against receipt or sent by certified or registered mail, postage prepaid, return receipt requested or by nationally utilized overnight delivery service, addressed to the parties as follows:

