# EXHIBIT 2

"Qualified Mortgage" shall have the meaning ascribed to it in Section 8.02.

"Registered Marks" shall have the meaning ascribed to it in Section 11.12.B.

"Related Party(ies)" shall mean any Person that, directly or indirectly, is controlled by or is under common control with Marriott or Manager. For purposes of this definition, the term "control" (including the terms "controlling," "controlled by" and "under common control with") of a Person means the possession, directly or indirectly, of the power: (i) to vote more than thirty-five percent (35%) of the voting stock or equity interests of such Person; or (ii) to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting stock or equity interests, by contract or otherwise.

"Renewal Term" shall have the meaning ascribed to it in Section 2.01.

"Restricted Area One" shall mean that area described in the narrative that is set forth in Exhibit H-1 and that is shown on the map attached hereto as Exhibit H-2. If there is any conflict between the narrative description in Exhibit H-1 and the map shown on Exhibit H-2, the narrative description shall govern.

"Restricted Area Two" shall mean the island of Oahu, Hawaii.

"Restricted Hotel" shall mean any hotel operating under the "EDITION" Trade Name or mark as a member of the EDITION Hotel System. The term "Restricted Hotel" shall not include any one or more of the following: (i) any Marriott hotel, JW Marriott hotel, RITZ-CARLTON hotel, Bvlgari hotel, Courtyard by Marriott hotel, Renaissance hotel, Renaissance ClubSport hotel, Nickelodeon Resorts by Marriott, Conference Center by Marriott, Residence Inn by Marriott, Fairfield Inn, Marriott Vacation Club, Grand Residences, RITZ-CARLTON Club, Horizons, SpringHill Suites, TownePlace Suites, any hotel operating as a member of the Boutique System that is not operating under the "EDITION" Trade Name or mark as a member of the EDITION Hotel System, or any other lodging product (including Vacation Club Products or residences) which is not operated as a boutique hotel under the "EDITION" Trade Name or mark and as a member of the EDITION Hotel System; (ii) any future lodging product developed by Manager or one of its Affiliates which is not included within the EDITION Hotel System; or (iii) any hotel or lodging product that is not flagged or named as an "EDITION" even if such hotel or lodging product is included in the "EDITION" directory or any of Manager's other brand directories, including using the tag line "Managed by "EDITION" " and/or is included in any central reservation system and/or marketing system utilized by Manager and its Affiliates, and operated by Manager or its Affiliates.

"Revenue Data Publication" shall mean Smith's STAR Report, a monthly publication distributed by Smith Travel Research, Inc. of Gallatin, Tennessee, or an alternative source, reasonably satisfactory to both parties, of data regarding the Revenue Per Available Room of hotels in the general trade area of the Hotel. If such Smith's STAR Report is discontinued in the future, or ceases (in the reasonable opinion of either Owner or Manager) to be a satisfactory



source of data regarding the Revenue Per Available Room of various hotels in the general trade area of the Hotel, Manager shall select an alternative source for such data, subject to Owner's approval. If the parties fail to agree on such alternative source within a reasonable period of time, the matter shall be resolved by the panel of Experts in accordance with the provisions of Section 11.20.

"Revenue Index" shall mean the number that is equal to (a) the Revenue Per Available Room for the Hotel divided by (b) the average Revenue Per Available Room for the hotels in the Competitive Set, as set forth in the Revenue Data Publication. Appropriate adjustments to the Revenue Index shall be made in the event of a major renovation of the Hotel.

"Revenue Index Threshold" shall mean the fraction equal to ninety (90) divided by one hundred (100), or .90 as a decimal. However, if the entry of a new hotel into the Competitive Set, the removal of a hotel from the Competitive Set, or a major renovation or re-positioning of a hotel in the Competitive Set causes significant variations in the Revenue Index that do not reflect the Hotel's true position in the relevant market, appropriate adjustments shall be made to the Revenue Index Threshold by mutual consent of Owner and Manager, and if the parties cannot agree on an appropriate adjustment, the matter shall be resolved by the panel of Experts in accordance with the provisions of Section 11.20.

"Revenue Per Available Room" shall mean (i) the term "revenue per available room" as defined by the Revenue Data Publication, or (ii) if the Revenue Data Publication is no longer being used (as more particularly set forth in the definition of "Revenue Data Publication"), the aggregate gross room revenues of the hotel in question for a given period of time divided by the total room nights for such period. If clause (ii) of the preceding sentence is being used, a "room" shall be an available hotel guestroom that is keyed as a single unit.

"Routine Capital Expenditures" shall mean certain routine, non-major expenditures which are classified as "capital expenditures" under generally accepted accounting principles, but which will be funded from the FF&E Reserve (pursuant to Section 5.02), rather than pursuant to the provisions of Section 5.03. Routine Capital Expenditures consist of the following types of expenditures: exterior and interior repainting; resurfacing building walls and floors; resurfacing parking areas; replacing folding walls; and miscellaneous similar expenditures (all such types of expenditures to be in accordance with Manager's policies as then generally implemented throughout the EDITION Hotel System).

"Sale of the Hotel" shall mean any sale, assignment, transfer or other disposition, for value or otherwise, voluntary or involuntary, of the fee simple or leasehold title to the Site and/or the Hotel excluding any such sale, assignment, transfer or other disposition to an Affiliate of Owner provided such Affiliate is a permitted transferee under Section 10.02.A and Owner promptly provides notice to Manager of such sale, assignment, transfer or other disposition to an Affiliate of Owner. For purposes of this Agreement, a Sale of the Hotel shall also include: (i) a lease (or sublease) of all or substantially all of the Hotel or Site; or (ii) any sale, assignment, transfer or other disposition, for value or otherwise, voluntary or involuntary, in a single transaction or a series of transactions, of the controlling interest in Owner. The phrase



"controlling interest," as used in the preceding sentence, shall mean either: (x) the right to exercise, directly or indirectly, more than fifty percent (50%) of the voting rights attributable to the shares of Owner (through ownership of such shares or by contract); or (y) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of Owner. Notwithstanding the foregoing, in no event shall the sale, transfer or other disposition of shares of stock traded on a public exchange constitute, in whole or in part, a Sale of the Hotel.

"Schrager" shall mean, collectively, Ian Schrager and I. S. International, LLC.

"Shortfall Amount" shall have the meaning ascribed to it in Section 2.02.B.1.

"Shortfall Notice" shall have the meaning ascribed to it in Section 2.02.B.

"Shortfall Payment" shall have the meaning ascribed to it in Section 2.02.B.

"Site" shall have the meaning ascribed to it in Section A of the Recitals.

"Soft Goods" shall mean all fabric, textile and flexible plastic products (not including items which are classified as "Fixed Asset Supplies") which are used in furnishing the Hotel, including, without limitation: corner guards, carpet, carpet base, fabric or vinyl wall covering, graphics, lamps, window treatments, artwork, upholstered furniture, task chairs, bed skirts, bed scarfs, shower curtain/liner, shower rod, artifacts, bedspreads, mirrors and similar items.

"Software" shall mean all computer software and accompanying documentation (including all future upgrades, enhancements, additions, substitutions and modifications thereof), other than computer software which is generally commercially available, which are used by Manager in connection with operating or otherwise providing services to the Hotel and/or the EDITION Hotel System, including without limitation the property management system, the reservation system and the other electronic systems used by Manager in connection with operating or otherwise providing services to the Hotel and/or the EDITION Hotel System.

"Specially Designated National or Blocked Person" shall mean: (i) persons designated by the U.S. Department of Treasury's Office of Foreign Assets Control, or other governmental entity, from time to time as a "specially designated national or blocked person" or similar status, (ii) a person described in Section 1 of U.S. Executive Order 13224 issued on September 23, 2001, or (iii) a person otherwise identified by government or legal authority as a person with whom Manager or its Affiliates are prohibited from transacting business.

"Subordination Agreement" shall have the meaning ascribed to it in Section 8.03.

"Subsequent Owner" shall mean any individual or entity that acquires title to or control or possession of the Hotel at or through a Foreclosure (together with any successors or assigns thereof), including, without limitation, (i) Mortgagee, (ii) any purchaser of the Hotel from Mortgagee, or any lessee of the Hotel from Mortgagee, or (iii) any purchaser of the Hotel at Foreclosure.

72



"System Standards" shall mean any one or more (as the context requires) of the following three (3) categories of standards: (i) operational standards (for example, services offered to guests, quality of food and beverages, cleanliness, staffing and employee compensation and benefits, Chain Services, frequent traveler programs such as the Marriott Rewards Program and other similar programs, etc.); (ii) physical standards (for example, quality of the Hotel Improvements, FF&E, and Fixed Asset Supplies, frequency of FF&E replacements, etc.); and (iii) technology standards (for example, those relating to software, hardware, telecommunications, high speed internet access, systems security and information technology); each of such standards shall be the standard which is generally prevailing or in the process of being implemented at all or substantially all other hotels in the EDITION Hotel System, including all services and facilities in connection therewith that are customary and usual at all or substantially all hotels in the EDITION Hotel System.

"Technical Services Agreement" shall mean that certain Design and Technical Services and Pre-Opening Agreement, executed by and among Owner, Manager and I.S. International, Inc. dated as of the date hereof, as the same may be amended, restated or supplemented from time to time.

"Term" shall have the meaning ascribed to it in Section 2.01.

"Termination" shall mean the expiration or sooner cessation of this Agreement.

"Termination Notice" shall have the meaning ascribed to it in Section 2.02.A.

"Total Casualty" shall mean any fire or other casualty which results in damage to the Hotel and its contents to the extent that the total cost of repairing and/or replacing the damaged portion of the Hotel to the same condition as existed previously would be sixty percent (60%) or more of the then total replacement cost of the Hotel.

"Trade Name" shall mean any name, whether informal (such as a fictitious name or d/b/a) or formal (such as the full legal name of a corporation or partnership) which is used to identify an entity.

"Transfer Fee" shall have the meaning ascribed to it in Section 10.02.I.

"Unbranded Period" shall have the meaning ascribed to it in Section 1.03.B.

"Uniform System of Accounts" shall mean the *Uniform System of Accounts for the Lodging Industry*, Tenth Revised Edition, 2006, as published by the American Hotel & Lodging Educational Institute, as revised from time to time to the extent such revision has been or is in the process of being generally implemented within the Boutique System.

"Unrestricted Rebate" shall have the meaning ascribed to it in Section 1.15.B.



"Vacation Club Products" shall mean timeshare, fractional, interval, vacation club, destination club, vacation membership, private membership club, private residence club, and points club products, programs and services and shall be broadly construed to include other forms of products, programs and services wherein purchasers acquire an ownership interest, use right or other entitlement to use certain determinable holiday villa or apartment units and associated facilities on a periodic basis and pay for such ownership interest, use right or other entitlement in advance.

"WARN Act" shall mean the Worker Adjustment and Retraining Notification Act, 29 U.S.C. 2101 *et seq.*

"Working Capital" shall mean funds that are used in the day-to-day operation of the business of the Hotel, including, without limitation, amounts sufficient for the maintenance of change and petty cash funds, amounts deposited in operating bank accounts, receivables, amounts deposited in payroll accounts, prepaid expenses and funds required to maintain Inventories, less accounts payable and accrued current liabilities.

**[SIGNATURES FOLLOW ON NEXT PAGE]**



Case 1:11-cv-06488-BSJ   Document 14-7   Filed 10/11/11   Page 7 of 13

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal as of the day and year first written above.

By: eRealty Fund, LLC, a California limited liability company, its Manager

**OWNER:**

**M WAIKIKI LLC**, a Hawaii limited liability company

By: _____
Print Name: _____
Title: _____

**MANAGER:**

**MARRIOTT HOTEL SERVICES, INC.**,
a Delaware corporation

By: _____
Yoav K. Gery
Authorized Signatory

75



EXHIBIT A

LEGAL DESCRIPTION OF THE SITE

All of that certain parcel of land situate at Kalia, Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

LOT 1-B, area 71,516 square feet, as shown on Map 2, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Consolidation No. 64 of Ala Moana Properties, Limited;

Together with a perpetual easement appurtenant to said Lot 1-B for the construction, use and maintenance for storm drain purposes only over, across or under Lot 25, as shown on Map 4 of Land Court Consolidation No. 32 of Bishop Trust Company, Limited, Trustee for Hobron Land Trust;

Together also with a perpetual nonexclusive easement appurtenant to Lot 1-B for pedestrian and vehicular traffic over and across Lot 23, as shown on said Map 4;

Together with a perpetual overhead easement over and across Lot 1-C and a perpetual easement under, over and across said Lot 1-C for utility, communications, sewer and other like purposes; said easements shall be utilized by the owner of the above described premises in a manner which will not interfere with the free flowage of vehicular and pedestrian traffic on said lot;

Together also with the right to construct, repair, replace, maintain and improve for and on behalf of the State of Hawaii, the following:

(a) An elevated pedestrian right-of-way over Lot 25, as shown on Map 4 of Land Court Consolidation No. 32;

(b) One elevated public pedestrian overpass extending from said elevated public pedestrian right-of-way in (a) hereinabove, provided, however, the said overpass may be relocated with the approval of the State of Hawaii;

Together with the foundations and columns to support the structures in subparagraphs (a) and (b) hereinabove, and, also, together with the installation, repair, replacement, and maintenance of utilities and other similar appurtenances in conjunction with the structures mentioned in said subparagraphs (a) and (b);



As granted and reserved by Land Court Document No. 324984, and subject to the conditions contained in said Document.

Being land(s) described in Transfer Certificate of Title No. 813,270 issued to M WAIKIKI LLC, a Hawaii limited liability company.

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR    : ANEKONA ISLANDER, LLC, a Delaware limited liability company

GRANTEE    : M WAIKIKI LLC, a Hawaii limited liability company

DATED      : July 12, 2006
FILED      : Land Court Document No. 3452194



## EXHIBIT B

### LISTING OF CENTRAL OFFICE SERVICES

"Central Office Services" shall mean the following services (other than those services that are contained within Chain Services or Marketing Fee Services) that are furnished on a central or regional basis to the Boutique System:

1. Executive supervision of hotel operations. As of the Effective Date, this is done by officers holding the title of Executive Vice President or above and (on a regional basis) by the most senior executive currently holding the title of Regional Senior Vice President or above (such regional executive, or the equivalent thereof as the organizational structure of Manager changes over time, the "Regional Executive"). Supervision of employees by officers below the level of Executive Vice President or (on a regional basis) the Regional Executive shall follow the function to which it relates: that is, supervision below the level of Executive Vice President/Regional Executive that relates to a Chain Service or Marketing Fee Service shall be reimbursed as Chain Services or Marketing Fee Services, as appropriate; supervision below the level of Executive Vice President/Regional Executive that relates to a Central Office Service, such as Legal or Corporate Finance, shall be a Central Office Service. In the event that these titles are modified in the future, executive supervision will mean supervision by persons holding comparable positions of authority.

2. Planning and policy making, including corporate planning and policy making for Marriott International, Inc., strategic planning functions, brand policy or planning, and any other policy or planning functions not related to an area that is subject to reimbursement as a Chain Service, Marketing Fee Service or Direct Deduction. Policy and planning functions relating to an area of Chain Services, Marketing Fee Services, or Direct Deduction (provided it is below the level of Executive Vice President or (on a regional basis) Regional Executive, or other levels of comparable authority in the future) shall be reimbursed as part of that Chain Service, Marketing Fee Service or Direct Deduction.

3. Corporate Finance, including corporate treasury, financial planning and analysis and corporate accounting (but excluding accounting services that are provided to the hotels as part of Chain Services or the MBS Systems).

4. Corporate personnel and employee relations, including human resources and employee relations applicable to Marriott International, Inc., and its subsidiaries as a whole.

5. Legal services (whether provided by in-house counsel or, at the election of Manager, by outside counsel) performed (i) to protect the Boutique Trademarks, (ii) to represent Manager on issues relating to the relationship between Owner and Manager, except as described in Section 8.02.D and Section 10.02.I, and (iii) to benefit the Boutique System (for example, legal advice necessary to support benefits administration systemwide, and the drafting or



negotiating of national, corporate or regional contracts, form documents and system standards manuals, policies, or guidelines to be used in the Boutique System).

6. Trademark protection relating to the Boutique Trademarks, which are used generally by the Boutique System.

7. Product research and development costs, including new product research and development, the development of brand standards, and research and development of any type not relating to an area permitted to be reimbursed. Research and development costs relating to an area permitted to be reimbursed as a Chain Service, Marketing Fee Service, or Direct Deduction, such as sales and marketing research, shall be reimbursed as part of that Chain Service, Marketing Fee Service, or Direct Deduction, as appropriate.

8. Certain technical and operational services. The services of technical and operational specialists of Marriott International, Inc., and its Affiliates making routine periodic visits to the Hotel. These services shall not include (i) personnel of the Architecture and Construction Division of Manager (or any of its Affiliates) providing architectural, technical or procurement services for the Hotel, or (ii) other non-routine services that may be provided as Direct Deductions.



## EXHIBIT C

## LISTING OF CURRENT CHAIN SERVICES

NOTE: Chain Services are services that are furnished generally to the EDITION Hotel System hotels on a central basis and that fall into the following categories of services: Marriott Worldwide Reservation System; and Computer, Payroll and Accounting Services. As of December 31, 2007, these categories include the areas set forth below (and the supervision of such areas below the level of Executive Vice President and (on a regional basis) Regional Executive):

1. Central Reservation Services, which includes the following subcategories:

    - Voice (800 number) reservations booked through domestic and international central reservations centers
    - Reservations booked through Marriott.com and other electronic reservations channels including the Global Distribution System (GDS)

2. Computer Payroll and Accounting Services, which includes the following subcategories:

    - Computer operating statement, analysis report and general ledger accounting system
    - Marriott's automated payroll and benefits accounting system
    - Operation and support of the computerized accounting reporting
    - Operation and support of property computer systems including:
        - Point of sales system
        - Rooms operations, Food and Beverage and Engineering systems support
        - Sales/Marketing systems
        - PC support and systems applications development
        - Global Field Services property systems support



# EXHIBIT C-1

## LISTING OF CURRENT MARKETING FEE SERVICES

1. National Sales Office Services, which includes the following subcategories:

    - International sales offices
    - National sales offices
    - Distribution sales
    - Travel industry sales
    - Intermediary sales
    - E-commerce sales
    - Regional sales and marketing
    - Revenue management
    - Customer events

2. National Advertising and Promotion Services, which includes the following subcategories:

    - Advertising administration, Advertising media and Advertising production
    - Advertising agencies
    - Public relations program support
    - Development of brochures, directories, and other marketing collateral
    - Production costs for promotional goods
    - Market research, including the GSS system

