UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M WAIKIKI LLC,<br><br>     Plaintiff,<br><br>v.<br><br>MARRIOTT HOTEL SERVICES, INC., I.S.<br>INTERNATIONAL, LLC and IAN<br>SCHRAGER,<br><br>     Defendants, | 1:11-cv-06488-BSJ<br><br>(Removed from the Supreme Court for<br>the State of New York, County of New<br>York Case No. 651457/2011)<br><br>**Oral Argument Requested** |
| MARRIOTT HOTEL SERVICES, INC.,<br><br>     Counterclaim-Plaintiff,<br><br>v.<br><br>M WAIKIKI LLC,<br><br>     Counterclaim-Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MARRIOTT HOTEL SERVICES, INC.'S
MOTION FOR ABSTENTION, REMAND, AND COSTS,
AND IN OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER VENUE**

JENNER & BLOCK LLP
Richard F. Ziegler
Brian J. Fischer
Colleen A. Harrison
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 909-0815

David A. Handzo (*pro hac vice* motion forthcoming)
Michael B. DeSanctis
Lindsay C. Harrison (*pro hac vice* motion forthcoming)
Kelly D. Gardner
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 661-4956

*Attorneys for Defendant and Counterclaim-Plaintiff Marriott Hotel Services, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ......................................................................................................3

A.    The Parties' Agreements and Owner's Complaint. ............................................3

B.    Marriott's Motion to Dismiss.................................................................................4

C.    Owner's Unlawful Self-Help, the TRO, and Marriott's Counterclaims. ............5

D.    Owner's Bankruptcy Case, Removal Notice, and Motion to Transfer Venue....8

ARGUMENT ........................................................................................................................10

I.    MANDATORY ABSTENTION IS REQUIRED.................................................10

II.    ALTERNATIVELY, PERMISSIVE ABSTENTION AND EQUITABLE
REMAND ARE WARRANTED. .........................................................................14

III.    OWNER'S MOTION TO TRANSFER VENUE IS MOOT, AND TRANSFER IS
OTHERWISE UNWARRANTED. ......................................................................18

IV.    MARRIOTT'S COSTS AND EXPENSES SHOULD BE AWARDED. ...........22

CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Ace Secs. Corp.*,
   No. 11 Civ. 1914(LBS), 2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ..........................10, 13

*Anglo Am. Ins. Grp., PLC v. Calfed, Inc.*,
   916 F. Supp. 1324 (S.D.N.Y. 1996).......................................................................................21

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
   396 B.R. 602 (S.D.N.Y. 2008)................................................................................................15

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
   337 B.R. 22 (S.D.N.Y. 2005)..................................................................................................10

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..............................................................................................5, 17

*Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc.*,
   183 F.3d 105 (2d Cir. 1999)...................................................................................................22

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006).....................................................................................................19

*Gassman v. Gassman, Griper & Golodny*,
   No. 097 Civ. 0093(RO), 1997 WL 603439 (S.D.N.Y. Sept. 30, 1997)............................15, 18

*Greenidge v. Mundo Shipping Corp.*,
   60 F. Supp. 2d 10 (E.D.N.Y. 1999) .......................................................................................23

*Hart v. Bello*,
   No. 11 Civ. 67(RMB), 2011 WL 1584577 (S.D.N.Y. Apr. 27, 2011) ...................................15

*In re Ames Dep't Stores, Inc.*,
   No. 06 cv 5394(BSJ)(THK), 2008 WL 7542200 (S.D.N.Y. June 4, 2008)............................11

*In re Best Prods. Co.*,
   68 F.3d 26 (2d Cir. 1995) ......................................................................................................11

*In re Cathedral of the Incarnation in the Diocese of Long Island*,
   99 F.3d 66 (2d Cir. 1996) ......................................................................................................14

*In re Eclair Bakery Ltd*,
   255 B.R. 121 (Bankr. S.D.N.Y. 2000) ...................................................................................21

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993)....................................................................................................11

*Iragorri v. United Tech. Corp.*,
    274 F.3d 65 (2d Cir. 2001)................................................................................................20

*Laumann Mfg. Corp. v. Castings USA, Inc.*,
    913 F. Supp. 712 (E.D.N.Y. 1996) ...................................................................................21

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) .............................................................................................5

*Lifetime Bands, Inc. v. ARC Internat'l, SA*,
    No. 09 Civ. 9792(LAK), 2010 WL 454680 (S.D.N.Y. Jan. 29, 2010)............................10, 18

*Little Rest Twelve, Inc. v. Visan*,
    No. 11 Civ. 2306(JGK), 2011 WL 3055375 (S.D.N.Y. July 20, 2011) ......................... passim

*McHale v. Citibank, N.A.*,
    No. 09 CIV. 6064, 2009 WL 2599749 (S.D.N.Y. Aug. 24, 2009) .........................................19

*Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*,
    971 F.2d 917 (2d Cir. 1992).............................................................................................22

*Mt. McKinley Ins. Co. v. Corning, Inc.*,
    399 F.3d 436 (2d Cir. 2005).............................................................................................10

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011).............................................................................................13

*Porrazzo v. Bumble Bee Foods, LLC*,
    No. 10-CV-4367 (CS), 2011 WL 4552306 (S.D.N.Y. Sept. 30, 2011) ....................................5

*Price v. Stossel*,
    No. 07 Cv. 11364(SWK), 2008 WL 2434137 (S.D.N.Y. June 4, 2008) ................................20

*Quantlab Fin., LLC et al. v. Tower Research Capital, LLC*,
    715 F. Supp. 2d 542 (S.D.N.Y. 2010)...............................................................................12

*Rahl v. Bande*,
    316 B.R. 127 (S.D.N.Y. 2004).........................................................................................15

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
    277 B.R. 5 (S.D.N.Y. 2002).............................................................................................14

*Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*,
    No. 99 Civ. 11248 SHS, 2000 WL 890191 (S.D.N.Y. July 5, 2000) ....................................16

*S.E.C. v. KPMG, LLP*,
    No. 03 Civ. 671(DLC), 2003 WL 1842871 (S.D.N.Y. Apr. 9, 2003) ....................................20

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010) ................................................................11, 12, 15

*Shamoun v. Peerless Imps., Inc.*,
    No. 03 CV 1227(NG), 2003 WL 21781954 (E.D.N.Y. Aug. 1, 2003)....................................23

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100 (1941) ............................................................................12

*Shiboleth v. Yerushalmi*,
    412 B.R. 113 (S.D.N.Y. 2009)........................................................................ passim

*Stahl v. Stahl*,
    No. 03 CIV. 0405, 2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003) .........................................18

*Stellar Sutton LLC v. Dushey*,
    82 A.D.3d 485 (1st Dep't 2011) ..................................................................8

*Sterling Fifth Assocs. v. Carpentille Corp.*,
    9 A.D.3d 261 (1st Dep't 2004) ................................................................5, 16

*Stern v. Marshall*,
    131 S.Ct. 2594 (2011) ..........................................................................17

*Things Remembered, Inc. v. Petrarca*,
    516 U.S. 124 (1995)............................................................................11

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)............................................................................22

*Von Richthofen v. Family M. Foundation Ltd.*,
    339 B.R. 315 (S.D.N.Y. 2005)....................................................................13

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*,
    201 B.R. 635 (S.D.N.Y. 1996)....................................................................12

*Whitehaus Collection v. Barclay Products, Ltd.*,
    No. 11 Civ. 217(LBS), 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011) ....................................19

**STATUTES AND RULES**

11 U.S.C. § 362(a) ...............................................................................8, 9

28 U.S.C. § 157(b) ...............................................................................11

28 U.S.C. § 157(c)(1)..............................................................................17

28 U.S.C. § 1334(b) ............................................................................1, 9, 15

28 U.S.C. § 1334(c)(1) ...................................................................................1, 3, 14

28 U.S.C. § 1334(c)(2) ............................................................................... passim

28 U.S.C. § 1404(a) ..............................................................................................19

28 U.S.C. § 1446(a) .......................................................................................12, 13

28 U.S.C. § 1447(c) ................................................................................... passim

28 U.S.C. § 1452 ............................................................................................9, 11

28 U.S.C. § 1452(b) ......................................................................................1, 3, 14

Federal Rule of Bankruptcy Procedure 9027(e) ...........................................9

Federal Rule of Civil Procedure 12(b)(6) ......................................................5

N.Y. C.P.L.R. 2214(b) .......................................................................................5, 9

N.Y. C.P.L.R. 3211(a)(1) .............................................................................4, 5, 16

N.Y. C.P.L.R. 3211(a)(7) ....................................................................................4

N.Y. C.P.L.R. 5701(a)(2)(i) .................................................................................8

## OTHER AUTHORITIES

James Wm. Moore, Moore's Federal Practice (3d ed. 2011) .....................................20

N.Y. C.P.L.R. 5701 note C5701:4 (McKinney 2005) (Practice Commentaries) ...........................8

Defendant and Counterclaim-Plaintiff Marriott Hotel Services, Inc. ("Marriott") respectfully submits this memorandum of law in support of its motion for mandatory abstention and remand of the above-captioned case to New York State Supreme Court pursuant to 28 U.S.C. § 1334(c)(2), or in the alternative, permissive abstention and equitable remand pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b), and in opposition to plaintiff's motion to transfer venue. In addition, pursuant to 28 U.S.C. § 1447(c), Marriott respectfully requests that the Court award it the costs, expenses, and attorneys' fees incurred in making this motion.

## PRELIMINARY STATEMENT

M Waikiki LLC's ("Owner") removal notice and transfer motion are about forum shopping plain and simple. Owner earned itself a bad result in the Commercial Division of New York State Supreme Court ("New York State Supreme") – a forum Owner chose – and now wants out. Owner's maneuver should be rejected.

This case began as a meritless complaint by Owner against Marriott, I.S. International LLC ("I.S. International"), and Ian Schrager (the "Defendants") filed in May 2011 in New York State Supreme (Index No. 651457/2011) ("the State Action"). (Declaration of Brian J. Fischer, dated October 14, 2011 ("Fischer Decl."), Ex. A.) In the complaint, Owner alleges that the Defendants breached their contractual and fiduciary duties to design and manage the Waikiki EDITION Hotel (the "Hotel"), which is owned by Owner. Among other relief, Owner asks for the termination of its management agreement with Marriott, a contract governed by New York law. Marriott moved to dismiss the complaint, arguing, *inter alia*, that Owner had admitted in writing that Marriott had not breached the contract between the parties.

Instead of responding to the motion to dismiss and waiting for the judicial process to work its course, Owner recently exercised self-help, physically ousting Marriott from the Hotel in the middle of the night, confiscating Marriott's confidential and proprietary information

1

located in offices occupied by Marriott inside the Hotel, and replacing Marriott with another manager.  Owner claimed that it was simply acting on its supposed common law right to terminate the management contract – a curious contention given that Owner brought suit only three months earlier asking for that same relief.  Although Marriott had no advance warning of this ouster, it quickly became evident that Owner had been planning the raid for some time, even while pretending to engage in settlement discussions with Marriott.

Marriott immediately moved in New York State Supreme for emergency relief in the form of a temporary restraining order ("TRO"), which was granted by Justice Eileen Bransten.  Obviously disturbed by Owner's self-help tactics and end-run around the court's jurisdiction, Justice Bransten ordered that Owner reinstate Marriott as manager of the Hotel within six hours, as it was the court's prerogative, not Owner's, to decide if the management contract could be terminated.

Later that day, minutes after this deadline expired, Owner played its next card and filed for bankruptcy in Hawaii to avoid Justice Bransten's order and to take another stab at contract termination.

Over the weeks that followed, Owner took advantage of its new-found federal jurisdiction and removed the State Action to this Court, claiming that the action is related to its nascent bankruptcy case.  Owner now seeks to transfer the action to Hawaii.  These latest moves are forum shopping in its most undisguised and inappropriate form.  Unhappy with Justice Bransten's TRO and her initial assessment of the parties' rights and obligations, Owner is making every effort to jettison the forum it chose only five months ago and to find one hospitable to its aggressive – but mistaken – reading of New York law.  Owner admits this in its transfer motion, conceding that refuge in bankruptcy court was taken "in part" because

"reinstatement of Marriott as manager of the Hotel would have put at risk [Owner's] equity in the Hotel."  (Pl.'s Mem., Dkt # 12, at 6-7.)

Marriott respectfully requests that this Court put an end to Owner's gamesmanship by abstaining from hearing this proceeding and remanding it to the New York State Supreme Court, and rejecting Owner's transfer bid.  Abstention and remand are mandatory under 28 U.S.C. § 1334(c)(2) because this motion is timely; this action is based entirely on state law claims, is only tangentially related to Owner's bankruptcy, and could not be heard in federal court save that bankruptcy filing; and this action has already commenced in state court and could be timely adjudicated there.  In the alternative, Marriott respectfully requests that this Court exercise its discretion to permissively abstain and remand this case on the basis of equity as permitted under 28 U.S.C. §§ 1334(c)(1) and 1452(b).  Because mandatory abstention and remand are warranted, Owner's motion for venue transfer is moot and should be denied.  Finally, due to Owner's pattern of self-help and forum shopping, Marriott respectfully requests that this Court award it the costs, expenses, and attorneys' fees incurred in making this motion as permitted by 28 U.S.C. § 1447(c).

## STATEMENT OF FACTS

### A.  The Parties' Agreements and Owner's Complaint.

At the heart of this state law dispute is the development, design, and operation of the Waikiki EDITION Hotel, a luxury hotel property in Honolulu, Hawaii owned by Owner. (Fischer Decl., Ex. B, ¶¶ 9-12.)  Under two contracts, collectively known as "the Hotel Agreements," Owner engaged: (1) Marriott and Defendant I.S. International, LLC to provide design advice and technical services during the Hotel's renovation;[1] and (2) Marriott to manage

---

[1] This engagement was codified in the Design and Technical Services and Pre-Opening Agreement dated July 9, 2008.  (Fischer Decl., Ex. C.)

the Hotel,[2] which Marriott began doing when the renovated Hotel re-opened in October 2010 as an EDITION brand hotel.[3]  (*See id.* ¶¶ 11-13.)  The Hotel Agreements are governed by New York law.  (*Id.*, Ex. C, § 9.10; Ex. D, § 11.04.)

On November 16, 2010, Owner executed an Estoppel Certificate to Marriott ("the Estoppel Certificate") in which Owner certified that: (1) "there [was] no continuing Default (as defined in the Hotel Agreements) by [Marriott] in the performance or observance of any covenant, agreement or condition contained in the Hotel Agreements," and (2) "no event ha[d] occurred that, with the giving of notice or passage of time or both, would become such a Default."  (*Id.*, Ex. E, at 2.)

On May 26, 2011, Owner brought suit against Marriott in New York State Supreme claiming that Marriott breached various obligations despite previously certifying that no such breaches occurred during the same period.  Owner's Complaint seeks termination of its Management Agreement with Marriott and various damages.  (*Id.*, Ex. A, ¶ 88.)  All of Owner's claims – breach of contract, breach of fiduciary duty, negligent misrepresentation, and a request for a judicial declaration – sound in New York state law.  (*Id.* ¶¶ 61-87.)

Owner's suit was assigned to Justice Eileen Bransten.

**B.  Marriott's Motion to Dismiss.**

On August 1, 2011, Marriott moved to dismiss Owner's Complaint pursuant to N.Y. C.P.L.R. 3211(a)(1) (defense founded upon documentary evidence) and (a)(7) (failure to state a cause of action).[4]  Among other arguments, Marriott asserted that Owner's breach allegations

---

[2] This engagement was codified in the Management Agreement dated July 9, 2008 (the "Management Agreement").  (*Id.*, Ex. D.)

[3] EDITION is a new brand of "boutique" hotels jointly created by Marriott and I.S. International.  (*Id.*, Ex. B, ¶ 13.)

[4] Marriott's co-defendants, I.S. International and Schrager, also moved to dismiss the complaint, arguing that Owner failed to allege that I.S. International breached its duties and that

4

were precluded by the Estoppel Certificate.  (*See* Fischer Decl., Ex. F, at 10-12.)  On a motion to

dismiss in New York State Court, pursuant to C.P.L.R. 3211(a)(1), a plaintiff's "allegations . . .

are not presumed to be true or granted every favorable inference" if they are "contradicted by

documentary evidence."  *Sterling Fifth Assocs. v. Carpentille Corp.*, 9 A.D.3d 261, 261-62, (1st

Dep't 2004).  Here, the Estoppel Certificate contradicts key allegations in Owner's complaint.

There is no express federal analogue allowing consideration of such extrinsic documentary

evidence on a motion to dismiss.[5]

Owner's opposition to Marriott's motion was due on September 19, 2011.  (*See* Fischer

Decl., Ex. G (setting return date for September 26, 2011, *i.e.* more than 16 days after Marriott's

August 1, 2011 Notice of Motion); N.Y. C.P.L.R. 2214(b) (requiring answering papers to be

served one week before a return date set more than 16 days after a notice of motion).)

**C.  Owner's Unlawful Self-Help, the TRO, and Marriott's Counterclaims.**

On Sunday, August 28, 2011, Owner took the law into its own hands.  Without providing

any prior notice to Marriott, Owner entered the Hotel at around 2:00 a.m. local time with

approximately fifty security personnel.  (*See* Fischer Decl., Ex. H, ¶¶ 4-5; Ex. I, ¶ 3.)  Owner

_____

the claims against Mr. Schrager (a non-signatory to the Hotel Agreements) in his individual
capacity were merely an attempt to harass him.

[5] Under Federal Rule of Civil Procedure 12(b)(6), an extrinsic document may only be
considered on a motion to dismiss if the complaint "relies heavily upon its terms and effect,
which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282
F.3d 147, 152 (2d Cir. 2002) (internal quotations omitted); *see also Lee v. City of L.A.*, 250 F.3d
668, 688 (9th Cir. 2001) (holding that extrinsic documents may be considered on a Rule 12(b)(6)
motion to dismiss if the plaintiff's complaint necessarily relies on them, a standard relevant if
this matter is transferred to the District of Hawaii).  "Such reliance 'is a necessary prerequisite to
the court's consideration of the document on a dismissal motion; mere notice or possession is not
enough.'"  *Porrazzo v. Bumble Bee Foods, LLC*, No. 10-CV-4367 (CS), 2011 WL 4552306, at
*2 (S.D.N.Y. Sept. 30, 2011) (quoting *Chambers*, 282 F.3d at 153 and citing *Faulkner v. Beer*,
463 F.3d 130, 134 (2d Cir. 2006)).  While this standard arguably encompasses the Estoppel
Certificate, it is much less certain than the C.P.L.R.'s broad consideration of extrinsic
documents, leaving Marriott vulnerable to an argument by Owner that the Certificate is not
"integral" to the complaint.

purported to unilaterally terminate the Management Agreement on the basis of a groundless "common law" right, feigning that it had court authority to do so.  (*See id.*, Ex. I, ¶ 3; Ex. J.) Owner then physically removed Marriott's managerial staff, coerced other employees to sign on with Owner's new manager or face termination, and hacked into Marriott's computer servers, which contained confidential and proprietary information.  (*See id.*, Ex. I, ¶ 7; Ex. K, ¶ 5; Ex. L, ¶¶ 11-14; Ex. M, ¶¶ 6, 9, 11.)

In response to this behavior, forty-eight hours after the raid, Marriott filed for a temporary restraining order and preliminary injunction in New York State Supreme, requesting that Marriott be reinstated as manager of the Hotel and that its confidential and proprietary information be protected and returned.  (*See id.*, Ex. N.)  Simultaneously, Marriott filed a counterclaim complaint against Owner for breach of contract and conversion under New York State law.  (*See id.*, Ex. B.)  Marriott asserted, *inter alia*, that Owner's self-help breached the parties' Management Agreement, which confers no at-will termination right upon Owner, but instead authorizes termination in very limited circumstances that Owner did not even claim were applicable (because they clearly were not).  (*Id.*, Ex. N, at 11-13.)  As Marriott wrote in its emergency relief application: "So clear is the absence of any termination right that Owner asks the Court in its complaint for a declaration that Marriott is in default of the Management Agreement such that Owner is entitled to terminate.  Rather than wait for the Court to rule on its claim – and, perhaps more significantly, Marriott's motion to dismiss – Owner circumvented the process it initiated three months earlier."  (*Id.*, Ex. N, at 3.)

On August 30 and 31, 2011, Justice Bransten heard argument on Marriott's emergency motion.  On the morning of August 31, 2011,  Justice Bransten: (a) rejected Owner's claim that it had an unlimited common law termination right; (b) found that Owner's termination rights were

limited to those inapplicable circumstances spelled out in the parties' Management Agreement; and (c) issued a temporary restraining order to prevent Owner from "enjoying the very juicy fruits of [its] bad actions."[6] (*Id.*, Ex. O, at 44:8-9.)  Justice Bransten gave Owner six hours to reinstate Marriott as manager of the Hotel.  (*See id.*, Ex. P.)

Justice Bransten carefully considered the line of authority Owner again offers up in its transfer motion for the purported proposition that, irrespective of contractual provisions to the contrary, a hotel owner possesses the limitless right to unilaterally terminate management contracts under a principal/agent theory.  (*See id.*, Ex. O, at 58-65; Ex. Q.)  Provided with counter-authority by Marriott, as well as citations to Management Agreement provisions precisely defining Owner's restricted termination rights and expressly disclaiming a general principal/agent relationship,[7] Justice Bransten determined that Owner's "agency argument" was "forbid[den]," that Owner's actions were "a direct contradiction of the mechanism that was set up between the parties as to the ways of going about to terminate" the Management Agreement, and that "the possibility of ultimate success also weigh[ed] heavily in terms of Marriott," which stood to be harmed irreparably.  (*Id.*, Ex. O, at 86-87.)

---

[6] As Justice Bransten observed, "instead of allowing a judge to judiciously determine whether or not the agreement should be terminated or not, Waikiki then went forward and took it upon themselves to achieve the final remedy by . . . self-helping themselves and throwing Marriott out.  That was in direct contradiction of the mechanism that was set up between the parties as to the ways of going about to terminate this agreement."  (Fischer Decl., Ex. O, at 86:15-22.)

[7] Thoroughly undermining Owner's principal/agent argument, the Management Agreement specifies that Marriott "shall act solely as an independent contractor" and that Marriott "shall be deemed to be a fiduciary solely with respect to any funds held by it in the Operating Accounts, the FF&E Reserve or any other funds held by [Marriott] or its Affiliates for Owner."  (*Id.*, Ex. D, § 11.03.)  It further states that none of the parties' agreements "shall in any respect be interpreted, deemed or construed as making [Marriott] a partner, joint venture with, or agent of, Owner," and that Owner and Marriott specifically "agree that neither party will make any contrary assertion, claim or counterclaim in any action, suit, . . . or other legal proceedings . . . ."  (*Id.*)

After issuing the TRO, Justice Bransten scheduled a full hearing on Marriott's motion for a preliminary injunction for only one week later, and recommended that the parties meet and confer on an "very expedited" briefing schedule.  (*Id.*, Ex. O, at 102:19-25, 104:5.)

Owner did not reinstate Marriott.  Instead, minutes after the six-hour TRO compliance time limit expired, Owner filed for voluntary bankruptcy in the District of Hawaii under Chapter 11 of the Bankruptcy Code, and notified Justice Bransten that all proceedings against it, which included Marriott's counterclaims and enforcement of the TRO, were automatically stayed under 11 U.S.C. § 362(a).  (*See id.*, Ex. R.)  It is clear from the Owner's motion for venue transfer and from the transcript of the proceedings before Justice Bransten that Owner's bankruptcy filing was motivated in substantial part, if not entirely, by a desire to prevent Marriott from resuming its role as the Hotel's manager pursuant to the TRO.  (Pl.'s Mem., Dkt. # 12, at 7 ("M Waikiki filed for bankruptcy protection because, in part, reinstatement of Marriott as manager of the Hotel would have put at risk its equity in the Hotel."); Fischer Decl., Ex. O, at 113:10-26 (showing that Owner's attorneys incorrectly considered the TRO unappealable, leaving a quick bankruptcy filing as their only option for preventing the management transition back to Marriott)).[8]

### D.  Owner's Bankruptcy Case, Removal Notice, and Motion to Transfer Venue.

Contrary to Owner's assertions, the Owner's bankruptcy case now before the Bankruptcy Court for the District of Hawaii has proceeded slowly.  On September 1, 2011, Owner filed a motion to reject the Management Agreement with Marriott.  But the hearing on this motion has

---

[8] Temporary restraining orders made on notice are in fact appealable in New York.  N.Y. C.P.L.R. 5701(a)(2)(i) (providing for appeals as of right of "provisional remedies" made on notice); *see also id.* note C5701:4 (McKinney 2005) (Practice Commentaries) (explaining that N.Y. C.P.L.R. 5701(a)(2)(i) concerns four provisional remedy devices including temporary restraining orders supplied by Article 63 of the C.P.L.R.); *Stellar Sutton LLC v. Dushey*, 82 A.D.3d 485 (1st Dep't 2011) (considering motion to vacate or modify a TRO).

twice been adjourned at Owner's request, demonstrating Owner's desire to stall the proceedings. In fact, Bankruptcy Judge Robert J. Faris has stated on the record that the proceedings are "behind where we ought to be in a Chapter 11 case at this point, and I think to be fair that's largely because the Debtor chose to do what it did about ten days ago," referring to Owner's unilateral ejection of Marriott from the Hotel.  (*Id.*, Ex. S, at 44:1-4.)[9]

Although claims and proceedings against Owner outside of the Bankruptcy Court, such as Marriott's counterclaims, were stayed by Owner's Chapter 11 filing, Owner's own claims against others were not, and consequently its opposition to Marriott's motion to dismiss was to be filed in New York State Supreme Court by September 19, 2011.  *See* 11 U.S.C. § 362(a) (providing for the automatic stay of judicial proceedings "against the debtor"); Fischer Decl., Ex. G; N.Y. C.P.L.R. 2214(b).  But on September 16, 2011, one business day before its response to Marriott's motion to dismiss was due, Owner removed the State Action to federal court under 28 U.S.C. § 1452, asserting that this Court has jurisdiction under 28 U.S.C. § 1334(b) because the State Action arises under, arises in, or is related to its bankruptcy case.  (Notice of Removal, Dkt. # 1, ¶ 5.)[10]

---

[9] The Bankruptcy Court has also remarked that the entire sequence of events following Owner's effort to "terminate the management agreement, but without getting [Justice Bransten's] permission" was something that "should have been foreseen" by Owner, as "not surprisingly at all to [the Bankruptcy Court's] mind, Marriott reacted by going back to the court in New York, and also not surprising at all in [the Bankruptcy Court's mind], the Court said don't do that until – you don't have the right to do that unilaterally without going through the steps provided for under the agreement, and then the Debtor was left sort of with no option but to file the bankruptcy."  (Fischer Decl., Ex. T, at 41:12-20.)  The Bankruptcy Court further observed that Owner "evidently made, basically, no preparations for a bankruptcy filing," presumably because it was preoccupied devising its surprise ouster and replacement of Marriott.  (*Id.*, Ex. T, at 48:23-24.)

[10] On September 30, 2011, pursuant to Rule 9027(e) of the Federal Rules of Bankruptcy Procedure, Marriott filed a statement with this Court, denying that the State Action is a core bankruptcy proceeding, denying its consent for the entry of final orders by a bankruptcy court, and denying the propriety of removal.  (Def.'s Rule 9027(e) Statement, Dkt. # 6,  ¶¶ 1-3.)

Another three weeks passed before Owner filed its motion to transfer venue to the District of Hawaii.  (Pl.'s Mot. to Transfer, Dkt. # 7.)

The company that Owner installed to replace Marriott immediately after its ouster remains the manager of the Hotel, which has been renamed.

## ARGUMENT

### I.  MANDATORY ABSTENTION IS REQUIRED.

This state law case should be remanded to New York State Supreme because mandatory abstention is required under 28 U.S.C. § 1334(c)(2).[11]  According to that Section:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*Id.*  Accordingly, this Court has held that mandatory abstention is required when: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) Section 1334 (the bankruptcy jurisdiction statute) provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be timely adjudicated in state court.  *See, e.g.*, *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 26

---

[11] Mandatory abstention can be applied in a case that has already been removed from state court.  *Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005).  Remand is a necessary consequence of mandatory abstention.  *See, e.g.*, *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 27 (S.D.N.Y. 2005) ("[T]his is a case where the Court must apply mandatory abstention and remand the action to state court."); *Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ. 1914(LBS), 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) (remanding on the basis of mandatory abstention); *Lifetime Bands, Inc. v. ARC Int'l, SA*, No. 09 Civ. 9792(LAK), 2010 WL 454680, at *3 (S.D.N.Y. Jan. 29, 2010) (same).

(S.D.N.Y. 2005); *In re Ames Dep't Stores, Inc.*, No. 06 cv 5394(BSJ)(THK), 2008 WL 7542200, at *8 (S.D.N.Y. June 4, 2008).  Marriott easily satisfies these six factors.

First, this motion for abstention and remand is timely because it was filed within the thirty-day window provided by the general removal statute, 28 U.S.C. § 1447(c).[12]  *See Little Rest Twelve, Inc. v. Visan*, No. 11 Civ. 2306(JGK), 2011 WL 3055375, at *6 (S.D.N.Y. July 20, 2011).

Second, this action is entirely based on New York State law.  All of Owner's claims – breach of contract, breach of fiduciary duty, negligent misrepresentation, and a request for a judicial declaration – as well as Marriott's counterclaims – breach of contract and conversion – sound in New York State law.

Third, the State Action is not a core bankruptcy proceeding as defined by 11 U.S.C. § 157(b), and thus it is merely related to a bankruptcy case, as distinct from arising in a bankruptcy case or under the Bankruptcy Code.  A proceeding is core only if it "'would have no existence outside of the bankruptcy case.'"  *Schumacher v. White*, 429 B.R. 400, 405 (E.D.N.Y. 2010) (quoting *In re J.T. Moran Fin. Corp.*, 119 B.R. 447, 450 (Bankr. S.D.N.Y. 1990)).  Here, the State Action, which was commenced months before Owner's Chapter 11 filing, can obviously stand outside bankruptcy.  The State Action is "related to" bankruptcy only because the parties seek damages from one another, the final determination of which could increase or reduce the size of the bankruptcy estate.  *See In re Best Prods. Co.*, 68 F.3d 26, 32 (2d Cir. 1995) (explaining that a case is non-core when "the only relationship . . . to the bankruptcy proceeding [is] that determination of the action would affect the ultimate size of the estate"); *In re Orion*

---

[12] 28 U.S.C. § 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ."  Section 1447 applies to cases removed under 28 U.S.C. § 1452. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995).

*Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that a breach of contract action by a

debtor against a party to a pre-petition contract is non-core); *Schumacher*, 429 B.R. at 405-06

(holding that a "straightforward contractual action" was non-core and inappropriate for

adjudication by a bankruptcy court because it was possible to administer the estate without

resolving the contractual action); *Shiboleth v. Yerushalmi*, 412 B.R. 113, 116 (S.D.N.Y. 2009)

(holding that "a proceeding is non-core if it involves the adjudication of state-created rights, such

as the right to recover contract damages") (internal quotation omitted); *Wechsler v. Squadron,

Ellenoff, Plesent & Sheinfeld, LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) (holding that state law

breach of contract and fiduciary duty claims are non-core because they could "exist independent

of the bankruptcy case").

Fourth, there is no basis for federal jurisdiction aside from Section 1334, which confers

jurisdiction over claims "related to" bankruptcy.  Owner's original complaint is based entirely on

state law and makes no claim that the parties are completely diverse.[13]  *See Little Rest Twelve*,

---

[13] To the extent that Owner asserts for the first time in its opposition to remand that the
parties are completely diverse, Marriott requests leave for discovery regarding Owners'
citizenship.  The complaint identifies Owner as "a Hawaii limited liability company . . . having
approximately 75 indirect investors."  (Fischer Decl., Ex. A, ¶ 1.)  On the basis of an exhibit
attached to the Management Agreement, Marriott understands that the members of the Owner's
LLC are two other LLCs and a trust.  (*See id*., Ex. D (Ex. F to the Second Amendment to the
Management Agreement).)  Owner has never disclosed to Marriott the citizenship of the natural
persons or entities underlying these multiple layers of LLCs, or whether any of the real parties in
interest are citizens of New York, Delaware, or Maryland – Defendants' states of citizenship.
*See Quantlab Fin., LLC et al. v. Tower Research Capital, LLC*, 715 F. Supp. 2d 542, 546-47
(S.D.N.Y. 2010) (holding that "the test for determining the existence of diversity jurisdiction is
generally the citizenship of real parties to the controversy" and that the citizenship of the
individual members, trustees, and beneficiaries underlying a multi-layered LLC determine
whether diversity jurisdiction exists) (internal quotations omitted).   Moreover, as the plaintiff in
this action, Owner is not permitted to remove the action – based on diversity or any other
rationale – after filing it in state court, except as provided for in the bankruptcy removal statute
(28 U.S.C. § 1446(a) (authorizing removal only by "[a] defendant or defendants"); *Shamrock Oil
& Gas Corp. v. Sheets*, 313 U.S. 100, 107 (1941) (holding that a plaintiff may not remove an
action based on a counterclaim).

2011 WL 3055375, at *9-10 (finding this factor satisfied in part by the complaint's assertion of only state law claims and failure to identify the citizenship of the parties).  Owner admits as much by failing to claim any basis for removal other than the bankruptcy removal statute in its Notice of Removal.  *See id.* at *10 (finding that this factor was satisfied in part by the removing party's failure to identify another basis for removal in its notice of removal); *see also* 28 U.S.C. § 1446(a) (specifying that a removal notice is to contain "a short and plain statement of the grounds for removal").

Fifth, the State Action was commenced before Owner filed for bankruptcy.  In fact, Owner itself initiated the State Action in New York State Supreme only to try to abandon it one business day before its opposition to Marriott's dismissal motion brought under the C.P.L.R. was due.

Finally, the action is capable of timely adjudication in state court.  When evaluating timely adjudication under § 1334(c)(2), a court should consider:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).  The burden is on the party opposing remand to show that the action cannot be timely adjudicated in state court.  *See Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ. 1914(LBS), 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) (citing *Parmalat*, 639 F.3d at 582).  Owner cannot meet this burden, as its own gamesmanship – taking extra-judicial action necessitating Marriott's emergency relief application, and effecting removal just before its opposition to Marriott's dismissal motion was due – is the cause of the State Action's delay.  *See Von Richthofen v. Family M. Foundation Ltd.*, 339 B.R. 315, 320 (S.D.N.Y. 2005) (granting motion for mandatory

abstention when defendants' dispositive motion was interrupted only by the removal action).

Moreover, none of the considerations outlined in *Parmalat* are at odds with remand.  Justice

Bransten is already familiar with the record, she has expertise adjudicating the parties' state law

claims, and she has already shown a willingness to make room on her calendar and expedite this

action.  In particular, Justice Bransten is already familiar with the parties' deeply divergent views

about the basic principles of state contract and agency law central to this case.  As a result, there

is no reason to believe that remand will prolong the bankruptcy administration, which is

progressing very slowly.  *See Little Rest Twelve*, 2011 WL 3055375, at *11 (finding that state

law claims would be more efficiently adjudicated by a state judge who had experience with both

the state laws and specific dispute at issue).  There is thus no reason to believe that the State

Action will not be timely adjudicated.

## II.   ALTERNATIVELY, PERMISSIVE ABSTENTION AND EQUITABLE REMAND ARE WARRANTED.

In the event that the Court deems mandatory abstention unwarranted, permissive

abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are

both appropriate in this case.  A court may abstain from hearing a case within its bankruptcy

jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for

State law."  28 U.S.C. § 1334(c)(1).  Additionally, a court may remand a state action "on any

equitable ground."  *Id.* § 1452(b).  An "equitable" ground is one that is "fair and reasonable."  *In

re Cathedral of the Incarnation in the Diocese of Long Island*, 99 F.3d 66, 69 (2d Cir. 1996).

"The[se] two inquires are essentially the same and are often analyzed together."  *Little Rest

Twelve*, 2011 WL 3055375, at *11; *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277

B.R. 5, 17-18 (S.D.N.Y. 2002).  Factors to consider, among others, include: (1) whether issues of

state law predominate; (2) whether judicial economy would be served by equitable remand; (3)

whether § 1334(b) is the sole basis for exercising federal jurisdiction; (4) the degree of

relatedness or remoteness of the proceeding to the main bankruptcy case; and (5) the likelihood

that the proceeding was commenced in a particular forum because of forum shopping on the part

of one of the parties.  *See Shiboleth*, 412 B.R. at 117; *Rahl v. Bande*, 316 B.R. 127, 135

(S.D.N.Y. 2004).[14]

      These factors strongly militate in favor of abstention and remand of the State Action.  As

discussed in Argument Part I, *supra*, factors (1), (3), and (4) are plainly satisfied because the

State Action involves entirely non-core New York state law claims with only the most remote

degree of relatedness to the bankruptcy case.  Additionally, the parties sharply contest the basic

contract and agency principles underlying Owner's complaint and Owner's effort to terminate

the Management Agreement, with Owner continuing to insist that, notwithstanding Justice

Bransten's sound and well-reasoned analysis, the law is on its side.  (*See* Pl.'s Mem., Dkt. # 12,

at 6-7.)  Principles of comity counsel that Justice Bransten should be afforded the opportunity to

more fully develop the state of the law by seeing the case through.  *Schumacher*, 429 B.R. at

407-08 ("Congress has made it plain that, in respect to noncore proceedings such as this (i.e.,

cases which assert purely state law causes of action), the federal courts should not rush to usurp

the traditional precincts of the state court.") (quoting *Drexel Burnham Lambert Group, Inc. v.

Vigilant Ins. Co.*, 130 B.R. 405, 409 (Bankr. S.D.N.Y. 1991)); *Little Rest Twelve*, 2011 WL

3055375, at *12 ("Comity as a general matter counsels leaving matters of state law to state

---

[14] Courts in this District sometimes list additional factors for consideration on a motion
for permissive abstention or equitable remand.  *See, e.g.*, *CCM Pathfinder Pompano Bay, LLC v.
Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (listing seven factors); *Hart v.
Bello*, No. 11 Civ. 67(RMB), 2011 WL 1584577, at *4 n.5 (S.D.N.Y. Apr. 27, 2011) (listing
twelve factors); *Gassman v. Gassman, Griper & Golodny*, No. 097 Civ. 0093(RO), 1997 WL
603439, at *3 (S.D.N.Y. Sept. 30, 1997) (listing nine factors).  However, these additional factors
are largely similar to those enumerated above.  Principles of equity and judicial economy are at
the core of all permutations of this test.

courts; in this particular case, it also argues strongly in favor of allowing [the state court judge] to finish the matters that he has begun . . . .").

As for the second factor, judicial economy would be better served by remand of the State Action.  The parties have already submitted extensive briefing to Justice Bransten.[15]  As a seasoned Commercial Division justice, Justice Bransten routinely considers the state law claims at issue in this case.  And she has already indicated on the record her desire to expedite further adjudication of the parties' dispute.  *See Shiboleth*, 412 B.R. at 118 (remanding in part because judicial economy was better served by returning case to state court where Special Referee had already conducted hearings and was familiar with the case); *Little Rest Twelve*, 2011 WL 3055375, at *11 (finding that state law claims would be more efficiently adjudicated by a state judge who had experience with the both the state laws and specific dispute at issue); *Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*, No. 99 Civ. 11248 SHS, 2000 WL 890191, at *3 (S.D.N.Y. July 5, 2000) (finding that "the state court's prior familiarity with the action by virtue of its decision on [a] motion to dismiss" militated in favor of remand).

In addition, Owner's removal of the State Action interrupted Marriott's potentially dispositive motion to dismiss.  This motion was half-briefed at the time of removal and could substantially narrow or even eliminate the State Action, particularly considering that New York's civil practice rules allow for broader consideration of documentary evidence on motions to dismiss (here, the Estoppel Certificate) than the Federal Rules of Civil Procedure.  *Compare Sterling Fifth Assocs. v. Carpentille Corp.*, 9 A.D.3d 261, 261-62 (1st Dep't 2004) (holding that on a motion to dismiss in New York State Court, pursuant to N.Y. C.P.L.R. 3211(a)(1), a

---

[15] The Defendants submitted over 200 pages of briefing, including affirmations and exhibits, in support of their motions to dismiss, and the parties collectively submitted over 300 pages of briefing, including affirmations and exhibits, in connection with Marriott's motion for a temporary restraining order and preliminary injunction.

plaintiff's "allegations . . . are not presumed to be true or granted every favorable inference" if they are "contradicted by documentary evidence") *with Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding that on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) an extrinsic document may only be considered if the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint") (internal quotations omitted).

Conversely, Owner's bankruptcy proceedings have just begun and have already been stalled by Owner.  Even assuming that the State Action is transferred to the District of Hawaii and referred to its bankruptcy court, that bankruptcy court cannot issue final orders in the State Action because it is a non-core proceeding.  Instead, the bankruptcy court must submit findings of fact and conclusions of law to the district court for final adjudication, further delaying final resolution of the claims at issue here.  *See* 28 U.S.C. § 157(c)(1); *Stern v. Marshall*, 131 S.Ct. 2594, 2608-20 (2011) (holding that Article III of the Constitution does not permit a bankruptcy court to enter a final judgment on a counterclaim based solely on state law).  Thus, not only is there no reason to believe that remand would prolong the administration of the bankruptcy estate, denial of Marriott's motion will unnecessarily complicate and delay adjudication of the parties' state law claims.

Finally, Owner's pattern of behavior over the course of this case and the timing of its bankruptcy filing and removal leave an inescapable inference of forum shopping, which this Court should put an end to.  Owner filed for bankruptcy and removed the State Action only after Marriott filed a meritorious motion to dismiss based in part on Owner's own written admission, which would be admissible on a motion to dismiss under the C.P.L.R. but not necessarily in federal court, and only after Justice Bransten granted Marriott a TRO, strongly admonishing Owner for its self-help tactics.  Owner all but admitted to forum shopping during the TRO

proceedings before Justice Bransten, and confirmed the motivation in its transfer motion  (Pl.'s Mem., Dkt. # 12, at 7).  By filing for bankruptcy, Owner thus abandoned the forum it originally chose in order to evade the consideration of damning extrinsic documentary evidence permitted under the New York State rules, and in order to avoid further adjudication by Justice Bransten. *See Shiboleth*, 412 B.R. at 118-19 (remanding in part because timing of notice of removal raised significant concern that removal was done only to avoid a second proceeding before a state court Special Referee who previously ruled against the removing party); *Little Rest Twelve*, 2011 WL 3055375, at *12 (remanding state action in part because plaintiffs "appeared to remove the cases to avoid the state court forum that it had originally chosen shortly before the state court judge was about to issue a decision"); *Gassman v. Gassman, Griper & Golodny*, No. 097 Civ. 0093(RO), 1997 WL 603439, at *3 (S.D.N.Y. Sept. 30, 1997) (remanding in part because "it [was] highly likely that the bankruptcy petition was filed as a forum shopping device to avoid trial in the state court, since it was filed on the last business day before the trial was set to begin").

## III.   OWNER'S MOTION TO TRANSFER VENUE IS MOOT, AND TRANSFER IS OTHERWISE UNWARRANTED.

Because abstention and remand are appropriate in this case, Owner's motion for transfer of venue is moot.  "When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand."  *Stahl v. Stahl*, No. 03 CIV. 0405, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003); *accord Shiboleth v. Yerushalmi*, 412 B.R. 113, 119 (S.D.N.Y. 2009) (denying without considering motion for transfer after equitably remanding the action); *Lifetime Bands Inc. v. ARC Int'l, SA*, No. 09 Civ. 9792 (LAK), 2010 WL 454680, at *3 (S.D.N.Y. Jan. 29, 2010) (denying motion for transfer as moot after mandatorily remanding the

action).  The Court's analysis should thus stop here with the decision to abstain and remand the case and should not continue on to consider Owner's motion for transfer.

Even if the Court were to consider the transfer motion, none of the arguments Owner advances is sufficiently compelling to override the judiciary's general aversion to forum shopping, and the multiple additional factors favoring remand.  Under 28 U.S.C. § 1404(a), a court may transfer an action "in the interest of justice" and "[f]or the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  "The decision to transfer venue is within the discretion of the court based on an individualized, case-by-case consideration of convenience and fairness . . . [and] the party seeking venue transfer bears the significant burden of making a clear and convincing showing that a matter should be transferred."  *McHale v. Citibank, N.A.*, No. 09 CIV. 6064, 2009 WL 2599749, at *5 (S.D.N.Y. Aug. 24, 2009) (internal quotation marks and citations omitted).

First, transfer is not in the interest of justice.  Although courts generally give "great weight" to the plaintiff's choice of forum, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006), "[u]nder a motion to transfer, plaintiff's choice of forum 'is no longer given the overriding consideration it may have once enjoyed under the former doctrine of *forum non conveniens*.'"  *Whitehaus Collection v. Barclay Products, Ltd.*, No. 11 Civ. 217(LBS), 2011 WL 4036097, at *3 n.3 (S.D.N.Y. Aug. 29, 2011) (quoting *Y4 Design, Ltd. v. Regensteiner Pub. Enter., Inc.*, 428 F.Supp. 1067, 1070 (S.D.N.Y. 1977).  And even in the more deferential sphere of *forum non conveniens*, the Second Circuit has interpreted "the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons . . . and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical

19

advantage." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001); *see also S.E.C. v. KPMG, LLP*, No. 03 Civ. 671(DLC), 2003 WL 1842871, at *3 (S.D.N.Y. Apr. 9, 2003) (applying *Iragorri*'s *forum non conveniens* standard in transfer motion context and holding that "where the choice of forum otherwise appears to be motivated by forum shopping, the plaintiff's choice will command less deference") (internal citation omitted); 17 James Wm. Moore, Moore's Federal Practice § 111.16[1] (3d ed. 2011) ("[T]o avoid harassment of defendants and to ensure the judicious use of Section 1404(a) transfers, it is appropriate that the plaintiff be put to a higher burden of persuasion in seeking the transfer over the objection of the defendant."); *cf. Price v. Stossel*, No. 07 Cv. 11364(SWK), 2008 WL 2434137, at *7 (S.D.N.Y. June 4, 2008) (granting defendants' motion for transfer to district court in state where plaintiff originally filed a state court action concerning the same facts).  Here, Owner's removal and motion for transfer is clearly "motivated by a tactical advantage" to escape the very forum it originally chose after suffering defeat there.  *See Iragorri*, 274 F.3d at 73.

Further, transfer will not promote judicial economy or the efficient administration of the bankruptcy estate in such a way as to ignore the compelling (and, more precisely, mandatory) case for abstention and remand.  As described above, even after transfer to the District of Hawaii, all of the issues in the State Action and bankruptcy administration could not be fully consolidated because the bankruptcy judge is constitutionally forbidden from issuing final orders on Marriott's state law counterclaims.  In contrast, remand to New York State Supreme is more likely to lead to a swift conclusion to the State Action because Marriott's motion to dismiss is waiting there already half-briefed, and Justice Bransten is already familiar with the parties, the facts, and the state law issues in play.

Nor does the District of Hawaii have a sufficiently strong interest in deciding this action to merit transfer there in the face of the many factors requiring remand.  Contrary to Owner's assertion, many of the events and occurrences underlying the complaint occurred in New York.  The complaint centers around the supposed failure of the EDITION brand, which is run almost entirely out of EDITION's offices in New York City.  I.S. International and Ian Schrager are also located in New York.  Furthermore, the contracts between the parties are governed by New York law, points of which are vigorously contested.  *See Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 721-22 (E.D.N.Y. 1996) (holding that a federal district court located in New York was a more appropriate forum for a dispute requiring the application of New York law) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case[.]") (internal quotation omitted)).  New York also has a strong interest in preventing a litigant from using its courts as a testing ground only to abort mission when things do not go that party's way.  *Cf. In re Eclair Bakery Ltd*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000) (granting defendant's motion for transfer in order not to reward plaintiff's efforts to "try out" a new district after repeated unfavorable rulings).  In sum, transfer does not promote the interest of justice but instead would reward Owner's forum shopping, hinder judicial economy, and prevent New York from deciding an action in which it has substantial interest.

Second, transfer will not make adjudication of this action more convenient for the parties. It bears repeating that Owner originally chose the New York State forum.  It should not be permitted now to claim that choice is inconvenient.  *See Anglo Am. Ins. Grp., PLC v. Calfed, Inc.*, 916 F. Supp. 1324, 1328-29 (S.D.N.Y. 1996) (holding that plaintiff moving for transfer must show change in circumstances or that transfer is in the interest of justice).  In fact, the

21

Defendants and their employees who would presumably be important witnesses are all located on the east coast, many specifically within New York City.  Considerable documentary evidence concerning the design, renovation, and performance of the Hotel also exists at the EDITION office located in New York City.  Accordingly, any appeal to the convenience of the parties is simply insufficient to overcome the many considerations militating in favor of abstention and remand and against transfer of the Action.  *See Van Dusen*, 376 U.S. at 645-46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

## IV.   MARRIOTT'S COSTS AND EXPENSES SHOULD BE AWARDED.

Owner should be required to pay Marriott's costs, expenses, and attorneys' fees incurred in connection with this motion.  A court remanding a case removed from state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Awarding of costs does not require removal to be in bad faith.  *See Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 923 (2d Cir. 1992).  Rather, a court should consider the "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties."  *Id.* at 924 (internal quotation marks omitted).  The goal of the cost provision is to "deter[ ] improper removal" because "the simplicity of [the removal] procedure . . . exposes a [non-removing party] to the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly . . . ."  *Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc.*, 183 F.3d 105, 109 (2d Cir. 1999); *see also Little Rest Twelve*, 2011 WL 3055375, at *13.

Here it is appropriate to require Owner to pay Marriott's costs, expenses, and fees because the grounds for removal were extraordinarily weak.  As described in Argument Part I, *supra*, Marriott easily meets all six factors required for mandatory abstention.  Moreover,

Owner's conduct throughout the course of this case, particularly its self-help raid of the Hotel (which itself forced Marriott to expend substantial resources rectifying Owner's unjust action), its eleventh-hour bankruptcy filing, and its retreat from the court it originally chose in the face of damning documentary evidence, reeks of forum shopping and has unnecessarily inflated Marriott's costs related to this case. "[I]t is more than enough to recognize that the parties opposing removal were put to needless expense on the thinnest of bases." *Little Rest Twelve*, 2011 WL 3055375, at *14; *see also Shamoun v. Peerless Imps., Inc.*, No. 03 CV 1227(NG), 2003 WL 21781954, at *4 (E.D.N.Y. Aug. 1, 2003) (awarding costs and attorneys' fees where plaintiff's complaint presented a straightforward state law claim); *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999) (awarding costs and attorneys' fees where the removal greatly complicated the case and the impropriety of the removal should have been clear).

## **CONCLUSION**

For the foregoing reasons, Marriott respectfully requests that the Court abstain and remand this case to the New York State Supreme Court, deny Owner's motion for transfer of venue, and award costs, expenses, and attorneys' fees under 28 U.S.C. § 1447(c).

Dated: October 14, 2011           RESPECTFULLY SUBMITTED,
      New York, New York

                             /s/ _____
                             JENNER & BLOCK LLP

                             Richard F. Ziegler
                             Brian J. Fischer
                             Colleen A. Harrison
                             919 Third Avenue, 37th Floor
                             New York, New York 10022
                             Telephone: (212) 891-1600
                             Fax: (212) 909-0815

David A. Handzo (*pro hac vice* motion forthcoming)
Michael B. DeSanctis
Lindsay C. Harrison (*pro hac vice* motion forthcoming)
Kelly D. Gardner
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 661-4956