# Exhibit C

(part 2)

to pay such Pre-Opening Expenses before Manager actually incurs the costs for such Pre-Opening Expenses.

      5.5    <u>Use of Funds in Pre-Opening Account; Accounting</u>.  Manager shall use the funds in the Pre-Opening Account to pay subsequent Pre-Opening Expenses and to reimburse itself for previously incurred Pre-Opening Expenses.  At the time of delivering to Owner any revised estimate of Pre-Opening Expenses, Manager shall also deliver an accounting of any funds expended to date for Pre-Opening Expenses.  Within one hundred twenty (120) days after the final expenditure of funds for Pre-Opening Expenses, Manager shall deliver to Owner an itemized accounting of funds so expended along with payment to Owner of all remaining amounts in the Pre-Opening Account that have not been spent by Manager.  If, following one hundred twenty (120) days after the Opening Date, Owner has failed to make payment on account of the Pre-Opening Expenses, Manager shall have the option to reimburse itself such amounts together with interest at the Prime Rate plus three percent (3%) from distributions otherwise payable to Owner pursuant to the Management Agreement.

## ARTICLE 6
## OPENING DATE

      6.1    <u>Opening Date</u>.  The projected Opening Date shall be as set forth in Section 5.1.  However, the actual Opening Date shall be agreed upon by Manager and shall in no event be earlier than the date upon which (i) all elements of the Hotel and Project Areas have been substantially completed materially in accordance with the approved Plans and the EDITION Technical Standards and System Standards that were not incorporated in the approved Plans (unless such EDITION Technical Standards and System Standards were not incorporated in the approved Plans by the agreement of the parties pursuant to Section 2.3) and in compliance with the provisions of Section 6.3, and are ready for their intended use and occupancy, other than minor Punchlist Items, which will not individually or in the aggregate impair the operation and use of the Hotel for its intended purpose, or impair the guest experience at the Hotel; and (ii) all licenses, permits and other approvals and instruments necessary for operation of the Hotel by Manager have been obtained.  Any decision by Manager to delay the Opening Date based on failure of the Hotel or Project Areas to satisfy the requirements set forth in the preceding sentence shall not prejudice Manager's rights under Section 4.1.  Owner shall promptly notify Manager of any changes in the projected Opening Date.

      6.2    <u>Notification</u>.  Owner shall use reasonable efforts to give Manager notice of the approximate anticipated date of Substantial Completion for the Hotel no later than three (3) months before the date thereof, and to advise Manager from time to time of changes to such anticipated date.  Owner shall give Manager written notice at least six (6) weeks in advance before the Substantial Completion date for the Hotel if such date is anticipated to move by more than five (5) days of the last date of Substantial Completion of which Owner advised Manager.



6.3     Conditions for Opening Hotel.  Consistent with Section 6.1, Owner agrees that on the Opening Date, there will be no ongoing construction on any portion of the Hotel that would materially adversely affect access to the Hotel or that would otherwise materially adversely limit, restrict, disturb or interfere with Manager's management and operation of the Hotel in accordance with System Standards or that would adversely affect the guest experience at the Hotel.  If, as of the Opening Date, there remain to be completed minor unfinished Punchlist Items or installation of incidental FF&E and Fixed Asset Supplies in the common areas, lobby, administrative offices or any Guest Rooms to be opened on the Opening Date, none of which preclude Manager, in Manager's judgment, from operating the Hotel in accordance with System Standards, the Opening Date shall not be delayed for such reasons; however, Owner shall be obligated to promptly finish such items.

6.4     Initial Funding of Working Capital; Fixed Asset Supplies.  At least thirty (30) days prior to the projected Opening Date, Owner shall provide to Manager the initial Working Capital (cash component) for the Hotel in the amount set forth on Exhibit 2.   Additionally, Owner shall ensure that the Hotel is equipped by the date of Substantial Completion with the initial Fixed Asset Supplies and Inventories for the Hotel (or that Owner has provided to Manager the funds necessary to supply the Hotel with the initial Fixed Asset Supplies and Inventories) in accordance with Section 3.1.

6.5     Hotel Access.  The parties acknowledge that certain areas of the Hotel will need to be made available to Manager and Schrager prior to Substantial Completion in order to allow Manager and Schrager to undertake certain activities in anticipation of the Opening Date.  The parties agree to work together in good faith to identify such areas and determine a schedule for making such areas available to Manager and Schrager.

## ARTICLE 7
## INTERIM INSURANCE

7.1     Insurance Required.  At all times during the construction of the Project through the Opening Date, Owner shall, at its expense, procure and maintain (or cause its general contractor to procure and maintain) insurance fully protecting Owner, Manager and Schrager against all loss or damage arising out of or in connection with the construction of the Project.  Such insurance shall, at minimum include:

(a)     Commercial general liability insurance with combined single limits for bodily injury or property damage in an amount not less than One Million Dollars ($1,000,000) per each occurrence with a general aggregate limit of not less than Two Million Dollars ($2,000,000) and such aggregate shall apply, in total, to the Hotel.  Such insurance shall include, but is not limited to, the following coverages or endorsements:

- Independent Contractors Liability

22



- Products/Completed Operations Liability (construction defect) to be maintained for (i) ten (10) years after the date of Substantial Completion of the Project or close of escrow date, or (ii) such greater time frame as may be required to cover the statutory time frame for construction defects in the state where the project is developed.  If such coverage is provided by the general contractor, evidence of insurance shall be provided for the entire statutory time frame
- Explosion, Collapse and Underground Coverage
- Broad Form Property Damage Liability, including Completed Operations

(b)     Business auto liability including owned, non-owned and hired vehicles, with combined single limits for bodily injury and property damage in an amount not less than One Million Dollars ($1,000,000) per each occurrence.

(c)     Umbrella excess liability, on a following form, in an amount not less than:

(i)     Twenty-Five Million Dollars ($25,000,000) per occurrence for projects where the total Project construction costs are valued at Fifty Million Dollars ($50,000,000) or less,

(ii)     Fifty Million Dollars ($50,000,000) per occurrence for projects where the total Project construction costs are greater than Fifty Million Dollars ($50,000,000) but less than or equal to One Hundred Million Dollars ($100,000,000),

(iii)     One Hundred Million Dollars ($100,000,000) per occurrence for projects where the total Project construction costs are greater than One Hundred Million Dollars ($100,000,000) but less than or equal to One Hundred Fifty Million Dollars ($150,000,000), or

(iv)     such greater amount as reasonably determined by an insurance consultant and agreed to in writing by Manager for projects where the total Project construction costs are greater than One Hundred Fifty Million Dollars ($150,000,000).

Such coverage shall be in excess of the insurance required under Section 7.1(a), Section 7.1(b), and the employers liability coverage required under 7.1(e).  The general aggregate shall apply in total to the Hotel only and shall be reinstated annually during construction.  Upon the close of escrow or Substantial Completion of the Hotel, the coverage shall specifically include the completed operations liability (construction defects) coverage in the amounts required under this Section and the general aggregate shall apply in total to the Hotel only for the timeframe required in Section 7.1(a).

23



(d)     Builders risk insuring such risks as commonly covered by an "all risk of physical loss" form on a replacement cost basis covering equipment and the Hotel and Project Areas, including contractors' supplies, tools and equipment.  Such coverage shall include business interruption insurance covering at least 18 months of loss of profits, including Manager's management fees, other amounts due to Manager under the Management Agreement, necessary continuing expenses, and if applicable, rent, for interruptions at the Project insured under said builders risk policy.

(e)     Workers' compensation insurance covering all of Owner's, its general contractors', its subcontractors' and its consultants' employees, in statutory amounts and employers' liability of not less than One Million Dollars ($1,000,000) each accident.

(f)     Professional liability insurance in an amount not less than the greater of Two Million Dollars ($2,000,000) or five percent (5%) of the total construction cost of the renovation of the Project, covering claims resulting from negligent errors, omissions, or acts of the architect and any and all engineers and other consultants hired by the architect.  Any deductible shall be subject to Manager's prior approval.  For purposes of this Agreement, the architect shall maintain professional liability insurance for at least three (3) years from the date of receipt of the final certificate of occupancy for the Project.

7.2     General Provisions.  All insurance policies required under Section 7.1 (excluding workers compensation) shall include Manager and Schrager as an additional insured thereunder. Owner shall deliver to Manager and Schrager, upon execution of this Agreement, certificates of insurance, and if requested, copies of the insurance policies, with respect to all policies required pursuant to Section 7.1 and, in the case of insurance policies about to expire, shall deliver certificates with respect to renewals thereof.  All such certificates of insurance shall state that the insurance shall not be canceled or materially reduced without at least thirty (30) days' prior written notice to the certificate holder or other comparable industry acceptable language.  For all the above coverages, Owner shall, and shall cause the general contractor and all subcontractors to, waive their respective rights of recover and its insurers' rights of subrogation against Manager and Schrager and such coverage shall be primary and non-contributory to any other coverages Manager and/or Schrager may carry.

## ARTICLE 8
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF OWNER

8.1     Representations and Warranties of Owner.  Owner hereby represents and warrants to Manager and Schrager as follows:

8.1.1     Title.  Owner has good, indefeasible and merchantable title to and ownership of the Hotel and the Project (including without limitation the Site) subject to no liens or

24



encumbrances which might materially adversely affect the construction or operation of the Hotel or Manager's rights hereunder or under the Management Agreement.

8.1.2   No Breach.  The execution, delivery and/or performance by Owner of this Agreement and the Management Agreement will not result in a breach of any provision contained in any agreement, instrument, document, order, judgment, decree or other material arrangement which Owner is a party or by which it or any of its assets is bound.

8.1.3   Litigation.  There is no pending or threatened suit, action or litigation or administrative, arbitration or other proceeding relating to Owner or the Hotel or the Project which might materially adversely affect the construction or operation of the Hotel or Manager's or Schrager's rights hereunder or Manager's rights under the Management Agreement.

8.1.4   Access and Utilities.  Suitable vehicular and pedestrian access and complete utility services (including water, sewer, storm drainage electricity, gas, telephone and cable television) are available to the Hotel for its intended purposes or can be made available without extraordinary expense.

8.2   Covenants of Owner.  Owner covenants and agrees, in addition to the other covenants of Owner herein and in the Management Agreement, to:

8.2.1   Construction.  Construct, furnish and equip the Hotel so that same may open for business on or prior to the projected Opening Date as set forth in Section 5.1 (subject to delays caused by Extraordinary Events) in full compliance with this Agreement and the Management Agreement, at Owner's sole expense, free of liens for labor, services or materials and in full compliance with the requirements of all governmental authorities.

8.2.2   Publicity.  To furnish to Manager and Schrager for their prior approval all announcements to news media regarding the Hotel and to cooperate with Schrager and Manager to obtain such publicity in connection with the Hotel as Manager and Schrager desire.

8.2.3   Use of Logos.  Owner shall request Manager's approval, which Manager may withhold in its sole discretion, for any use of the "EDITION" name and logos in all publications, announcements or articles, and Owner shall not permit and shall use all available means to prevent its vendors and Contractors from advertising their contracts in connection with the Hotel and from making any unauthorized use of the EDITION trademarks.

8.2.4   Environmental.  Owner agrees to provide to Manager evidence satisfactory to Manager that no Hazardous Materials are present on the Site of the Hotel and that no Hazardous Materials will be incorporated into the construction of the Hotel, and that any Hazardous Materials previously located on the Site have been completely removed to the satisfaction, and in compliance with the rules, regulations and orders, of all governmental authorities having jurisdiction thereof.

25



8.3     Survival; Indemnity.  The provisions of this Agreement shall survive the Opening Date.  Owner shall indemnify and hold each of Manager and Schrager harmless from and against any and all loss, cost, damage or expense (including, without limitation, reasonable attorney's fees and litigation expenses) arising from, occurring by virtue of or resulting from, any breach of any representation or warranty made by Owner herein or from any failure by Owner to perform or observe any covenant or agreement of Owner contained herein.

<div align="center">

**ARTICLE 9**
**MISCELLANEOUS**

</div>

9.1     Defaults.  Any default by any of the parties to this Agreement shall entitle the non-defaulting party or parties to pursue all remedies as are available to them at law or in equity.

9.2     Term.  The term of this Agreement shall commence upon the Effective Date and, unless terminated on an earlier date as provided in this Agreement, shall expire upon the date of final completion of the Hotel (which shall not occur until, among other things, completion of all Punchlist Items) in accordance with this Agreement, which date may be subsequent to the Opening Date.  This Agreement shall be terminated in the event that the Management Agreement is terminated.  Termination shall not in any way relieve Owner of its obligation to pay or reimburse Manager and/or Schrager for all amounts owing or to be reimbursed to Manager and/or Schrager pursuant to the terms of this Agreement, and all such amounts shall become immediately due and payable, and such liability shall continue until such amounts are paid in full, notwithstanding Termination.

9.3     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and permitted assigns.  No party shall assign or transfer any rights hereunder or interest herein (including, without limitation, monies due or that may become due hereunder) unless, in the case of (a) Owner and Manager, such assignment or transfer complies with the provisions of Article X of the Management Agreement; and (b) in the case of Schrager, such assignment or transfer shall be to (i) any entity in which Ian Schrager owns and holds, directly or indirectly, at least twenty percent (20%) of the ultimate beneficial ownership of the transferee, or (ii) a trust, family partnership or other similar entity established by or for the benefit of immediate family members of Ian Schrager or the ultimate beneficial owners of Schrager, provided that with respect to both (i) and (ii), Ian Schrager shall at all times control the day-to-day operations and management of the transferee.  Unless specifically stated to the contrary in any written consent to an assignment, no assignment will release or discharge the assignor from any duty or responsibility hereunder.  Nothing contained in this Section 9.3 shall prevent Manager from employing such independent consultants, associates and subcontractors as Manager may deem appropriate to assist it in the performance of services hereunder.

<div align="center">26</div>



9.4    Relationship.  In the performance of this Agreement, Manager and Schrager shall each act solely as an independent contractor.  Neither this Agreement nor any agreements, instruments, documents, or transactions contemplated hereby shall in any respect be interpreted, deemed or construed as making any party a partner, joint venturer with, or agent of, any other party.  The parties agree that none of them will make any contrary assertion, claim or counterclaim in any action, suit, arbitration or other legal proceedings involving the parties.

9.5    Documents.  All drawings, specifications, notes on drawings and other documents or correspondence produced by Manager pursuant to this Agreement shall be the property of Manager, and Owner shall have no right to use such documents with regard to any other project without Manager's consent, which consent shall be granted, conditioned or denied at Manager's sole and absolute discretion.

9.6    Third-Party Rights.  Nothing herein shall be construed to give any rights or benefits hereunder to any person or entity, other than Owner, Manager or Schrager, and the rights of third-party beneficiaries are hereby expressly negated.

9.7    Headings.  The headings of Sections herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope or content of this Agreement or any provision hereof.

9.8    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which shall constitute one and the same instrument.  Such executed counterparts may be delivered by facsimile which, upon transmission to the other party, shall have the same force and effect as delivery of the original signed counterpart.  The submission of an unsigned copy of the Agreement or an electronic instrument with or without electronic signature to either party shall not constitute an offer or acceptance.  This Agreement shall become effective and binding only upon execution and delivery of the Agreement in non-electronic form by both parties in accordance with this Section 9.8.

9.9    Effect of Approval of Plans and Specifications.  Owner, Manager and Schrager agree that in each instance in this Agreement or elsewhere wherein Manager or Schrager is required to give its approval of plans, specifications, budgets and/or changes thereto, no such approval shall imply or be deemed to constitute an opinion of Manager or Schrager, nor impose upon Manager or Schrager any responsibility or liability for the design or construction of the Hotel, including but not limited to, structural integrity or life-safety requirements, adequacy of any budgets, or the means, methods, techniques, sequences or procedures of construction.  Manager, Schrager and their respective Affiliates shall not be responsible or liable for:  (i) the design or construction of the Hotel, including but not limited to, structural integrity or life-safety requirements; (ii) the acts or omissions of Owner or any third party consultants or contractors (including, but not limited to, the performance by design professionals, construction contractors, subcontractors or other consultants or third parties); (iii) the failure of any contractor or consultant

27



to carry out any portion of any work on the Hotel; (iv) any costs or expenses associated with, related to, or resulting from the design and construction of the Hotel; (v) the means, methods, techniques, sequences or procedures of construction; or (vi) any safety precautions and programs in connection with the Hotel.  Owner acknowledges that Manager and Schrager will, in their review process, provide comments on the plans and specifications.  Such reviews do not relieve Owner and its consultants of their responsibility to determine the completeness and coordination of their documents and to ensure that the design and construction of the Project comply with applicable Legal Requirements.

     9.10    <u>Applicable Law</u>.  This Agreement shall be construed under and shall be governed by the laws of the State of New York.

     9.11    <u>Notices</u>.  Notices, statements and other communications to be given under the terms of the Agreement shall be in writing and delivered by hand against receipt or sent by certified or registered mail, postage prepaid, return receipt requested or by nationally utilized overnight delivery service, addressed to the parties as follows:

<u>To Owner</u>:

M Waikiki LLC
c/o ERealty Fund LLC
12780 High Bluff Drive, Suite 160
San Diego, California 92130
Attn:   Ed Bushor and  Gary Stougaard
Phone: (858) 350-5599
Fax:    (858) 350-5585

<u>with copy to</u>:

Michael S. Kosmas
Squire, Sanders & Dempsey, LLP
1201 Pennsylvania Avenue, N. W. Suite 500
Washington, D.C. 20004
Phone:  (202) 626-6600
Fax:  (202) 626-6780

<u>To Manager</u>:

Marriott Hotel Services, Inc.
c/o Marriott International, Inc.
10400 Fernwood Road
Bethesda, Maryland  20817
Attn:   Department 70/100.03 – Mike Campbell
Phone: (301) 380-5532
Fax:    (301) 644-7753



<u>with copy to:</u>

Marriott Hotel Services, Inc.
c/o Marriott International, Inc.
10400 Fernwood Road
Bethesda, Maryland 20817
Attn:   Law Department 52/923 – A&C Attorney
Phone: (301) 380-9555
Fax:    (301) 380-6727

<u>To Schrager:</u>

c/o Ian Schrager Company
818 Greenwich Street
New York, New York 10014
Attn:   Mr. Ian Schrager
Phone: (212) 796-8401
Fax:    (212) 898-0331

<u>with copy to:</u>

Skadden, Arps, Slate Meagher & Flom LLP
Four Times Square
New York, New York  10036
Attn:   Benjamin F. Needell, Esq.
Phone: (212) 735-2600
Fax:    (917) 777-2600

<u>To Manager/
Schrager Rep:</u>

c/o Ian Schrager Company
818 Greenwich Street
New York, New York 10014
Attn:   Mr. Aaron Richter
Phone: (212) 796-8401
Fax:    (212) 898-0331

or at such other address as is from time to time designated by the party receiving the notice.  Any such notice that is mailed in accordance herewith shall be deemed received when delivery is received or refused, as the case may be.  Additionally, notices may be given by telephone facsimile transmission, provided that an original copy of said transmission shall be delivered to the addressee by nationally utilized overnight delivery service by no later than the second (2nd) business day following such transmission.  Telephone facsimiles shall be deemed delivered on the date of such transmission, if received during the receiving party's normal business hours or, if not received during the receiving party's normal business hours, then on the next succeeding business date on which the receiving party is open for normal business.

9.12    <u>Confidentiality</u>.  The parties agree that the terms of this Agreement are strictly confidential and will use their reasonable efforts to ensure that such matters and information are



not disclosed to any outside person or entities without the prior consent of the other party, except as required by law or, to the extent necessary, (i) to obtain licenses, permits and other public approvals, (ii) in connection with a Sale of the Hotel or a financing (debt or equity) of the Hotel, or (iii) in connection with a financing or sale of Manager or Schrager or their Affiliates, or their corporate assets.  Owner acknowledges that competitive information regarding brands, customers, marketing, operating or other strategies (including information related to other hotels) is confidential and proprietary to Manager and/or Schrager and shall not be disclosed to Owner.

9.13    Waiver of Jury Trial and Consequential and Punitive Damages.  Owner, Manager and Schrager each hereby absolutely, irrevocably and unconditionally waive trial by jury and the right to claim or receive consequential, incidental, special or punitive damages in any litigation, action, claim, suit or proceeding, at law or in equity, arising out of, pertaining to or in any way associated with the covenants, undertakings, representations or warranties set forth herein, the relationships of the parties hereto, this Agreement or any other agreement, instrument or document entered into in connection herewith, or any actions or omissions in connection with any of the foregoing.

9.14    Indemnification.  Owner shall indemnify and hold harmless Manager, Schrager and their respective agents and employees from and against all claims, damages, losses and expenses (including, but not limited to, reasonable attorneys' fees) arising out of or resulting from the design, construction and furnishing of the Hotel brought by third parties, except to the extent such claim, damage, loss or expense is the result of the gross negligence or willful misconduct of Manager, Schrager or their respective Affiliates, employees and agents.

9.15    Entire Agreement.  The Agreement, together with any other writings signed by the parties expressly stated to be supplemental hereto and together with any instruments to be executed and delivered pursuant to the Agreement, constitutes the entire agreement between the parties and supersedes all prior understandings and writings, and may be changed only by a written non-electronic instrument that has been duly executed by the non-electronic signature of an authorized representative of the parties hereto.

9.16    Consents and Approvals.  Wherever in this Agreement the consent or approval of a party is required, such consent or approval unless otherwise noted shall be given or withheld in the reasonable discretion of such party, as applicable, shall be in writing, and shall be executed by a duly authorized officer or agent of such party.  If a party fails to respond within ten (10) Business Days to a written request for a consent or approval, and thereafter fails to respond within five (5) Business days to a second written request for such consent or approval, such failure to respond shall be deemed to be a grant of consent or approval.  Whenever in this Agreement a party is entitled to exercise discretion, such discretion shall be exercised in a reasonable manner.  The Manager/Schrager Rep shall have the power and authority to respond to requests for the consents and approvals; provided, however, that Owner shall send all requests for consents and approvals, all submission packages and any other written communications to Schrager or Manager to both



Schrager and Manager (but not to their respective attorneys) in accordance with the notice provisions of Section 9.11.  The Owner Rep shall have the power and authority to submit all requests for consents and approvals under this Agreement and to respond to requests for consents and approvals on behalf of Owner.

<p style="text-align:center">[SIGNATURES FOLLOW ON NEXT PAGE]</p>

<p style="text-align:center">31</p>



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal as of the day and year first written above.

**OWNER:**
M WAIKIKI, LLC,
a Hawaii limited liability company

*By: eKealy Fund, LLC, a California limited liability company, its Manager*

By: _____
Print Name: _____
Title: _____

**MANAGER:**
MARRIOTT HOTEL SERVICES, INC.,
a Delaware corporation

By: _____
    Yoav K. Gery
    Authorized Signatory

**SCHRAGER:**
I.S. INTERNATIONAL, LLC,
a Delaware limited liability company

By: _____
Print Name:   Ian Schrager
Title:        President

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal as of the day and year first written above.

**OWNER:**
M WAIKIKI, LLC,
a Hawaii limited liability company


By: _____
Print Name: _____
Title: _____


**MANAGER:**
MARRIOTT HOTEL SERVICES, INC.,
a Delaware corporation


By:_____
    Yoav K. Gery
    Authorized Signatory

**SCHRAGER:**
I.S. INTERNATIONAL, LLC,
a Delaware limited liability company


By: _____
Print Name:    Ian Schrager
Title:        President



**EXHIBIT 1**

**MILESTONE EVENTS**

Manager and Schrager will visit the Site for the purpose of performing their obligations under the Agreement at approximately the following times:

Commencement of public space finishes.

Commencement of FF&E installation.

Final Acceptance.

In addition to the above-described milestone events, Manager and Schrager may visit the Site to observe the construction of the Hotel and Project Areas at such intervals as Manager and Schrager deem reasonably necessary (including, without limitation, the review of special systems such as life safety, kitchen, telecommunications and other hotel systems).



## EXHIBIT 2

### PRE-OPENING EXPENSES & INITIAL WORKING CAPITAL

**Waikiki Edition Hotel**
**Preopening**
**Budget**
**June 9, 2008**

| Dept # | Description | $ |
|---|---|---|
| 61 | Front Desk and Housekeeping | $   290,462 |
| 65 | Executive Office/ Admin | 545,091 |
| 67 | Sales & Marketing | 1,709,277 |
| 68 | Licenses | 100,000 |
| 69 | Engineering | 121,638 |
|  | Task Force - OFS | 72,000 |
|  | Bar Task Force | 68,250 |
|  | Relocation | 530,000 |
|  | Contingency @ 5% (on all costs except relocation) | 141,923 |

| | |
|---|---|
| **Total Preopening Budget** | **$3,578,641** |
| **Total CPAR** | **$   10,138** |
| **Total Preopening Budget (with inflation factor)** @ *5.00%* | **$   3,757,573** |

| | |
|---|---|
| **Opening Working Capital** [Includes 2 weeks of Payroll, Opening F&B Inventories] | **$   519,417** |
| **Total CPAR** | **$   1,471** |
| **Opening Working Capital** [with inflation factor] @ *5.00%* | **$   545,387** |



**Key Assumptions:**

* Assumes staffing levels for management and hourly as outlined in Edition Brand staffing model
* Assumes wages consistent with pro forma and Zone 4 compensation
* F&B staffing not detailed for Pre-opening expense purposes but covered in margins per pro forma
* Relocation assumed for GM, 2 Exec and 5 Manager positions
* Assumes no Shared Service costs or Sales Force One related allocations
* Assumes no Spa related pre-opening costs
* Assumes Task Force related costs consistent with NALO full service opening on a CPAR basis

---

**Pre-opening Staffing (excluding F&B staff)**

| | |
|---|---|
| Number of Managers | 31 |
| Number of Hourly Associates | 111 |
| **Total Estimated FTEs** | *142* |
| | |
| **Number of Guest Rooms** | **353** |



# EXHIBIT 3

## APPROVED CONSULTANTS

| Entity License Number | Company Name & Address | Contact Name Position / Title | Phone Fax E-Mail |
|---|---|---|---|
| **HOTEL** | | | |
| General Contractor CT-25292 | **Skye Construction, LLC** 3375 Koapaka Street, Suite D-185 Honolulu, HI 96819 | Stanley A. Salcedo | 808.839.0909 808.836.7927 val-ssm@hawaii.rr.com |
| Executive Project Director | **E-Realty Companies Hawaii, Inc.** 1775 Ala Moana Blvd., Ste. 262 Honolulu, HI 96815 | Eric Hamaguchi | 808.983.3804 808.983.3801 eric@erealtycompanies.com |
| Construction Management | **E-Realty Construction & Management Hawaii, Inc.** 1775 Ala Moana Blvd., Ste. 262 Honolulu, HI 96815 | Aaron Molinar Project Manager | 808.983.3800/ 3804 808.983.3801 aaron@erealtycmhawaii.com |
| Architect | **Solomon Ferguson Architecture** 143 South Cedros Avenue, Ste. C-101 Soloana Beach, CA 92075 | Riccardo Ferguson Jan Solomon | 858.509.2123 858.509.2127 Riccardo@solomonferguson.com |
| Structural Engineer | **Robert Englekirk Consulting** 239 Merchant Street #200 Honolulu, HI 96813-2923 | Michael K. Kawaharada, S.E. Principal | 808.521.6958 808.533.6701 reihi@hawaii.rr.com |
| Mechanical Engineer Guestrooms | **Amel Technologies, Inc.** 1164 Bishop Street, Suite 124-302 Honolulu, HI 96813 | Melek Yalcintas President | 808.590.2340 808.590.2340 melekyalcintas@hawaii.rr.com |
| Mechanical Engineer Public Areas | **Lance Uchida Mechanical Engineers, LTD** 1446 Lalamilo Place Honolulu, HI 96819 | Lance Uchida Principal | 808.836.0396 808.839.6081 luchida@aol.com |
| Electrical Engineer | **Albert Chong Associates, Inc.** 1117 Kapahulu Ave. Honolulu, HI 96816 | Rick Chong Vice President | 808.738.5355 808.738.5455 |
| ADA Consultant | **Paul Sheriff Incorporated** 1000 Bishop Street Honolulu, HI 96813 | Paul Stanley Sheriff | 808.792.7285 808.792.7826 www.paulsheriff.com |
| Food Service / Kitchen Consultant | **Global Restaurant Design** 31368 Via Colinas Westlake Village, CA 91362 | Jerry N. Stein | 818.707.7778 818.706.7701 jerrys@grdcorp.com |
| Purchasing - China | **LF International Trading** 2855 Kaihikapu Street Honolulu, HI 96816 | Valarie Chang | 808.83338.25 808.735.7114 |
| Land Use & Zoning Consultant | **Patrick Seguirant Architect** 90-1030 kaihi Street Ewa Beach, HI 96706 | Patrick Seguirant Principal | 808.683.4477 808.689.3663 |
| Water Feature Design | **Pacific Aquascapes** | Wendell Lee | 808.682.1020 808.682.7269 |



| | | | wendell@pacificaquagroup.com |
|---|---|---|---|
| Permit Processing | **Frank Pacarro Permit Service** | Frank Pacarro | |
| IT Consultant | **Innovative Business Solutions** | Chris Berner | 808.294.9190 |
| Liquor License | **Wayne Luke - Attorney at Law**<br>1441 Kapiolani Blvd, Ste. 1214<br>Honolulu, HI 96814 | Wayne Luke | 808.946.3151<br>808.941.3673 |
| Environmental Consultant | **Elite Environmental Consultants, Inc.**<br>2220 Eva Beach, Hawaii<br>96706 | Jay Clayton | 808.206.8221 |
| Architect | **Next Design, LLC**<br>1132 Bishop Street, Suite 145<br>Honolulu, HI 96813 | Gary Nishioku<br>Karen Sakanto | 808.440.2788<br>808.440.2790<br>gnishioku@nextdesignllc.com |
| **MORIMOTOS RESTAURANT** | | | |
| Construction Management | **E-Realty Construction & Management Hawaii, Inc.**<br>1775 Ala Moana Blvd., Ste. 262<br>Honolulu, HI 96815 | Aaron Molinar<br>Project Manager | 808.983.3800/ 3804<br>808.983.3801<br>aaron@erealtycmhawaii.com |
| Executive Project Director | **E-Realty Companies Hawaii, Inc.**<br>1775 Ala Moana Blvd., Ste. 262<br>Honolulu, HI 96815 | Eric Hamaguchi | 808.983.3804<br>808.983.3801<br>eric@erealtycompanies.com |
| Architect | **Solomon Ferguson Architecture**<br>143 South Cedros Avenue C-101<br>Solana Beach, CA 92075 | Jan Solomon<br>Amy Small<br>Riccardo Ferguson | 858.509.2123<br>858.509.2127 |
| Interior Designer | **Thomas Schoos**<br>8271 Santa Monica Street #200<br>West Hollywood, CA 90046 | Michael Berman<br>President<br>Konrad Hrehorowicz | 323.822.2800<br>323.822.2808<br>konrad@schoos.com |
| Structural Engineer | **Englekirk Partners**<br>2116 Arlington Ave.<br>Los Angeles, CA 90018 | Chris Rosien<br>Principal | 323.733.6673<br>323.733.8682 |
| Mechanical Engineer | **Lance Uchida Mechanical Engineers, LTD**<br>1446 Lalamilo Place<br>Honolulu, HI 96819 | Lance Uchida<br>Principal | 808.836.0396<br>808.839.6081<br>luchida@aol.com |
| Electrical Engineer | **Albert Chong Associates, Inc.**<br>1117 Kapahulu Ave.<br>Honolulu, HI 96816 | Rick Chong<br>Vice President | 808.738.5355<br>808.738.5455 |
| Kitchen Design | **Yui Design**<br>702 Sligo Creek Parkway<br>Takoma Park, MD 20912 | Jimi Yui | 301.270.8950<br>301.270.8573 |



**FINAL**

**EDITION**
**WAIKIKI, HAWAII**

## FIRST AMENDMENT TO DESIGN AND TECHNICAL SERVICES
## AND PRE-OPENING AGREEMENT

**THIS FIRST AMENDMENT TO DESIGN AND TECHNICAL SERVICES AND PRE-OPENING AGREEMENT** ("First Amendment") is made and entered into as of this 13th day of March 2009, by and between **M WAIKIKI LLC**, a Hawaii limited liability company ("Owner"), **MARRIOTT HOTEL SERVICES, INC.** ("Manager"); and **I.S. INTERNATIONAL, LLC** ("Schrager").

### RECITALS:

A.      Owner, Manager and Schrager  entered into that certain Design and Technical Services and Pre-Opening Agreement, dated as of July 9, 2008 (the "TSA") regarding the design and renovation of the Waikiki EDITION Hotel located in Waikiki, Hawaii; and

B.      Owner, Manager and Schrager desire to amend the TSA on the terms and conditions set forth in this First Amendment.

NOW, THEREFORE, in consideration of the mutual covenants contained in this First Amendment, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      All capitalized terms that are not defined in this First Amendment shall have the meanings ascribed to such terms in the TSA.

2.      The second paragraph of Section 2.1.1 of the TSA is hereby deleted in its entirety and the following is substituted in lieu thereof:

"On or before March 31, 2009 Owner shall prepare for the approval of Manager and Schrager a final detailed facilities program describing the space requirements for the Project Areas and identifying the uses of such spaces (the "Facilities Program"). Manager and Schrager shall have ten (10) Business Days from receipt of the Facilities Program to approve or disapprove the Facilities Program. If Manager or Schrager disapprove any portion of the Facilities Program, Manager or Schrager shall provide specific guidance to Owner relating to the modifications that would be required in order for the Facilities Program to be approved. If Manager and Schrager do not respond within such ten (10) Business Day period, the Facilities Program shall be deemed approved. Following the approval (or deemed approval) of the Facilities Program, Manager and Schrager shall not require Owner to modify such approved (or deemed approved) Facilities Program without Owner's approval."

453130-2

3.      Section 2.5.4 of the TSA is hereby deleted in its entirety.

4.      Section 4.1(e) of the TSA is hereby amended to delete the reference to "May 31, 2009" in such Section and substitute "September 1, 2010" in lieu thereof.

5.      The projected Opening Date set forth in Section 5.1 of the TSA is hereby extended from to July 1, 2009 to January 1, 2010.

6.      The notice addresses for Manager and the Manager/Schrager Rep set forth in Section 9.11 of the TSA are hereby deleted in their entirety and the following are substituted in lieu thereof:

<u>To Manager:</u>

Marriott Hotel Services, Inc.
c/o Marriott International, Inc.
10400 Fernwood Road
Bethesda, Maryland  20817
Attn:   A&C Department 70/100.03 – Oswaldo Barrios
Phone: (301) 380-6851
Fax:    (301) 380-1992

<u>with copies to:</u>

Marriott Hotel Services, Inc.
c/o Marriott International, Inc.
10400 Fernwood Road
Bethesda, Maryland 20817
Attn:   Law Department 52/923 – A&C Attorney
Phone: (301) 380-9555
Fax:    (301) 380-6727

EDITION Hotels
c/o Marriott International, Inc.
820 Greenwich Street, 3rd Floor
New York, NY 10014
Attn:   Vice President & Managing Director
Phone: (212) 896-5060
Fax:    (212) 896-5040

To Manager/
Schrager Rep:        c/o Ian Schrager Company
                     818 Greenwich Street
                     New York, New York 10014
                     Attn:   Michael Overington
                     Phone: (212) 796-8423
                     Fax:    (212) 898-0331

7.     Pursuant to the provisions of Section 9.15 of the TSA Owner, Manager and Schrager hereby expressly state that this First Amendment supplements, amends and modifies the TSA as expressly provided herein.

8.     As amended by this First Amendment, the TSA is hereby ratified and confirmed and is in full force and effect.  The TSA as amended by this First Amendment, and that certain letter from Manager and Schrager dated as of the date hereof regarding the flagging of the Hotel as an EDITION hotel embody the entire agreement of Owner and Manager with respect to the subject matter therein and herein, and no representations, inducements or agreements, oral or otherwise, not contained in the TSA, this First Amendment, or such letter shall be of any force or effect.

9.     This First Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which shall constitute one and the same instrument.

(Signatures Appear on Following Page)

- 3 -

**IN WITNESS WHEREOF**, the parties have caused their duly authorized representatives to execute this First Amendment as of the date first above written.

<u>**OWNER:**</u>

**M WAIKIKI LLC**, a Hawaii limited liability company

By:    eRealty Fund, LLC, a California limited liability company, its Manager

By:    _____
Print Name:    _____
Title:    _____

<u>**MANAGER:**</u>

**MARRIOTT HOTEL SERVICES, INC.,**
a Delaware corporation

By:    _____
Print Name:    _____
Title:    _____

<u>**SCHRAGER:**</u>

**I.S. INTERNATIONAL, LLC,**
a Delaware limited liability company

By:    _____
        Mitchell Hochberg
        Authorized Signatory

**IN WITNESS WHEREOF,** the parties have caused their duly authorized representatives to execute this First Amendment as of the date first above written.

<u>**OWNER:**</u>

**M WAIKIKI LLC,** a Hawaii limited liability company

By:    eRealty Fund, LLC, a California limited liability company, its Manager

By:    _____
Print Name:    _____
Title:    _____

<u>**MANAGER:**</u>

**MARRIOTT HOTEL SERVICES, INC.,** a Delaware corporation

By:    _____
Print Name:    Horace E. Jordan
Title:    Vice President

<u>**SCHRAGER:**</u>

**I.S. INTERNATIONAL, LLC,** a Delaware limited liability company

By:    _____
    Mitchell Hochberg
    Authorized Signatory

S-1

**IN WITNESS WHEREOF**, the parties have caused their duly authorized representatives to execute this First Amendment as of the date first above written.

<div style="margin-left:40%">

**OWNER:**

**M WAIKIKI LLC**, a Hawaii limited liability company

By:    eRealty Fund, LLC, a California limited liability company, its Manager

By:    _____
Print Name:    _____
Title:    _____

**MANAGER:**

**MARRIOTT HOTEL SERVICES, INC.,**
a Delaware corporation

By:    _____
Print Name:    _____
Title:    _____

**SCHRAGER:**

**I.S. INTERNATIONAL, LLC,**
a Delaware limited liability company

By:    _____
    Mitchell Hochberg
    Authorized Signatory

</div>

S-1