# Exhibit I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

M WAIKIKI LLC,

        Plaintiff,

- against -

MARRIOTT HOTEL SERVICES, INC., I.S. INTERNATIONAL, LLC and IAN SCHRAGER,

        Defendants,

---

MARRIOTT HOTEL SERVICES, INC.,

        Counterclaim-Plaintiff,

- against -

M WAIKIKI LLC,

        Counterclaim-Defendant.

Index No.: 651457/2011
IAS Part 3
Justice Bransten

**AFFIDAVIT OF ROULA McCANN**

Roula McCann, being duly sworn, deposes and says as follows:

1. I am currently the Director of Finance for the Waikiki EDITION Hotel in Honolulu, Hawaii (the "Hotel"). As Director of Finance, a position I have held since October 2009, I oversee all of the Hotel's financial operations, including preparing the annual budget, overseeing the documentation and payment of the Hotel's operating expenses, and interfacing with the Hotel's Owner M Waikiki LLC ("Owner") and asset managers on a regular basis to communicate about the Hotel's finances. Prior to opening, I was responsible for tracking pre-opening expenses, submitting monthly invoices to Owner and monitoring Owner's payment of those expenses.

2

    2.  I have been employed by Marriott International Inc. ("Marriott") for approximately fourteen years and have worked with various Marriott brands, including the luxury Ritz-Carlton brand.

    3.  On August 28, 2011, I received a voicemail from Cristiano Buono at approximately 2:37 a.m (local Hawaii time).  When I returned the call a few minutes later, Buono told me that he had been advised by Christian Oles, the Hotel's Director of Security, that Oles had "been served" and that 50-60 people from Aqua Hotels & Resorts ("Aqua") had taken over the Hotel.  Oles requested that Buono proceed to the Hotel immediately and attempt to contact Michael Rock, the Hotel's General Manager.

    4.  Oles later called me directly and advised that I proceed to the Hotel immediately.  When I asked him what happened, he said that he had been served with court papers that appeared to be legitimate.  He also said that the individuals who had taken over the Hotel were accompanied by a sheriff and local authorities and would not let him leave his desk to scan the papers to send to me.

    5.  During a subsequent conversation, I again requested that Oles scan the papers served on him.  Although Oles reiterated that he could not scan the papers, he briefly summarized the document to me over the phone.  In short, the document said that Marriott was no longer the manager of the Hotel and would be replaced by Modern Management Services LLC.  After reading the contents of the document to me, Oles refused to respond to any other request I made nor take any of my phone calls.  Oles kept repeating my name and re-iterating statements I made over the phone as though it was being repeated for someone else in the room to hear.  I now suspect that Oles was working with the owner all along.

6. At no time prior to August 28, 2011 did I receive notice of Owner's intent to terminate the contract. In fact, neither the Hotel's General Manager nor I received a copy of the legal papers purporting to give notice of the termination until we happened upon the Owner's asset manager, Paul Guccini, while standing outside of the Hotel's employee entrance and requested that he provide us with a copy of the papers. I also observed personally a police car sitting in front of the Hotel with its lights flashing.

7. After I returned to the Hotel property, at approximately 4:00am, I attempted to call over two of our security officers. Both gentlemen looked at me, laughed, and proceeded to ignore my request and continue walking along the path outside the property. I approached security officer Tarrant Togiai who was standing outside the employee entrance and asked him why the security team was not responding to me. He informed me that the EDITION security team had been told that they no longer work for Marriott and were following orders from the new manager. While standing near the Hotel's employee entrance, I subsequently observed EDITION security officers advise EDITION employees to go into the Hotel and sign on with Aqua. Several Hotel employees told me that the Aqua representatives told them that they could either sign with Aqua or they would be terminated.

8. When they exited the Hotel, a number of employees showed me the new IDs given to those who signed on with Aqua. The IDs identified the employees as employees of the Modern Honolulu Hotel.

9. Looking back, I believe that the Owners were planning this takeover for at least a couple of months. In July, Paul Guccini, the Owner's asset manager, came to the Hotel with an employee of Bickel & Brewer ostensibly to review the Hotel's Books and Records. Knowing what I know now, the Books and Records they requested to see are the sort of documents that

3

they would want in order to take over operation of the Hotel, such as reports of incoming groups and other guests. Of course, they did not inform us at the time of their intention and we gave them access to certain Books and Records, and other documents, in the interest of our cooperative business relationship. We declined to give the Owner access to certain proprietary information, however, because of the importance to Marriott and to EDITION. I personally advised Guccini that Marriott considers such information proprietary. The Owner clearly now has access to this information at the Hotel.

10. I have also been made aware recently of troubles that guests are now experiencing at the Hotel. For instance, one guest had checked in with Marriott using his corporate credit card. He was trying to check out after the Owner had taken over and was told he could not change his credit card at check-out to his personal card. The Owner's new manager apparently told him to address his complaints to Marriott's customer care. This is just one example of the kind of chaos our guests are now experiencing, over which we have no control.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Roula McCann

L.S.

Sworn to before me
this 29th day of August, 2011

_____
Notary Public, State of Hawaii
TAMMY M. YOSHIMURA
My commission expires 09-22-2012

Notary certificate on next page.

4

**Doc. Date:** 08/29/2011     **# Pages:** 4

**Notary Name:** Tammy M. Yoshimura     First **Circuit**

**Doc. Description:** Affidavit of Roula McCann

_Tammy M. Yoshimura_     08/29/2011  L.S. (Stamp or Seal)
Notary Signature                Date