# Exhibit Q

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------x

M WAIKIKI, LLC,

    Plaintiff,

vs.

MARRIOTT HOTEL SERVICES, INC., I.S.
INTERNATIONAL, LLC, AND IAN SCHRAGER,

    Defendants.
------------------------------------x

Index No.: 651457/11

Hon. Eileen Bransten

---

### PLAINTIFF'S MEMORANDUM REGARDING THE TERMINABILITY OF THE MARRIOTT HOTEL MANAGEMENT AGREEMENT AND THE REVOCABILITY OF MARRIOTT'S AGENCY AUTHORITY THEREUNDER

---

**BICKEL & BREWER**

William A. Brewer III
James S. Renard (*pro hac vice*)
Alexander D. Widell

767 Fifth Avenue, 50th Floor
New York, New York 10153
Telephone: (212) 489-1400
Facsimile: (212) 489-2384

**ATTORNEYS FOR PLAINTIFF
M WAIKIKI, LLC**

Plaintiff M Waikiki, LLC ("M Waikiki" or "Owner"), by and through its undersigned counsel, submits this Memorandum Regarding the Terminability of the Marriott Hotel Management Agreement and the Revocability of Marriott's Agency Authority Thereunder, as follows:

## I.

## PRELIMINARY STATEMENT

By its application for a temporary restraining order and preliminary injunction, Defendant Marriott Hotel Services, Inc. ("Marriott") requests an unprecedented <u>mandatory</u> injunction to change the *status quo* and force Plaintiff, against its will, to accept the resumption of Marriott's mismanagement of its $250 million Hotel – notwithstanding the fact that Plaintiff terminated Marriott's agency after it justifiably lost all trust and confidence in Marriott. There is absolutely <u>no</u> legal support for the extraordinary equitable relief Marriott seeks. Indeed, the Management Agreement between the parties established a classic principal-agent relationship pursuant to which Plaintiff had the unfettered power to terminate Marriott's authority thereunder at any time. Simply put, Marriott's application must be denied.

## II.

## ARGUMENTS AND AUTHORITIES

A.  **An Operator's Agency Authority Under A Hotel Management Contract Is Revocable At The Will Of The Hotel Owner.**

The now-terminated Hotel Management Agreement between Plaintiff M Waikiki, as Owner, and Defendant Marriott, as Manager, is governed by New York law.[1] Under New York

---

[1] *See* Management Agreement at 44, § 11.04 ("This Agreement is executed pursuant to, and shall be construed under and governed exclusively by, the laws of the State of New York applicable to contracts formed and to be performed entirely within the State of New York, without regard to New York choice of law rules.").

1

law, it is "well-settled" that "a principal has the *power* to revoke at any time his agent's authority to represent him."[2] Indeed, that rule is a fundamental precept of agency law, as recognized by the Restatement of Agency[3] – which New York courts regularly cite and rely upon.[4]

A principal has the unconditional power to terminate its agent because it is "contrary to public policy for a principal to have an agent forced upon him against his will."[5] The power of a principal to revoke its agent's authority is especially important in the context of an agent's continued management of a principal's real property and related business against the principal's

---

[2] *Wilson Sullivan Co. v Int'l Paper Makers Realty Corp.*, 307 N.Y. 20, 24, 119 N.E.2d 573, 574 (1954); *see also G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 102, 840 N.Y.S.2d 378, 385 (2d Dep't 2007) (slip opinion) ("A principal is always free to terminate the agency relationship, subject to a claim for damages by the agent. The disloyalty of the agent entitles the principal to avoid such claims, at least to the extent that the claims involve future compensation.") (citation omitted); *Sea Lar Trading Co., Inc. v. Michael*, 107 Misc.2d 93, 96-97, 433 N.Y.S.2d 403, 403 (N.Y. Sup. Ct. 1980) ("A principal has the right at any time to revoke the authority of any agent") (citation omitted); *American Home Assur. Co. v. Starr Technical Risks Agency, Inc.*, 11 Misc.3d 1051(A), 2006 WL 304746 at *3 (N.Y. Sup. Ct. Feb. 8, 2006) ("It is well settled that . . . a principal has the power to revoke at any time his agent's authority to represent him."); *Smith v. Conway*, 198 Misc. 886, 101 N.Y.S.2d 529, 531 (N.Y. Sup. Ct. 1950) ("[A] principal, at least generally, is permitted to revoke an agency when he pleases, even though he has contracted with agent for definite period of time"); *See also United Ins. Co. Ltd. v. World Wide Web*, No. 11–CV–1177 (CBA) (JMA), 2011 WL 1870599, at *2 (E.D.N.Y. Apr. 27, 2011) ("New York law clearly provides that a principal has an inviolate right to revoke its agency at any time."); N.Y. GEN. OBLIG. LAW § 5-1511(2) ("An agent's authority terminates when . . . the principal revokes the agent's authority").

[3] *See* RESTATEMENT (THIRD) OF AGENCY § 3.06 (2006) ("An agent's actual authority may be terminated by . . . a manifestation of revocation by the principal to the agent."); RESTATEMENT (SECOND) OF AGENCY § 118 (1958) ("Authority terminates if the principal or the agent manifest to the other descent to its continuance.").

[4] *See Wilson*, 307 N.Y. at 25, 119 N.E.2d at 574; *G. K. Alan*, 44 A.D. 3d at 102, 849 N.Y.S.2d at 385; *Smith*, 198 Misc. at 888, 101 N.Y.S.2d at 531; *Kravetz v. United Artists Corp.*, 143 N.Y.S.2d 539 (N.Y. Sup. Ct. 1955).

[5] *Smith*, 198 Misc. at 888, 101 N.Y.S.2d at 531.

2

will,[6] because a manager of a business owned by another has the authority to bind the owner – legally and financially.[7]

Thus, a principal-owner may revoke an agent-manager's authority to manage its business even if the exercise of that power constitutes a breach of the management agreement between the parties (thereby providing the terminated agent a potential claim for damages).[8]  Moreover, provisions in management contracts that purport to prohibit or limit a principal-owner's power to revoke the agency-manager's agency authority thereunder are ineffective against the exercise of that power.[9]

---

[6] *See Wilson*, 307 N.Y. at 24, 119 N.E.2d at 574 (case involved agent-manager of owner's real estate business); *see also Woolley v. Embassy Suites*, 227 Cal.App.3d 1520, 1530 (1st Dist. 1991) ("It should always be within the power of the principal to manage his own business and that includes the power of the principal to reassume the control over his own business which he has but delegated to his agent.").

[7] *See* RESTATEMENT (SECOND) OF AGENCY § 3 (1958) ("[T]he manager of a business . . . is clearly a general agent for the one employing him."); *id.* at § 73 ("[A]uthority to manage a business includes authority:  (a) to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it; (b) to procure equipment and supplies and to make repairs reasonably necessary for the proper conduct of the business; (c) to employ, supervise, or discharge employees as the course of business may reasonably require; (d) to sell or otherwise dispose of goods or other things in accordance with the purposes for which the business is operated; (e) to receive payment of sums due the principal and to pay debts due from the principal arising out of the business enterprise; and (f) to direct the ordinary operations of the business."); *Woolley*, 227 Cal.App.3d at 1531 ("[T]he very nature of a managerial relation is to delegate authority from principal to agent.  A manager normally has the widest authority of all business agents and, unless limited by instructions, is in complete control of its operations.") (citations omitted).

[8] *Wilson*, 307 N.Y. at 25, 119 N.E.2d at 574 (principal who revokes an agent's authority is not "immune from liability to the agent for breach of contract" and, thus, even though a principal-owner has "the *power* to terminate at will its agency relationship" with its agent-manager, "if in doing so it violated its obligations under the contract, it must respond . . . in damages"); *see also* RESTATEMENT (THIRD) OF AGENCY § 3.06, cmt.c (2006) ("The power to terminate does not depend upon . . . conformity with an agreement between the agent and the principal.  Exercising the power may constitute a breach of contract.").

[9] *See id.* at § 3.10 ("Notwithstanding any agreement between the principal and agent, an agent's authority terminates if the principal revokes the agent's authority by a manifestation to

3

The Restatement of Agency recognizes that hotel managers are agents of the owners of the properties they operate.[10] Indeed, the four seminal agency cases on the revocability of hotel management agreements – *Woolley*,[11] *Pacific Landmark*,[12] *Gov't Guarantee Fund*,[13] and

---

the agent."); RESTATEMENT (SECOND) OF AGENCY § 118, cmt.b ("A statement in a contract that the authority cannot be terminated by either party is effective only to create liability for its wrongful termination."); *Woolley*, 227 Cal.App.3d. at 1530 ("Even if the contract did attempt to restrict the power of the owner to terminate the manager, such a provision would be ineffective. The principal's power of revocation is absolute and applies even if doing so is a violation of the contract or the agency is characterized as 'irrevocable'"); *Gov't Guarantee Fund of The Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 307 (3d Cir. 1996) (quoting *Woolley*, court holds that "principal's power of revocation is absolute and applies even if doing so is a violation of the contract or the agency is characterized as 'irrevocable'"); *2660 Woodley Road J.V. v. ITT Sheraton Corp.*, 1998 U.S. Dist. LEXIS 22825 at *6 (D. Del. 1998) ("Despite the fact that the Management Contract contained a provision stating that the contract is irrevocable, plaintiffs may terminate [Sheraton's] agency, although it may constitute a breach of the contract.").

[10] RESTATEMENT (THIRD) OF AGENCY § 3.10, Illustration No. 3 ("P, who owns a hotel, retains A Corp. to manage it. P and A Corp. enter into an agreement providing that, in exchange for A Corp's management services, A Corp. will receive a commission equal to five percent of the hotel's gross revenues. The agreement also provides that the hotel shall be renamed using a trade name owned by A Corp. The agreement further provides that, in exchange for the use of A Corp.'s trade name, A Corp.'s authority shall be irrevocable by P for a period of 10 years. Two years later, P revokes. A Corp's actual authority is terminated. Although A Corp. may have claims against P for breach of contract, specific performance is not an available remedy. A Corp.'s continued occupancy or other possession of the hotel is not rightful as to P."); RESTATEMENT (SECOND) OF AGENCY § 52, Illustration No. 3 ("P authorizes A to manage P's hotel. It is the usual course for managers to contract for daily supplies of milk and cream. A is authorized to make such a contract."); *id.* at § 73, Illustration No. 7; *see also* Eyster and deRoos, *The Negotiation and Administration of Hotel Management Contracts*, 4th 3d. (2009) at 46 ("The courts have determined that management contracts are agency agreements between owners (principals) and operators (agents) and, as such, are subject to agency law which has its roots in common law."); *The Agency Challenge: How Woolley, Woodley, and Other Cases Rearranged the Hotel-Management Landscape*, CORNELL HOTEL AND RESTAURANT ADMINISTRATION QUARTERLY, Vol. 44, No. 3 (June 2003) at 58-59 ("Because of cases such as *Woolley, Pacific Landmark v. Marriott, Government Guarantee Fund v. Hyatt,* and *Woodley Road v. Sheraton*, it is now common knowledge among owners, institutional investors, lenders, asset managers, and operators that the relationship between owner and manager is much more than an arms-length contractual arrangement . . . Under a hotel-management contract, the owner is the principal and the manager is the agent . . . Another critical element of the relationship is the power of the owner or the operator to terminate the relationship between them – with or without cause.").

[11] *See Woolley*, 227 Cal.App.3d 1520.

4

*Woodley Road*[14] – are each cited with approval in the RESTATEMENT (THIRD) OF AGENCY.[15] The courts in all four of those cases held that the hotel management agreements – and the agency powers granted to the hotel management companies thereunder – were revocable at the will of the hotel owners notwithstanding the terminated agent-managers' arguments that their powers were not terminable.[16]

So important is a hotel owner's superior interest in the use and enjoyment of its property, and control of the business operated thereon, that courts have issued injunctions <u>against</u> terminated hotel managers <u>requiring</u> them to <u>cease</u> any further acts undertaken on behalf of owners and to refrain from interfering with the owners' possession and control of the real property and business operations.[17] One court described the spectre of a hotel manager's unwanted continued possession and control of an owner's hotel business as follows:

---

[12] *See Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*, 19 Cal. App.4th 615 (4th Dist. 1993).

[13] *See Gov't Guarantee*, 95 F.3d at 291.

[14] *See 2660 Woodley Road*, 1998 U.S. Dist. LEXIS 22825, at *6.

[15] *See Restatement* (THIRD) OF AGENCY, § 3.12, Reporter's Notes to comments b (citing *Gov't Guarantee*, *Woodley Road*, and *Pacific Landmark*) and c (citing *Pacific Landmark* and *Woolley*) (2006).

[16] *See Woolley*, 227 Cal.App.3d at 1529-30 ("It is a cardinal principle of agency law that a principal who employs an agent always retains the power to revoke the agency . . . Because an agency depends upon the mutual assent of the parties, it may be renounced by either the principal or the agent at any time."); *Pacific Landmark*, 19 Cal. App.4th at 624 (same, citing *Woolley*); *Gov't Guarantee*, 95 F.3d at 300 ("Section 118 of the Restatement (Second) of Agency (1958) states that an agent's '[a]uthority terminates if the principal or the agent manifest to the other dissent to its continuance.'"); *2660 Woodley Road*, 1998 U.S. Dist. LEXIS 22825 at *6 ("[A]n agent's authority terminates . . . if the principal revokes the agent's authority by a manifestation to the agent.").

[17] *See 2660 Woodley Road*, 1998 U.S. Dist. LEXIS 22825 at *18-19, 24 (granting preliminary injunction in favor of the hotel owner); *Gov't Guarantee*, 95 F.3d at 309 (affirming district court order requiring terminated hotel management company to transition its management and operation of hotel to owner).

5

Where, as here, interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest . . . [Manager] is engaging in a continuing trespass by refusing to leave the premises, and the owners clearly suffer irreparable harm from such deprivations of possession and control which cannot easily be established in dollars. Aside from the real property injury, Plaintiffs also assert that [Manager's] defiance of the termination of its agency by remaining at the Hotel imposes a forced agency relationship against Plaintiffs' will. In the Court's view, this forced agency inflicts irreparable harm on the Joint Venture because of the personal nature of management service agreements. Here, the services involve the mutual confidence and the exercise of discretionary authority, as well as special knowledge and skill. However, with the current situation, the Joint Venture can no longer trust [Manager] to act in the best interests of the Hotel . . . There is no way to protect against [Manager's] personnel diverting business to other hotels or dissuading customers from bringing their business to the Hotel which will affect Hotel business for several years.[18]

Conversely, courts have rejected efforts by terminated hotel managers – such as Marriott here – to obtain injunctive relief against owners to remain in, or resume, managerial control of a hotel against the will of the owner thereof.[19] Such requested injunctions are denied not only as being in derogation of the principal's unfettered power to terminate the relationship with its agent, but also because they would constitute inappropriate orders specifically enforcing personal services contracts.[20]

---

[18] See *2660 Woodley Rd.*, 1998 U.S. Dist. LEXIS 22825 at *17-19. The preliminary injunction order in favor of the hotel owner that resulted from the foregoing decision is set forth in *2660 Woodley Road J.V. v. ITT Sheraton Corp.*, 1998 U.S. Dist. LEXIS 22828 (D. Del. 1998); see also, *Gov't Guarantee*, 95 F.3d at 309.

[19] See *Woolley*, 227 Cal. App. 3d at 1536 ("The [trial] court's order granting the equitable remedy of an injunction to compel continued performance of the management contracts was error as a matter of law. The relationship was one of agency and the principal always retains the unrestricted power to *revoke* the agent's authority. The injunction impermissibly calls for specific enforcement of a personal services contract.").

[20] See *Woolley*, 227 Cal. App.3d at 1534-5 ("The management contracts here undisputedly call for the rendition of services which require the exercise of special skill and judgment. These managerial services . . . are wide ranging and involve daily discretionary activities . . . In other words, the contracts call for a series of complex and delicate business decisions and require mutual cooperation and trust, both of which have ceased to exist in the wake of rancorous litigation between the parties . . . Under the above-cited authority, performance of such contracts cannot be judicially compelled."); *Gov't Guarantee*, 95 F.3d at

B. **Plaintiff's Hotel Management Agreement With Marriott Was An Agency Contract Under Which Marriott's Agency Authority Was Revocable At Plaintiff's Will.**

The Hotel Management Agreement between Plaintiff and Marriott – like the contracts at issue in the hotel-related court decisions discussed above – contains classic indicia of agency authority (*i.e.*, the authority to act on behalf of, and bind, the owner-principal). For example, the Management Agreement granted to Marriott the authority to: (1) bind Owner to contracts and other legal and financial obligations, without any resultant liability to Marriott; (2) purchase, lease, and procure goods and services for the Hotel utilizing Owner's credit and monies; (3) set prices for the services to be provided by Owner's Hotel; (4) provide reservations and sales services for the Hotel, under which Marriott bound and committed Owner to accommodate guests and other business and provide services to those customers; (5) control the revenues from Hotel operations; and (6) exercise discretion over the operation of Owner's Hotel and establish the policies and procedures with respect thereto.[21] By any standard, those powers make Marriott a general agent for Owner in connection with its management of Owner's Hotel.[22]

---

303 (Third Circuit affirms holding of trial court that, "The Management Agreement was a personal services contract which cannot be specifically enforced . . . Courts wish to avoid the friction and social costs which result when parties are reunited in a relationship that has already failed, especially when the services involve mutual confidence and the exercise of discretionary authority."); *2660 Woodley Rd.*, 1998 U.S. Dist. LEXIS 22825 at *18-19.

[21] *See* Management Agreement at 1, § 1.01 ("Owner hereby engages Manager to supervise, direct and control the management and operation of the Hotel for the Term. Manager accepts said engagement and agrees to manage and operate the Hotel during the Term in accordance with the terms and conditions hereinafter set forth."); *id.* at 2, § 1.02 ("The operation of the Hotel shall be under the exclusive supervision and control of Manager which, except as otherwise specifically provided in this Agreement, shall be responsible for the proper and efficient operation of the Hotel . . . Subject to the terms hereof, Manager shall have discretion and control in all matters relating to management and operation of the Hotel . . ."); *id.* at 3-4, § 1.04 ("Manager shall . . . perform each of the following functions: . . . Establish prices, rates, and charges for services provided in the Hotel, including Guest Room rates and rates for commercial space and other space in the Hotel . . . Establish and revise, as necessary, administrative policies and procedures, including policies and procedures for the control of revenue and expenditures, for the purchasing of supplies and services, for the control of credit,

7

Marriott attempts to avoid the conclusion that the Management Agreement created an agency relationship between M Waikiki, as Owner, and Marriott, as Manager, by asserting two arguments. Each of those arguments is without merit.

First, Marriott relies upon the purported negation of an agency relationship set forth in Section 11.03.[23] Apart from demonstrating that Marriott <u>was</u> an agent of Owner *at least* with

---

and for the scheduling of maintenance . . . Receive, hold, and disburse funds, maintain bank accounts and make payments on accounts payable and handle collection of accounts receivable . . . Procure all Inventories and replacement Fixed Asset Supplies . . . Plan, execute, and supervise repairs, maintenance and FF&E purchases at the Hotel . . . Provide food and beverage services . . . [K]eep in full force and effect, either in Manager's name or in Owner's name, as may be approved by Manager or as required by applicable law, any and all operating licenses and permits . . . [E]nter into leases, licenses and concessions for the Hotel, which Manager may execute on behalf of the Hotel or Owner . . ."); *id.* at 7, § 1.11 (Manager to provide Chain Services as listed in Exhibit C, including Central Reservation Services and National Sales Office Services); *id.* at 9, § 1.13(E) ("Manager and the Related Parties may implement any Cost Transaction for or to the Hotel without Owner's approval," including "any transaction involving the purchase, sale, or lease or other procurement or provision of goods and services" for which Manager does not earn a profit); *id.* at 16-17, § 4.03 ("[A]ll funds derived from operation of the Hotel shall be deposited by Manager in accounts in Manager's name, established by Manager in a bank or banks designated by Manager and approved by Owner . . . Manager shall not be required to make any advance or payment with respect to the Hotel except out of such funds, and Manager shall not be obligated to incur any liability or obligation with respect to the Hotel . . . Debts and liabilities incurred by Manager as a result of its operation and management of the Hotel pursuant to the terms hereof, whether asserted before or after Termination, will be paid by Owner to the extent funds are not available for that purpose from Gross Revenues.").

[22] *See supra* § II.A. at n.7; *see also Art Fin. Partners*, 58 A.D.3d at 471, 870 N.Y.S.2d at 331 ("A principal-agent relationship may be established by evidence of the consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act."); *Deep Blue Ventures*, 6 Misc.3d at 730, 791 N.Y.S.2d at 301 (receiving money on behalf of principal gives rise to agency relationship); *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 302 (S.D.N.Y. 2005) (applying New York law) (holding that entering into contracts on behalf of another gives rise to principal-agency relationship).

[23] *See* Management Agreement at 43-44 ("In the performance of this Agreement, Manager shall act solely as an independent contractor; provided, however, Manager shall be deemed to be a fiduciary solely with respect to any funds held by it in the Operating Accounts, the FF&E Reserve, or any other funds held by Manager or its affiliates for Owner (or as part of the MBS System, but not for any other purpose or function or with respect to any other duty or function under this Agreement). Neither this Agreement nor any agreements, instruments,

8

respect to the generation, receipt, accounting, use, expenditure, and disposition of Owner's funds (which comprised a substantial portion of Marriott's duties under the now-terminated Management Agreement), the alleged disclaimer of an agency relationship is not determinative of the agency issue under New York law.[24] And, the acknowledgment in Section 11.03 of the Management Agreement that Marriott was "an independent contractor" is not at odds with Marriott's role as Owner's agent.[25]

Second, Marriott relies on provisions within the Management Agreement that purport to restrict Owner's ability to terminate the contract and Marriott's agency authority thereunder.[26]

---

documents, or transactions contemplated hereby shall in any respect be interpreted, deemed or construed as making Manager a partner, joint venture[r] with, or agent of, Owner.").

[24] See Deep Blue Ventures, 6 Misc. 3d at 730, 791 N.Y.S.2d at 302 ("Although agency is a consensual relationship, how the parties to any given relationship label it is not dispositive. The existence of any agency relationship does not depend upon the intent of the parties to create it, nor upon their belief that they have done so . . . [I]f the agreement results in the factual relationship between them to which are attached the legal consequences of an agency, an agency may exist although the parties did not call it agency and did not intend the legal consequences.") (internal citations omitted); 2A N.Y. Jur.2d, *Agency & Independent Contractor*, § 23 ("[A] disclaimer of agency between the parties is not binding in determining their true relationship."); RESTATEMENT (THIRD) OF AGENCY § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between the parties . . . is not controlling."); *id.* at cmt.b ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency . . . [S]uch statements are . . . not determinative").

[25] See *Ackert v. Ausman*, 29 Misc.2d 962, 967, 218 N.Y.S.2d 822, 827 (N.Y. Sup. Ct. 1961) ("An agent may be an independent contractor; the terms are not mutually exclusive."), *aff'd*, 20 A.D.2d 850, 247 N.Y.S.2d 899 (1st Dep't 1964); RESTATEMENT (SECOND) OF AGENCY § 2(3) (1958) ("An independent contractor . . . may . . . be an agent."); *id.* at cmt.b ("An agent who is not a servant is, therefore, an independent contractor when he contracts to act on account of the principal.").

[26] See Management Agreement at 13, § 2.03 ("Notwithstanding anything in this Agreement to the contrary, without the express written consent of Manager (which consent may be withheld in Manager's sole and absolute discretion), Owner covenants and agrees that it may not terminate this Agreement for any reason whatsoever (including, without limitation, any Event of Default caused by Manager) at any time that . . . any amounts funded by Manager or its Affiliate pursuant to any Marriott Funding Obligation remain outstanding and payable to

9

Of course, as discussed above, contractual provisions purporting to otherwise limit an owner-principal's power to revoke the agency authority of its agent-manager are ineffective to prevent termination and, at best, provide the terminated agent with a claim for damages in the event such termination constituted a breach of contract.[27]

## III.

## CONCLUSION

In light of the foregoing, Plaintiff M Waikiki, as Owner, effectively terminated its Management Agreement with Marriott, as Manager, and revoked Marriott's agency authority thereunder. Therefore, and consistent with the authorities discussed above, Marriott's request for a temporary restraining order and preliminary injunction to reinstate itself as operator of Owner's Hotel, over Owner's objection, must be denied.

---

Manager or its Affiliate."); *id.* at 38, § 9.02(A)(iii) ("[A] non-defaulting party may not terminate this Agreement on the basis of an Event of Default unless and until . . . if the defaulting party contests the occurrence of the Event of Default or its effect on the non-defaulting party, a court of competent jurisdiction has issued a final, binding and non-appealable order finding that the Event of Default has occurred and that it has had such a material adverse effect.").

[27] *See supra* § II.A. at nn. 8-9.

10

Dated: August 30, 2011

Respectfully submitted,

**BICKEL & BREWER**

By: _/s/_____
William A. Brewer III
James S. Renard (*pro hac vice*)
Alexander D. Widell

767 Fifth Avenue, 50th Floor
New York, New York 10153
Telephone: (212) 489-1400
Facsimile: (212) 489-2384

**ATTORNEYS FOR PLAINTIFF M WAIKIKI LLC**

11

5250607.5
2147-02