# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 08/01/2011

NYSCEF DOC. NO. 14-1

INDEX NO. 651457/2011

RECEIVED NYSCEF: 08/01/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------x

M WAIKIKI LLC,

                            Plaintiff,

            – against –

MARRIOTT HOTEL SERVICES, INC., I.S.
INTERNATIONAL, LLC, and IAN SCHRAGER,

                          Defendants.

----------------------------------------------------------------x

Index No. 651457/2011

(Hon. Eileen Bransten)

**Oral Argument Requested**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARRIOTT HOTEL SERVICES, INC.'S MOTION TO DISMISS THE COMPLAINT

JENNER & BLOCK LLP
Richard F. Ziegler
Brian J. Fischer
Colleen A. Harrison
919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699

David A. Handzo (pro hac application
    forthcoming)
Michael B. DeSanctis
Lindsay C. Harrison (pro hac application
    forthcoming)
Kelly D. Gardner
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 661-4956

*Attorneys for Defendant Marriott
Hotel Services, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

I.   THE DEVELOPMENT AND OPERATION OF THE WAIKIKI EDITION ..........................3

    A.  The Parties' Agreements...........................................................................................3

        1.  The TSA.............................................................................................................3

        2.  The Management Agreement...........................................................................4

    B.  The Opening of the Waikiki EDITION .........................................................................6

II. PLAINTIFF'S LAWSUIT ...........................................................................................6

LEGAL STANDARD......................................................................................................6

ARGUMENT.................................................................................................................7

I.   THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIMS.....7

    A.  Plaintiff's Allegations Do Not Derive from Actual Contractual Obligations.....................8

    B.  Plaintiff's Claims Are Barred by Its November 16, 2010 Estoppel Certificate.................10

    C.  Plaintiff's Claims Are Barred by Plaintiff's Failure To Provide Marriott with
        Contractually-Required Notice and Opportunity To Cure.................................................13

II. PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS
    FORECLOSED BY THE TERMS OF THE PARTIES' AGREEMENTS............................15

III. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM FAILS AS A MATTER
    OF LAW. .................................................................................................................19

    A.  Plaintiff's Negligent Misrepresentation Claim Is Duplicative of Its Breach of
        Contract Claims and Should Therefore Be Dismissed. .....................................................20

    B.  Plaintiff Has Not Adequately Alleged a Special Relationship Between the Parties..........21

    C.  Plaintiff's Negligent Misrepresentation Claim Arising from Statements of Future
        Expectation Should Be Dismissed. ..................................................................................22

    D.  Any Reliance By Plaintiff on Marriott's Projections of Future Performance Was
        Unreasonable as a Matter of Law. ...................................................................................24

CONCLUSION.............................................................................................................25

*M Waikiki v. Marriott Hotel Services,*                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

## TABLE OF AUTHORITIES

**CASES**

*88 Blue Corp. v. Staten Builders Co.*, 176 A.D.2d 536, 575 N.Y.S.2d 11 (1st Dep't 1991).........22

*Abiele Contracting, Inc. v. New York City School Construction Authority*, 91 N.Y.2d 1,
      689 N.E.2d 864, 666 N.Y.S.2d 970 (1997)..............................................................................14

*AJW Partners, LLC v. Cyberlux Corp.*, 873 N.Y.S.2d 231, 2008 WL 4514171 (N.Y. Sup.
      Ct. 2008) (unpublished table decision) .....................................................................................18

*Bed 'N Bath of Spring Valley Inc. v. Spring Valley Partnership*, 185 A.D.2d 584, 586
      N.Y.S.2d 416 (3d Dep't 1992)...................................................................................................11

*Casano v. New 19 W. LLC*, 920 N.Y.S.2d 240, 2010 WL 4630269 (N.Y. Sup. Ct.)
      (unpublished table decision) .......................................................................................................24

*Castillo Grand LLC v. Sheraton Operating Corp.*, No. 06 Civ. 5526, 2009 WL 2001441
      (S.D.N.Y. July 9, 2009) ..............................................................................................................18

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138, 704
      N.Y.S.2d 574 (1st Dep't 2000) ..................................................................................................18

*EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 832 N.E.2d 26, 799 N.Y.S.2d 170
      (2005).........................................................................................................................................15

*Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 736 N.Y.S.2d 737 (3d Dep't 2002) ...............21

*Greater New York Mutual Insurance Co. v. White Knight Restoration, Ltd.*, 7 A.D.3d
      292, 776 N.Y.S.2d 257 (1st Dep't 2004) ...................................................................................25

*H&R Project Associates, Inc. v. City of Syracuse*, 289 A.D.2d 967, 737 N.Y.S.2d 712
      (4th Dep't 2001).........................................................................................................................22

*HCP Laguna Creek CA, LP v. Sunrise Senior Living Management, Inc.*, 737 F. Supp. 2d
      533 (E.D. Va. 2010)....................................................................................................................18

*Hudson River Club v. Consolidated Edison Co. of New York, Inc.*, 275 A.D.2d 218, 712
      N.Y.S.2d 104 (1st Dep't 2000) ..................................................................................................21

*Jorjill Holding Ltd. v. Grieco Associates, Inc.*, 6 A.D.3d 500, 775 N.Y.S.2d 75 (2d Dep't
      2004) ..........................................................................................................................................7

*JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920
      N.Y.S.2d 241, 2010 WL 4868142 (N.Y. Sup. Ct. 2010) (unpublished table decision)...........18

*M Waikiki v. Marriott Hotel Services,*
*I.S. International, LLC, & Ian Schrager*                    Index No. 651457/2011

*JRK Franklin, LLC v. 164 E. 87th Street LLC*, 27 A.D.3d 392, 812 N.Y.S.2d 506 (1st
   Dep't 2006) ...................................................................................................................11, 12, 13

*K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership*, 835 N.E.2d 965 (Ill. App. Ct.
   2005) ...................................................................................................................................11

*Kraus v. Vista International Service Ass'n*, 304 A.D.2d 408, 756 N.Y.S.2d 853 (1st Dep't
   2003) .....................................................................................................................................8

*L.H.P. Realty Co. v. Rich*, No. 601537/00, 2001 WL 1537744 (N.Y. Sup. Ct. Aug. 28,
   2001) ...................................................................................................................................22

*Lasker-Goldman Corp. v. City of New York*, 221 A.D.2d 153, 633 N.Y.S.2d 771 (1st
   Dep't 1995) .........................................................................................................................14

*Linsky v. NYNEX Corp.*, No. 6003300/95, 1997 WL 1048597 (N.Y. Sup. Ct. Jan. 9, 1997).........7

*Madison 92nd Street Associates, LLC v. Courtyard Management Corp.*, No. 602762/09
   (N.Y. Sup. Ct. July 13, 2010) ...................................................................................... 18-19, 25

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 944 N.E.2d 1104, 919 N.Y.S.2d
   465 (2011)...........................................................................................................................21

*Manfro v. McGivney*, 11 A.D.3d 662, 783 N.Y.S.2d 288 (2d Dep't 2004).......................................7

*Moustakis v. Christie's, Inc.*, 68 A.D.3d 637, 892 N.Y.S.2d 83 (1st Dep't 2009) .........................20

*New Image Construction, Inc. v. TDR Enterprises, Inc.*, 74 A.D.3d 680, 905 N.Y.S.2d 56
   (1st Dep't 2010) ..................................................................................................................14

*New York Community Bank v. Snug Harbor Square Venture*, 299 A.D.2d 329, 749
   N.Y.S.2d 170 (1st Dep't 1991).................................................................................................7

*New York Marine & General Insurance Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir.
   2001) ...................................................................................................................................16

*Northeast General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 624 N.E.2d
   129, 604 N.Y.S.2d 1 (1993)......................................................................................15, 16, 19

*Olympia Hotels Corp. v. Johnson Wax Develop Corp.*, 908 F.2d 1363 (7th Cir. 1990) ...............17

*OP Solutions, Inc. v. Crowell & Moring, LLP*, 72 A.D.3d 622, 900 N.Y.S.2d 48 (1st
   Dep't 2010)..........................................................................................................................20

*Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 912 N.Y.S.2d 178 (1st Dep't
   2010).....................................................................................................................................23

*M Waikiki v. Marriott Hotel Services,*                                  Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

*Pacnet Network Ltd. v. KDDI Corp.*, 901 N.Y.S.2d 908, 2009 WL 2999200 (N.Y. Sup.
    Ct. 2009) (unpublished table decision), *aff'd*, 78 A.D.3d 478, 912 N.Y.S.2d 178 (1st
    Dep't 2010) .................................................................................................................................21

*Pensee Associates, Ltd. v. Quon Industries, Ltd.*, 241 A.D.2d 354, 660 N.Y.S.2d 563 (1st
    Dep't 1997) .................................................................................................................................16

*Piggly Wiggly of Mansfield, Inc. v. Wolpert Associates*, 519 So. 2d 371 (La. Ct. App.
    1988) ...........................................................................................................................................12

*Point Productions A.G. v. Phonomatic Group*, A.G., No. 93 Civ. 4001, 2000 WL
    1006236 (S.D.N.Y. July 20, 2000) ....................................................................................14, 15

*Prestige Foods, Inc. v. Whale Security Co.*, 243 A.D.2d 281, 663 N.Y.S.2d 14 (1st Dep't
    1997) ...........................................................................................................................................25

*Quantum Corporate Funding Ltd. v. L.P.G. Associates, Inc.*, 246 A.D.2d 320, 667
    N.Y.S.2d 702 (1st Dep't 1998) ................................................................................................11

*Quatrochi v. Citibank, N.A.*, 210 A.D.2d 53, 618 N.Y.S.2d 820 (1st Dep't 1994) .........................7

*ReliaStar Life Insurance Co. of New York v. Home Depot U.S.A., Inc.*, 570 F.3d 513 (2d
    Cir. 2009) ....................................................................................................................................11

*Republic National Bank v. Hales*, 75 F. Supp. 2d 300 (S.D.N.Y. 1999), *aff'd*, 4 F. App'x
    15 (2d Cir. 2001).........................................................................................................................24

*Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP*, No. 06 Civ. 01857, 2007 WL
    403885 (E.D. Pa. Jan. 31, 2007) ...................................................................................11, 12, 13

*Rivera v. JRJ Land Property Corp.*, 27 A.D.3d 361, 812 N.Y.S.2d 63 (1st Dep't 2006) ...............8

*Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193 (W.D.N.Y. 1998), *aff'd*, 5 F. App'x 52 (2d Cir.
    2001) ...........................................................................................................................................14

*Sauer v. Xerox Corp.*, 5 F. App'x 52 (2d Cir. 2001) ...............................................................14, 15

*Schonfeld v. Thompson*, 243 A.D.2d 343, 663 N.Y.S.2d 166 (1st Dep't 1997) ...........................22

*Sheth v. New York Life Insurance Co.*, 273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't
    2000) .....................................................................................................................................22, 25

*Silletti v. Display Workshop, Inc.*, 791 N.Y.S.2d 874, 2004 WL 1433185 (N.Y. Sup. Ct.
    2004) (unpublished table decision).............................................................................................20

*Sterling Fifth Associates v. Carpentille Corp.*, 9 A.D.3d 261, 779 N.Y.S.2d 485 (1st
    Dep't 2004) ...................................................................................................................................7

*M Waikiki v. Marriott Hotel Services,*                                         Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

*Stewart v. Maitland,* 39 A.D.3d 319, 835 N.Y.S.2d 39 (1st Dep't 2007)......................................20

*Stoller v. Factor,* 272 A.D.2d 83, 714 N.Y.S.2d 667 (1st Dep't 2000)...........................................19

*Town Park Hotel Corp. v. Priskos Investments, Inc.,* No. 02 Civ. 164, 2006 WL 658896
    (D. Utah Mar. 14, 2006)..............................................................................................................18

*Trump v. Corcoran Group, Inc.,* 240 A.D.2d 159, 657 N.Y.S.2d 701 (1st Dep't 1997)...............17

*United States for Use and Benefit of Evergreen Pipeline Construction Co. v. Merritt
    Meridian Construction Corp.,* 95 F.3d 153 (2d Cir. 1996)........................................................20

*Virginia Highlands Associates v. Allen,* 330 S.E.2d 892 (Ga. Ct. App. 1985)..............................12

*Vanderbilt Holdings, LLC v. Greenpoint-Goldman Corp.,* No. 0107408/2005, 2007 WL
    3234922 (N.Y. Sup. Ct. July 17, 2007) ....................................................................................12

*Woodhill Electric v. Jeffrey Beamish, Inc.,* 73 A.D.3d 1421, 904 N.Y.S.2d 232 (3d Dep't
    2010) .............................................................................................................................................8

*Yee v. Weiss,* 877 P.2d 510 (Nev. 1994) ........................................................................................13

**STATUTES**

CPLR 3211(a)(1) ...................................................................................................................*passim*

CPLR 3211(a)(7) ...................................................................................................................*passim*

**OTHER AUTHORITIES**

*Black's Law Dictionary* (9th ed. 2009).............................................................................................11

*Restatement (Second) of Agency* (1958) ..........................................................................................16

Defendant Marriott Hotel Services, Inc., respectfully submits this memorandum of law in support of its motion pursuant to CPLR 3211(a)(1) and (7) to dismiss the Complaint. In further support of this memorandum of law, Defendants submit the affirmation of Kelly D. Gardner, Esq., dated August 1, 2011 ("Gardner Aff."), which attaches documents relevant to this motion.[1]

## PRELIMINARY STATEMENT

This lawsuit arises out of the development, design, and operation of a luxury hotel property in Honolulu, Hawaii known as the Waikiki EDITION ("Hotel"). The Waikiki EDITION is owned by Plaintiff M Waikiki LLC ("Plaintiff" or "Owner"), a sophisticated business entity that had bad timing, investing more than $100 million in a complete redesign and renovation of the Hotel just as the Nation was about to enter the worst recession since the Great Depression.

As is common in the hospitality industry, Owner contracted with other companies to assist with the redesign of the Hotel, and to manage the Hotel after re-opening. Here, Owner engaged Defendants Marriott Hotel Services, Inc. ("Marriott") and I.S. International, LLC ("I.S. International") to provide design advice and technical services during the renovation. Owner also contracted with Marriott to manage the Hotel, and Marriott has done so since the Hotel re-opened in October 2010.

Owner chose to re-open the Hotel as an EDITION brand hotel. EDITION is a new brand of "boutique" hotels jointly created by Marriott and I.S. International. The Hotel was the first EDITION hotel to open and has done so to great acclaim.[2] A second EDITION has since opened in Istanbul, Turkey.

---

[1] The Summons and Complaint is attached as Exhibit ("Ex.") A to the Gardner Affirmation.

[2] *See, e.g*, Jocelyn Fujii, *36 Hours In Honolulu*, NEW YORK TIMES, July 7, 2011, *available at* http://travel.nytimes.com/2011/07/10/travel/36-hours-in-honolulu.html (naming the Hotel as the "style-centric"

*M Waikiki v. Marriott Hotel Services,*                                   Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

A mere eight months after the Hotel re-opened, before the Hotel had a chance to ramp up and establish itself, Plaintiff commenced this action. While Plaintiff asserts a variety of claims sounding in contract, tort and breach of common law duties, at bottom this case represents an effort by Plaintiff to saddle others with current operating losses that result from opening a new luxury hotel in a bad economy.

While Marriott vigorously disputes Plaintiff's factual allegations, even when taken as true, all counts of the Complaint should be dismissed as a matter of law. In its first and second causes of action, Plaintiff contends that Defendants breached the terms of the contracts by which Marriott and I.S. International provided design and technical services, and the contract under which Marriott now manages the Hotel. These contract claims suffer from multiple defects: Plaintiff pleads contractual obligations that do not exist in the contracts; Plaintiff simply ignores the legally dispositive effect of the Estoppel Certificate executed on November 16, 2010, in which Plaintiff certified to Marriott that no breach of the contract had occurred during the same period of time for which the Complaint now claims just the opposite; and the claims are barred by Plaintiff's failure to provide notice and an opportunity to cure in accordance with the parties' contract. Because the contract claims are invalid, Plaintiff's fifth cause of action seeking a declaration of its right to terminate the Management Agreement also fails.

Plaintiff's third cause of action alleges that Defendants breached certain fiduciary duties owed to Plaintiff. The parties' agreements expressly disclaim a fiduciary relationship, however, and this claim therefore must be dismissed.

---

place to stay on a trip to Honolulu) [last accessed August 1, 2011]; *It List: The Best New Hotels 2011*, TRAVEL + LEISURE, June 2011, *available at* http://www.travelandleisure.com/articles/it-list-the-best-new-hotels/23 [last accessed August 1, 2011].

Plaintiff's fourth cause of action alleges negligent misrepresentation and is equally unavailing. Not only is this claim unduly duplicative of Plaintiff's breach of contract claims, but it also fails to allege the requisite special relationship between the parties, arises from non-actionable statements of future expectation, and cannot support a claim of reasonable reliance.

## STATEMENT OF FACTS

### I.   THE DEVELOPMENT AND OPERATION OF THE WAIKIKI EDITION

####      A.   The Parties' Agreements

The terms of the parties' relationships are reflected in a series of contracts, including a Design and Technical Services and Pre-Opening Agreement ("TSA") and a Management Agreement ("M.A.").

1.   *The TSA.* In a July 9, 2008 Design and Technical Services and Pre-Opening Agreement, Plaintiff engaged Marriott and I.S. International to provide services in connection with Plaintiff's renovation of the Hotel.[3] Under the terms of the TSA, Marriott and/or I.S. International were responsible for developing a preliminary vision and concept for the design of the Hotel, *see* TSA at 8-9, § 2.1.2, preparing detailed plans and specifications for implementing the Hotel design, *see id.* at 10, §§ 2.2.1-2.2.2., and creating technical standards, *see id.* at 8, § 2.1.1. In addition, Marriott – in consultation and collaboration with I.S. International – was obligated to "recruit, train and employ the staff required for the Hotel"; "undertake pre-opening promotion and advertising, including opening celebrations and related activities"; and "design and implement a marketing, public-relations and sales strategy for the Hotel." *Id.* at 19-20, § 5.2. For its part, Plaintiff was responsible for "construct[ing], furnish[ing] and fully equip[ping] the Hotel . . . ." *Id.* at 12, § 2.4.1.

---

[3] The TSA, including all amendments, is attached as Exhibit B to the Gardner Affirmation.

Relationship. In Section 9.4 of the TSA, the parties agreed that Marriott and I.S.

International "shall each act solely as an independent contractor"; that none of the parties'

agreements "shall in any respect be interpreted, deemed or construed as making any party a

partner, joint venturer with, or agent of, any other party"; and that no party would argue

otherwise *Id.* at 27, § 9.4.

Opening Date. Although the TSA "*projected*" an opening date of July 1, 2009, *id.* at 19,

§ 5.1 (emphasis added), the parties mutually agreed to extend that date to January 1, 2010. *See*

First Amendment to TSA, at 2 (Mar. 13, 2009).

2.      *The Management Agreement.* The same day the parties signed the TSA, Plaintiff

and Marriott signed a Management Agreement.[4]  Subject to its terms, the Management

Agreement provides Marriott with "discretion and control in all matters relating to management

and operation of the Hotel." M.A. at 2, § 1.02. In exercising that discretion and control,

Marriott is obligated to "act as a reasonable and prudent operator of the Hotel" and to "operate

the Hotel with the goal of achieving long-term profitability." *Id.*

Branding as an EDITION. Although the Management Agreement provides "that the

Hotel be managed, operated and maintained as part of the EDITION Hotel System," *id.*, the

Management Agreement initially contemplated that upon opening, Marriott would *not* brand the

Hotel as an EDITION property. *See id.* § 1.03(B) (providing that Marriott "shall not be

obligated to brand the Hotel as an EDITION hotel, use EDITION Trademarks in the name of the

Hotel, [or] identify the Hotel as a member of the EDITION Hotel System"); TSA at 15, § 2.5.4

("The parties have agreed that the Hotel will initially open without the EDITION brand name.").

Instead, the Hotel's "Flagging Date" was to "occur after [Marriott] ha[d] opened for business one

---

[4] The Management Agreement, including all Amendments, is attached as Exhibit C to the Gardner Affirmation.

(1) other EDITION Hotel operating as a branded hotel using EDITION Trademarks in the name

of the Hotel and as a part of the EDITION Hotel System." M.A. at 64, § 12.01.

Notwithstanding these provisions, on March 13, 2009, the parties executed a Letter

Agreement in which Marriott agreed to open the Hotel as an EDITION Hotel in consideration of

Owner's fulfillment of certain specified conditions.[5] *See* Gardner Aff., Ex. D at 1.

Financial Performance. The Management Agreement contemplates that Marriott will

provide Plaintiff with projections and pro formas related to the Hotel's performance, but such

projections are provided "for information purposes only," and Marriott "do[es] not guarantee that

the Hotel will achieve the results set forth in any such projections, pro formas, or other similar

information." M.A. at 47, § 11.10. The Management Agreement states that "the actual results

achieved by the Hotel are likely to vary from the estimates contained in any such projections, pro

formas, or other similar information and such variations might be material." *Id.*

Notice and Cure Rights. The Management Agreement requires a party to provide notice

and an opportunity to cure any breach of contract at least thirty days prior to instituting any

lawsuit or attempting to terminate the contract. *See* M.A. at 38-39, §§ 9.01(G) & 9.02.

Relationship. Like the TSA, the Management Agreement provides that Marriott "shall

act solely as an independent contractor" and that Marriott "shall be deemed to be a fiduciary

*solely* with respect to any funds held by it in the Operating Accounts, the FF&E Reserve or any

other funds held by [Marriott] or its Affiliates for Owner." M.A. at 43-44, § 11.03 (emphasis

added). It further states that none of the parties' agreements "shall in any respect be interpreted,

deemed or construed as making [Marriott] a partner, joint venture with, or agent of, Owner," and

---

[5] The March 13, 2009 Letter Agreement is attached as Exhibit D to the Gardner Affirmation.

*M Waikiki v. Marriott Hotel Services,*                              Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

that Owner and Marriott specifically "agree that neither party will make any contrary assertion,

claim or counterclaim in any action, suit, . . . or other legal proceedings." *Id.*

      **B.**    **The Opening of the Waikiki EDITION**

      The Waikiki EDITION opened for business in October 2010. *See* Complaint ¶ 30. On

November 16, 2010, Plaintiff executed an Estoppel Certificate to Marriott in which Plaintiff

certified that: (1) "there [was] no continuing Default (as defined in the Hotel Agreements) by

[Marriott] in the performance or observance of any covenant, agreement or condition contained

in the Hotel Agreements," and (2) "no event ha[d] occurred that, with the giving of notice or

passage of time or both, would become such a Default."[6] Gardner Aff., Ex. E at 1-2. Plaintiff

acknowledged that it would be bound by its certifications, all of which Marriott was entitled to

rely upon. *See id.* at 2. This acknowledgment comports with Section 11.18 of the Management

Agreement, which provides that from time to time the parties shall issue such estoppel

certificates and that the certificates "shall be binding upon the certifying party and may be relied

upon by the non-certifying party." M.A. at 54, § 11.18.

      In reliance on the Estoppel Certificate, the parties executed subsequent amendments to

the Management Agreement. *See* Gardner Aff., Ex. C (2d Amend.).

**II.**    **PLAINTIFF'S LAWSUIT**

      Plaintiff commenced the instant proceedings on May 26, 2011. Plaintiff sent Defendants

a Notice of Default the same day, and that notice was received on May 27, 2011.[7]

**LEGAL STANDARD**

      On a motion to dismiss pursuant to CPLR 3211(a)(7), factual averments of the complaint

must be accepted as true, and the plaintiff must be accorded all favorable inferences; however,

---

[6] The Estoppel Certificate is attached as Exhibit E to the Gardner Affirmation.

[7] The Notice of Default is attached as Exhibit F to the Gardner Affirmation.

*M Waikiki v. Marriott Hotel Services,*                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

dismissal is required if the plaintiff nevertheless fails to state a claim. *See Manfro v. McGivney,*

11 A.D.3d 662, 663, 783 N.Y.S.2d 288, 288-89 (2d Dep't 2004). "[A]llegations consisting of

bare legal conclusions" do not state a cause of action. *Quatrochi v. Citibank, N.A.,* 210 A.D.2d

53, 53, 618 N.Y.S.2d 820, 820 (1st Dep't 1994).

On a motion to dismiss pursuant to CPLR 3211(a)(1), a plaintiff's "allegations . . . are not

presumed to be true or granted every favorable inference" if they are "contradicted by

documentary evidence." *Sterling Fifth Assocs. v. Carpentille Corp.,* 9 A.D.3d 261, 261-62, 779

N.Y.S.2d 485, 486 (1st Dep't 2004). "Documentary evidence" includes contracts and other

records of out-of-court transactions. *See New York Cmty. Bank v. Snug Harbor Square Venture,*

299 A.D.2d 329, 329-30, 749 N.Y.S.2d 170, 171 (1st Dep't 1991) (dismissing complaint under

CPLR 3211(a)(1) based on a lease and a letter); *Linsky v. NYNEX Corp.,* No. 6003300/95, 1997

WL 1048597, at *2 (N.Y. Sup. Ct. Jan. 9, 1997) (dismissing claim under CPLR 3211(a)(1) based

in part on defendant's "business record[s]"). Where such evidence "resolves all factual issues as

a matter of law, [that] conclusively disposes of the plaintiff's claim." *Jorjill Holding Ltd. v.*

*Grieco Assocs., Inc.,* 6 A.D.3d 500, 501, 775 N.Y.S.2d 75, 76 (2d Dep't 2004) (quotation marks

omitted). "The interpretation of an unambiguous contract," for example, "is a question of law

for the court, and the provisions of the contract delineating the rights of the parties prevail over

the allegations set forth in the complaint." *Sterling Fifth Assocs.,* 9 A.D.3d at 262, 779 N.Y.S.2d

at 486 (quotation marks omitted).

## ARGUMENT

## I.    THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIMS.

In its first and second claims, Plaintiff alleges that the Defendants breached their

contractual obligations under the TSA and Management Agreement, respectively. *See*

7

*M Waikiki v. Marriott Hotel Services,*                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Complaint ¶¶ 61-70. Plaintiff does not enumerate which provisions of the TSA and Management

Agreement were allegedly breached, nor does Plaintiff attempt to tie its hodge-podge of factual

allegations to any of its specific causes of action. For this reason alone, Plaintiff's claims should

be dismissed. *See Woodhill Elec. v. Jeffrey Beamish, Inc.*, 73 A.D.3d 1421, 1422, 904 N.Y.S.2d

232, 233 (3d Dep't 2010) (dismissing complaint for failure to identify which contract provisions

were breached); *Kraus v. Vista Int'l Serv. Ass'n*, 304 A.D.2d 408, 408, 756 N.Y.S.2d 853, 854

(1st Dep't 2003) (same).

      Plaintiff's breach of contract allegations fall into five general categories: (1) Defendants

failed to operate the Hotel as part of a "chain" of EDITION hotels, *id.* at 2, ¶¶ 38, 40-41; (2)

Defendants failed to perform their duties in a manner intended to achieve an opening date of July

1, 2009, *id.* ¶¶ 30, 48; (3) Marriott failed to act as a reasonable and prudent operator – *i.e.*,

operate the hotel in an efficient manner with the goal of achieving long-term profitability, *id.* at

2-3, ¶¶ 28, 32-33, 50-51, 54, 56-60; (4) Defendants failed to perform pre-opening marketing,

reservation, and sales activities, *id.* at 2, ¶¶ 28, 49, 54; and (5) Defendants failed to provide

adequate design and development assistance during the renovation of the Waikiki EDITION, *id.*

at 2, ¶¶ 27, 43-47, 51. Because none of these allegations raises a cognizable claim for breach of

contract, Counts One and Two should be dismissed. Moreover, because Count Five – Plaintiff's

claim for a declaration of an event of default and right to terminate the Management Agreement

– is predicated on these breach allegations, *id.* ¶¶ 84, 86, that claim should also be dismissed.

      **A.**    **Plaintiff's Allegations Do Not Derive from Actual Contractual Obligations.**

      The first three categories of Plaintiff's allegations should be dismissed because they do

not describe a breach of any actual contractual obligation. *See Rivera v. JRJ Land Prop. Corp.*,

27 A.D.3d 361, 364, 812 N.Y.S.2d 63, 65 (1st Dep't 2006) ("Since plaintiff has failed to identify

*M Waikiki v. Marriott Hotel Services,*                                          Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

an obligation set forth in the lease agreement which defendant breached, the breach of contract
claims must be dismissed.").

First, although Plaintiff asserts that Defendants breached a contractual obligation "to
operate the [Waikiki EDITION] 'as part of the EDITION Hotel System,'" Complaint ¶ 38,
Plaintiff does not and cannot allege that Marriott is not operating the Hotel as an EDITION
Hotel. Instead, Plaintiff's argument appears to be that Defendants must open some unspecified
number of additional EDITION hotels in order to qualify as a "chain." Plaintiff does not,
however, point to any contractual provision requiring Defendants to open a specified number of
EDITION hotels. In fact, no contract obligates Defendants to ensure that the "System" contains
a minimum number of hotels in a certain period of time.

Although the parties' initial agreement contemplated that the Hotel would open
unbranded and be flagged an EDITION hotel only after Marriott opened the first EDITION-
branded hotel, *see* M.A. at 2, 64, §§ 1.03(B), 12.01, the parties amended their agreement to
permit the Hotel to open under the EDITION brand. *See* Gardner Aff., Ex. D at 1. This
amendment imposed no obligation on Marriott to open another EDITION-branded hotel prior to
the opening of the Waikiki EDITION. And, in any event, Plaintiff concedes that Marriott
operates the Hotel in addition to the Istanbul EDITION, and that both properties are part of the
EDITION Hotel System. *See* Complaint ¶ 41. For these reasons, even if Plaintiff's allegations
are true, Plaintiff has not articulated any breach of a contractual obligation.

Second, Plaintiff's allegation that Defendants failed to perform their duties in a manner
intended to achieve an opening date of July 1, 2009 should be dismissed because the parties
*mutually* agreed to extend the projected opening date from July 1, 2009, to January 1, 2010. *See*

9

*M Waikiki v. Marriott Hotel Services,*                  Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Gardner Aff., Ex. B (1st Amend. at 2). This mutual agreement extinguished any obligation for Defendants to assist Plaintiff in achieving a July 2009 opening.

      Third, Plaintiff's allegation that the Hotel has not achieved performance results consistent with financial projections (Complaint ¶ 60) is expressly contradicted by the contract. There is no contractual provision guaranteeing that the Hotel will achieve a particular level of profitability (particularly less than a year after the Hotel has opened). To the contrary, the contract states that "Marriott . . . do[es] not guarantee that the Hotel will achieve the results set forth in any . . . projections, pro formas, or other similar information" that Marriott provides to Plaintiff. M.A. at 47, § 11.10. Plaintiff expressed its understanding of the lack of any such guarantee by specifically "acknowledg[ing] that . . . the actual results achieved by the Hotel are likely to vary from the estimates contained in any such projections, pro formas, or other similar information and such variations might be material." *Id.* Furthermore, although Section 2.02 of the Management Agreement permits Plaintiff to terminate the Agreement if the Hotel Operating Profit fails to meet certain thresholds, that provision does not take effect until the end of the fifth full fiscal year after the Hotel's opening. *See id.* at 11, § 2.02(A). Because the hotel has not been in operation even one full year, the provision is of no effect.

      **B.**    **Plaintiff's Claims Are Barred by Its November 16, 2010 Estoppel Certificate.**

      Four of Plaintiff's five breach allegations should be dismissed because they arise from facts and circumstances demonstrably known to Plaintiff on or before its execution of the November 16, 2010 estoppel certificate.[8] There, Plaintiff certified to Marriott that there was no continuing Default by Marriott under the TSA or Management Agreement and that no event had

---

[8] The estoppel certificate bars all of Plaintiff's allegations predating the opening of the Hotel, *i.e.*, Categories 1, 2, 4, and 5 as enumerated *supra* at page 8.

occurred that, with the giving of notice or passage of time or both, would become a Default. *See*

Gardner Aff., Ex. E at 1-2. These certifications bar Plaintiff's claims.

An estoppel certificate is "[a] signed statement by a party . . . certifying for another's

benefit that certain facts are correct, [such as] that there are no defaults." Black's Law

Dictionary 631 (9th ed. 2009). The purpose of these certificates is to "prevent the assertion of

different facts at a later date." *ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*, 570

F.3d 513, 519 (2d Cir. 2009) (quotation marks omitted); *see also K's Merch. Mart, Inc. v.*

*Northgate Ltd. P'ship*, 835 N.E.2d 965, 972 (Ill. App. Ct. 2005) ("A party who executes an

estoppel certificate should not be allowed to raise claims of which it knew or should have known

at the time the certificate was executed. A party who executes an estoppel certificate that there

are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what

claims exist."). Where an estoppel certificate is unambiguous, courts construe the certificate's

meaning and effect as a matter of law. *See Retail Brand Alliance, Inc. v. Rockvale Outlet Ctr.,*

*LP*, No. 06 Civ. 01857, 2007 WL 403885, at *3 (E.D. Pa. Jan. 31, 2007).

Consistent with the foregoing, under New York law, a party that executes an estoppel

certificate is precluded from taking any position contrary to the certificate's terms. *See JRK*

*Franklin, LLC v. 164 E. 87th Street LLC*, 27 A.D.3d 392, 392-93, 812 N.Y.S.2d 506, 506-07 (1st

Dep't 2006); *Quantum Corporate Funding Ltd. v. L.P.G. Assocs., Inc.*, 246 A.D.2d 320, 323-24,

667 N.Y.S.2d 702, 705 (1st Dep't 1998) (defendant's representation in estoppel certificate that

there would be no claims against certain accounts receivable precluded any assertion to the

contrary); *Bed 'N Bath of Spring Valley Inc. v. Spring Valley P'ship*, 185 A.D.2d 584, 585-87,

586 N.Y.S.2d 416, 417-18 (3d Dep't 1992) (plaintiff precluded from seeking fees in conflict with

*M Waikiki v. Marriott Hotel Services,*
*I.S. International, LLC, & Ian Schrager*

Index No. 651457/2011

amounts acknowledged in estoppel certificate); *Vanderbilt Holdings, LLC v. Greenpoint-Goldman Corp.*, No. 0107408/2005, 2007 WL 3234922 (N.Y. Sup. Ct. July 17, 2007).

    *JRK Franklin, LLC v. 164 East 87th Street LLC* is instructive. There, the First Department examined an estoppel certificate that stated, "[t]o the best knowledge of Ground Lessor, there is no existing default by Ground Lessee in the performance and observance of Ground Lessee's obligations under the Ground Lease," and "[t]o the best knowledge of Ground Lessor, no event has occurred which, with the giving of notice or passage of time, or both, would constitute a default by Ground Lessee under the Ground Lease." *JRK Franklin, LLC*, 27 A.D.3d at 392-93, 812 N.Y.S.2d at 507 (quotation marks omitted). Reversing the Supreme Court's decision not to enforce the certificate, the First Department explained that, as a matter of law, the Lessor "had a duty and the ability (right of entry) to investigate before voluntarily certifying an absence of any tenant lease defaults." *Id.* at 393, 812 N.Y.S.2d at 507. Having made such voluntary certifications and having agreed that the tenant was entitled to rely on those certifications, the Lessor was precluded from asserting that activity pre-existing the execution of the estoppel certificate placed the tenant in default. *See id.* The First Department therefore held that the tenant was entitled to a declaration that it was not in default under the lease. *See id.* at 392, 812 N.Y.S.2d at 506-07; *see also Vanderbilt Holdings*, 2007 WL 3234922 (holding that defendant's "execution of the Estoppel Certificate, in June 2004, bars any claim that the pre-existing violations constitute a default under the lease").[9]

---

[9] *See also Retail Brand Alliance*, 2007 WL 403885, at *3 (granting motion to dismiss counterclaim because "[t]he estoppel certification . . . bars [the counter-claimant] from attempting to collect these expenses now, since it represented that there [were] no uncured defaults by [the counter-defendant] when executing the assignment"); *Va. Highlands Assocs. v. Allen*, 330 S.E.2d 892, 896 (Ga. Ct. App. 1985) (enforcing estoppel certificate and holding "that public policy, good faith, equity and justice require that the unqualified writing executed by appellees . . . estop them from raising their novation defense"); *Piggly Wiggly of Mansfield, Inc. v. Wolpert Assocs.*, 519 So. 2d 371, 372-73 (La. Ct. App. 1988) (tenant bound by statement in estoppel certificate that there were no defaults under lease

Here, the language of Plaintiff's estoppel certificate is plain and unambiguous and should

be enforced by this Court as a matter of law. Plaintiff certified one month after the Hotel opened

that there had been no Default by Marriott, nor any event that could become a Default by the

giving of notice or the passage of time. As the First Department found in *JRK Franklin*, Plaintiff

had an *affirmative duty* to investigate any potential claims against Marriott before signing its

estoppel letter. *See* 27 A.D.3d at 393, 812 N.Y.S.2d at 507. Plaintiff thus cannot state a claim

for breach of contract based on an act or omission occurring prior to November 16, 2010. As of

that date, the pre-opening design and development was, by definition, complete; the period for

pre-opening marketing, sales, and reservations activities was, by definition, over; the original

opening date of July 1, 2009 had long-since passed; and Plaintiff plainly would have known

whether its own EDITION-branded hotel was or was not then part of a "chain" to its satisfaction.

By their very definition, these alleged omissions occurred or existed prior to the October 2010

opening of the Waikiki EDITION and thus prior to the November 16, 2010 execution of the

Estoppel Certificate. Plaintiff never identified any of these claims, and indeed affirmatively

represented that there were no defaults. The claims arising from these alleged omissions should

therefore be dismissed.[10]

### C.   Plaintiff's Claims Are Barred by Plaintiff's Failure To Provide Marriott with Contractually-Required Notice and Opportunity To Cure.

Plaintiff's failure to afford Marriott contractually-required notice and an opportunity to

cure independently renders all of Plaintiff's breach of contract claims legally deficient. It is

---

agreement); *Yee v. Weiss*, 877 P.2d 510, 512-13 (Nev. 1994) (tenant estopped from claiming constructive eviction based upon parking conditions that existed before tenant certified that there were no defaults under the lease).

[10] The specific allegations barred by the Estoppel Certificate include Plaintiff's assertions that: (1) Defendants failed to establish a chain of EDITION Hotels, Complaint ¶¶ 38, 40-41; (2) Defendants failed to provide Plaintiff with design and development assistance, *id.* at 2, failed to provide Plaintiff with final technical standards, *id.* ¶ 47, and failed to involve Ian Schrager personally in the design of the hotel, *id.* ¶¶ 27, 42-44; (3) Defendants failed to perform their contractual duties to achieve an opening date of July 1, 2009, *id.* ¶¶ 30, 48; and (4) Defendants failed to perform pre-opening marketing, reservation, and sales activities, *id.* ¶¶ 28, 49, 54.

*M Waikiki v. Marriott Hotel Services,*　　　　　　　　　　　Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

well-established that "the terms of a written agreement define the rights and obligations of the

parties to the agreement." *Abiele Contracting, Inc. v. N.Y. City Sch. Constr. Auth.*, 91 N.Y.2d 1,

9, 689 N.E.2d 864, 867, 666 N.Y.S.2d 970, 973 (1997). Accordingly, "[w]here, as here, . . .

parties have agreed to provide notice and an opportunity to cure prior to suing for performance or

asserting termination rights under a contract, those covenants must be adhered to." *Sauer v.*

*Xerox Corp.*, 17 F. Supp. 2d 193, 197 (W.D.N.Y. 1998), *aff'd* 5 F. App'x 52, 55 (2d Cir. 2001)

("When a party to a contract seeks to enforce its provisions, it must abide by the contract's

preconditions to bringing suit."); *see also Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93

Civ. 4001, 2000 WL 1006236, at *3 (S.D.N.Y. July 20, 2000). The failure to do so vitiates the

parties' rights to pursue such remedies. *See New Image Constr., Inc. v. TDR Enters., Inc.*, 74

A.D.3d 680, 681, 905 N.Y.S.2d 56, 58 (1st Dep't 2010) (concluding that contract termination

was ineffective due to lack of contractually-mandated notice to cure).[11]

　　　In this case, the parties agreed in their contract that notice and an opportunity to cure

would be preconditions not only to an Event of Default, but also to the parties' rights to sue. *See*

M.A. at 38, § 9.01(G) (requiring 30 days' notice for a "Default"); *id.* (predicating an "Event of

Default" on the failure to cure after receiving 30 days' notice). Only *after* an Event of Default

has occurred does the Management Agreement recognize a party's right to file suit or terminate

the contract. *See id.* § 9.02(A). Accordingly, neither party may institute any claims against the

other without providing notice and an opportunity to cure.

　　　Here, Plaintiff filed suit on May 26, 2011. It sent its notice of default to Marriott that

same day, and Marriott received the notice on May 27, 2011. *See* Gardner Aff., Ex. F. Marriott

---

[11] *See also Lasker-Goldman Corp. v. City of New York*, 221 A.D.2d 153, 154, 633 N.Y.S.2d 771, 771-72 (1st Dep't 1995) (dismissing breach claims for failure to provide contractually-required notice); *Point Prods. A.G.*, 2000 WL 1006236, at *3-4; *Sauer*, 5 F. App'x at 55.

*M Waikiki v. Marriott Hotel Services,*                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

was given *no* opportunity to cure. Because notice and an opportunity to cure are preconditions to

suit under the parties' agreement, Plaintiff's breach of contract claims fail as a matter of law.

*See, e.g., Sauer*, 5 F. App'x at 55.[12]

## II.   PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS FORECLOSED BY THE TERMS OF THE PARTIES' AGREEMENTS.

In its Third Cause of Action, Plaintiff alleges that the Defendants breached certain

fiduciary duties owed to Plaintiff. *See* Complaint ¶¶ 71-76. This cause of action should be

dismissed because the parties' contracts expressly disclaim a fiduciary relationship.

Under New York law, "[a] fiduciary relationship exists between two persons when one of

them is under a duty to act for or to give advice for the benefit of another upon matters within the

scope of the relation." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19, 832 N.E.2d 26,

31, 799 N.Y.S.2d 170, 175 (2005) (quotation marks omitted). The Court of Appeals has made

clear that this type of relationship "must spring from the parties themselves, who *agree to and*

*accept* the responsibilities that flow from such a contractual fiduciary bond." *Northeast Gen.*

*Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 160, 624 N.E.2d 129, 130, 604 N.Y.S.2d

1, 2 (1993) (emphasis added). In assessing whether the relationship between parties to a contract

is fiduciary in nature, courts look to the terms of the contractual agreement. *See EBC I, Inc.*, 5

N.Y.3d at 19-20, 832 N.E.2d at 31, 799 N.Y.S.2d at 175; *Northeast Gen. Corp.*, 82 N.Y.2d at

160, 162, 624 N.E.2d at 130, 131, 604 N.Y.S.2d at 3 (describing "cognizable fiduciary terms" as

those indicating that a party is an "agent, partner or coventurer" of another). As the Court of

---

[12] While a party need not provide notice and opportunity to cure where doing so would be futile, that exceedingly narrow exception is reserved for instances "where the non-performing party (1) expressly repudiates the parties' contract, . . . or (2) abandons performance thereunder." *Point Prods. A.G.*, 2000 WL 1006236, at *4 (internal citations omitted). As Marriott is continuing to operate the Hotel, any such argument fails as a matter of law. *See id.* (rejecting futility claim where defendant "proffered no evidence upon which to find that [plaintiff] deliberately abandoned or repudiated the Agreement").

*M Waikiki v. Marriott Hotel Services,*                                         Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Appeals has cautioned, if parties "do not create their own relationship of higher trust, courts

should not ordinarily transport them to the higher realm of relationship and fashion the stricter

duty for them." *Northeast Gen. Corp.*, 82 N.Y.2d at 162, 624 N.E.2d at 131, 604 N.Y.S.2d at 3.

Here, Plaintiff alleges that Defendants' fiduciary obligations flow from an agency and/or

confidential relationship. *See* Complaint ¶ 72. To prove such a relationship, Plaintiff must

demonstrate that there has been a "manifestation of consent by [it] to [Defendants] that

[Defendants] shall act on [its] behalf and subject to [its] control, and the consent by [Defendants]

to act." *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir.

2001) (quotation marks omitted); *see also Pensee Assocs., Ltd. v. Quon Indus., Ltd.*, 241 A.D.2d

354, 359, 660 N.Y.S.2d 563, 566-67 (1st Dep't 1997); *Restatement (Second) of Agency* § 1 cmt.

b (1958) (observing that an "agency relation results if, but only if, there is an understanding

between the parties which, as interpreted by the court, creates a fiduciary relation in which the

fiduciary is subject to the directions of the one on whose account he acts"). Given the terms of

the parties' contracts, Plaintiff is unable to make such a showing as a matter of law.

In Section 9.4 of the TSA, the parties agreed that the Defendants "shall each act *solely* as

an independent contractor." TSA at 27, § 9.4 (emphasis added). The parties further agreed that

"[n]either th[e TSA] nor any agreements, instruments, documents, or transactions contemplated

[t]hereby shall in any respect be interpreted, deemed or construed as making any party a partner,

joint venturer with, or agent of, any other party." *Id.* Finally, all parties agreed that they would

not argue otherwise. *Id.*

The parties made similar covenants in Section 11.03 of the Management Agreement. *See*

M.A. at 43-44, § 11.03. That provision states that Marriott will act *solely* as an independent

contractor in its performance of the Agreement; that the Agreement *will not* be interpreted or

16

construed to make Marriott a partner, joint venturer with, or agent of the Plaintiff; and that *neither party* will argue otherwise in any legal proceeding in which the parties are involved. *See id.* The provision further provides that Marriott "shall be deemed a fiduciary *solely* with respect to any funds held by it in the Operating Accounts, the FF&E Reserve or any other funds held by [it] or its affiliates for [Plaintiff]." *Id.* (emphasis added).

Any doubt that the parties knew how to express the nature of their legal relationship is dispelled by their express agreement that Marriott would be a fiduciary "solely" with respect to certain funds held for Plaintiff. Not only did the parties express their intent to establish a fiduciary relationship only in that one limited context, but their use of the word "solely" plainly establishes that they did not intend a fiduciary relationship in any other context. A court should not impose extra-contractual fiduciary duties where the parties clearly knew how to contract for fiduciary duties and did so in only one limited respect. *See, e.g., Trump v. Corcoran Group, Inc.,* 240 A.D.2d 159, 159, 657 N.Y.S.2d 701, 702 (1st Dep't 1997) ("Had these sophisticated parties wanted a fiduciary-like relationship, they could have bargained for and spelled it out in their agreements."); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1374 (7th Cir. 1990) ("This provision made Olympia the agent of Racine, all right, but only with regard to the management of bank accounts. The agency was a part of Olympia's contractual undertaking; it was not the whole of it. . . . We decline the invitation to recast hotel contract managers as trustees or guardians of hotel owners, other than in the performance of financial functions in which the manager is exercising a traditional fiduciary role, such as the management of bank accounts." (internal citation omitted)).

In light of the foregoing, the parties' contracts unambiguously disclaim any agency or other fiduciary relationship, except insofar as Marriott holds funds belonging to Plaintiff.

*M Waikiki v. Marriott Hotel Services,*                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Because none of Plaintiff's allegations assert breach of a fiduciary obligation with respect to

those funds, Plaintiff's claim for breach of fiduciary duty should be dismissed. *See CIBC Bank*

*& Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138, 139, 704 N.Y.S.2d 574, 575

(1st Dep't 2000) (dismissing breach of fiduciary duty claim because it was "flatly contradicted

by the parties' contracts in which each represented to the other that 'it is a sophisticated

institutional investor' that 'has acted in the capacity of an arm's-length contractual counterparty

and not as [the other's] financial advisor or fiduciary'" (alteration in original)); *Madison 92nd*

*Street Assocs., LLC v. Courtyard Mgmt. Corp.*, No. 602762/09, slip op. at 7-9 (N.Y. Sup. Ct.

July 13, 2010) (dismissing breach of fiduciary duty claim based on contractual language nearly

identical to the TSA and Management Agreement provisions at issue); *JPMorgan Chase Bank,*

*N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 920 N.Y.S.2d 241, 2010 WL

4868142, at *10 (N.Y. Sup. Ct. 2010) (unpublished table decision) (holding that "no defense of,

or claim for, breach of fiduciary duty will lie" where the contract "specifically disclaims a

fiduciary relationship"); *AJW Partners, LLC v. Cyberlux Corp.*, 873 N.Y.S.2d 231, 2008 WL

4514171, at *3 (N.Y. Sup. Ct. 2008) (unpublished table decision) (dismissing breach of fiduciary

duty claim where "the plain contractual language disavow[ed] a fiduciary relationship").[13]

   *Madison 92nd Street Associates, LLC v. Courtyard Management Corp.* is especially

illustrative.  In that case, Justice Kapnick parsed the effect of a disclaimer materially identical to

the disclaimers contained in the TSA and Management Agreement.  *See Madison 92nd Street*

---

[13] *See also HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*, 737 F. Supp. 2d 533, 549-50 (E.D. Va. 2010) (holding that an operator owes no fiduciary duty to an owner where the controlling management agreement "makes no reference to a fiduciary duty" and "expressly limits [the operator's] relationship to [the owner] as one of an independent contractor and not one of agency"); *Castillo Grand LLC v. Sheraton Operating Corp.*, No. 06 Civ. 5526, 2009 WL 2001441, at *9 (S.D.N.Y. July 9, 2009) (finding that hotel operator owed no fiduciary duty to hotel owner where management contract stated that the parties were "not joint venturers, partners, or joint owners"); *Town Park Hotel Corp. v. Priskos Investments, Inc.*, No. 02 Civ. 164, 2006 WL 658896, at *6 (D. Utah Mar. 14, 2006) (concluding that hotel operator owed no fiduciary duty to hotel owner where parties "were commercial entities who engaged in an arm's length transaction").

*M Waikiki v. Marriott Hotel Services,*                                  Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

*Assocs., LLC*, No. 602762/09, slip op. at 8.[14]  Although plaintiff argued that the parties' ongoing

course of conduct, plaintiff's "entrustment of the Hotel to defendant[,] and defendant's

supervision of the day-to-day executive, operational, and financial affairs of the Hotel render[ed]

[defendant] a fiduciary," Justice Kapnick concluded that "the Management Agreement was the

result of an arm's-length relationship between sophisticated business entities after negotiations

and the parties clearly chose not to contract for a fiduciary relationship." *Id.* at 9.  Accordingly,

Justice Kapnick dismissed plaintiff's breach of fiduciary duty claim.

      No different outcome is warranted here.  The parties are sophisticated entities that entered

into an arm's length business transaction, and Plaintiff does not allege otherwise.  Although

Plaintiff could have bargained for an agency relationship, it chose not to do so.  Indeed, it

explicitly denied the existence of such a relationship and waived its right to make any argument

to the contrary.  Having failed to create a relationship of higher trust, Plaintiff cannot now look

to the courts to do so for it.  *See Northeast Gen. Corp.*, 82 N.Y.2d at 162, 624 N.E.2d at 131, 604

N.Y.S.2d at 3.  Count Three for breach of fiduciary duty should therefore be dismissed.[15]

## III.   PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM FAILS AS A MATTER OF LAW.

      In its fourth cause of action, Plaintiff alleges that Defendants are liable for negligent

misrepresentation because they made various statements that they should have known were false

and Plaintiff relied on those statements to its detriment.  *See* Complaint ¶¶ 77-82.  This claim

should be dismissed because (1) it is improperly duplicative of Plaintiff's breach of contract

claims; (2) Plaintiff has failed adequately to allege a special relationship between the parties; (3)

---

[14] Justice Kapnick's order is attached as Exhibit H to the Gardner Affirmation

[15] Even assuming a fiduciary duty exists, Plaintiff's claim should be dismissed because Plaintiff has failed to allege that Marriott *breached* a fiduciary duty owed to Plaintiff.  A conclusory allegation to that effect, with nothing more, fails to state a claim.  *See Stoller v. Factor*, 272 A.D.2d 83, 83, 714 N.Y.S.2d 667, 667 (1st Dep't 2000).

*M Waikiki v. Marriott Hotel Services,*                                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

the claim arises from non-actionable statements of future expectation; and (4) any reliance by

Plaintiff on the challenged representations was unreasonable as a matter of law.

### A.      Plaintiff's Negligent Misrepresentation Claim Is Duplicative of Its Breach of Contract Claims and Should Therefore Be Dismissed.

Plaintiff's fourth cause of action simply recasts its breach of contract claims as a tort.

New York courts have made clear that this practice is impermissible. *See Silletti v. Display*

*Workshop, Inc.*, 791 N.Y.S.2d 874, 2004 WL 1433185, at *2 (N.Y. Sup. Ct. 2004) (unpublished

table decision) (denying leave to amend where plaintiff sought to assert a tort claim that

"appear[ed] part and parcel of the contract or at least traceable and related to the contract"); *see*

*also U.S. for Use and Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr.*

*Corp.*, 95 F.3d 153, 162 (2d Cir. 1996) ("[W]e do not think that the restrictions upon damages

for breach of contract claims can be avoided merely by recasting the breach as a tort.").

Accordingly, a negligent misrepresentation claim "predicated upon precisely the same

purported wrongful conduct as . . . [a] claim for breach of contract" must be dismissed as

duplicative of the breach of contract claim. *OP Solutions, Inc. v. Crowell & Moring, LLP*, 72

A.D.3d 622, 622, 900 N.Y.S.2d 48, 49 (1st Dep't 2010); *see also Moustakis v. Christie's, Inc.*,

68 A.D.3d 637, 637, 892 N.Y.S.2d 83, 84 (1st Dep't 2009) (affirming dismissal because "there is

no pleading of the breach of a duty separate and apart from the contractual obligation owed to

plaintiff" where "[t]he allegations of . . . negligent misrepresentation are virtually identical to

those upon which the causes of action for breach of contract and breach of warranty rest");

*Stewart v. Maitland*, 39 A.D.3d 319, 319, 835 N.Y.S.2d 39, 40 (1st Dep't 2007) (affirming

dismissal of duplicative negligent misrepresentation claim).

Here, there is no material difference between Plaintiff's allegations asserting breach of

contract and its allegations asserting negligent misrepresentation.  In its first and second causes

*M Waikiki v. Marriott Hotel Services,*
*I.S. International, LLC, & Ian Schrager*

Index No. 651457/2011

of action, Plaintiff alleges that Defendants breached their contractual obligations to establish a

chain of luxury lifestyle hotels under the EDITION brand name, *see* Complaint ¶¶ 38, 40; to

involve Ian Schrager personally in the design of the Waikiki EDITION, *see id.* ¶¶ 27, 43; and to

perform in accordance with Defendants' projections, *see id.* ¶¶ 57, 58, 60.  In its fourth cause of

action, Plaintiff asserts that Defendants made false statements concerning the development of the

EDITION brand, *see, e.g., id.* at 1-2, ¶¶ 18, 20, 24; misrepresented the extent to which Ian

Schrager would be personally involved in the design of the Hotel, *id.* ¶ 25; and misrepresented

the extent to which the Hotel would be profitable, *see, e.g., id.* ¶¶ 22, 59.  Because these

allegations are duplicative, Count Four should be dismissed.

**B.      Plaintiff Has Not Adequately Alleged a Special Relationship Between the
Parties.**

"A claim for negligent misrepresentation can only stand where there is a special

relationship of trust or confidence, which creates a duty for one party to impart correct

information to another, the information given was false, and there was reasonable reliance upon

the information given." *Hudson River Club v. Consol. Edison Co. of N.Y., Inc.,* 275 A.D.2d 218,

220, 712 N.Y.S.2d 104, 106 (1st Dep't 2000); *see also Mandarin Trading Ltd. v. Wildenstein,* 16

N.Y.3d 173, 180, 944 N.E.2d 1104, 1109, 919 N.Y.S.2d 465, 470 (2011).  As a general rule, "the

requisite 'special relationship' does not exist between sophisticated commercial entities that

enter into an agreement through an arm's-length business transaction." *Pacnet Network Ltd. v.*

*KDDI Corp.,* 901 N.Y.S.2d 908, 2009 WL 2999200, at *3 (N.Y. Sup. Ct. 2009) (unpublished

table decision), *aff'd* 78 A.D.3d 478, 912 N.Y.S.2d 178 (1st Dep't 2010); *see also Fleet Bank v.*

*Pine Knoll Corp.,* 290 A.D.2d 792, 795, 736 N.Y.S.2d 737, 741 (3d Dep't 2002) ("[A] special

relationship requires a closer degree of trust than an ordinary business relationship." (quotation

marks omitted)).

21

*M Waikiki v. Marriott Hotel Services,*          Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Plaintiff does not allege that the parties enjoyed any special relationship other than the

"confidential and/or agency relationship" that it contends also gives rise to a fiduciary duty.

*E.g.*, Complaint ¶ 29. For the reasons previously stated, that assertion fails as a matter of law.

*See supra* Part II. Plaintiff therefore fails to state a claim for negligent misrepresentation. *See*

*H&R Project Assocs., Inc.*, 289 A.D.2d at 968, 737 N.Y.S.2d at 715 (dismissing claim for lack of

a special relationship where "nothing more than an ordinary business relationship existed

between plaintiff and [defendants]"); *Schonfeld v. Thompson*, 243 A.D.2d 343, 343, 663

N.Y.S.2d 166, 167 (1st Dep't 1997) (dismissing claim "since there were no fiduciary or

confidential relationships emanating from this arm's length business transaction.").

**C.    Plaintiff's Negligent Misrepresentation Claim Arising from Statements of Future Expectation Should Be Dismissed.**

Plaintiff's negligent misrepresentation claim should also be dismissed because the alleged

misrepresentations are nothing more than statements of future expectations that, as a matter of

law, are not tortious.

Plaintiff alleges that Defendants made negligent misrepresentations by providing Plaintiff

with financial projections for the Hotel. *See, e.g.*, Complaint ¶ 22. Under New York law, these

are statements that express "opinions of value or future expectations," which cannot support a

claim for negligent misrepresentation. *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 74, 709

N.Y.S.2d 74, 75 (1st Dep't 2000); *see also 88 Blue Corp. v. Staten Builders Co.*, 176 A.D.2d

536, 538, 575 N.Y.S.2d 11, 13 (1st Dep't 1991) (describing "expressions of future expectations,"

unlike statements of existing fact, as "non-actionable"). In particular, "promises as to anticipated

profits are generally not actionable as fraud, since these statements are understood to be mere

predictions and not statements to be relied upon." *L.H.P. Realty Co. v. Rich*, No. 601537/00,

2001 WL 1537744, at *2 (N.Y. Sup. Ct. Aug. 28, 2001). Furthermore, an "allegation that

*M Waikiki v. Marriott Hotel Services,*                                          Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

defendant[s] knew [a] performance prediction was false is indefinite and conclusory, and

therefore not actionable, absent allegations that the prediction was contradicted by a concrete,

existing fact that defendant[s] either intentionally failed to disclose or negligently failed to

discover." *Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 479, 912 N.Y.S.2d 178, 180 (1st

Dep't 2010). Under these precedents, Plaintiff's allegations regarding future profitability are

non-actionable.

Nor has Plaintiff stated an actionable claim related to Defendants' representations about

the number of deals in place for EDITION hotels. *See, e.g.*, Complaint at 1-2; *id.* ¶¶ 18, 20, 24.

While Plaintiff alleges that Defendants represented at the time of contract that they had

agreements in place to open nine EDITION hotels, Complaint at 2, ¶ 20, and further alleges that

only two EDITION hotels have opened to date, *id.* ¶ 41, Plaintiff does not – and cannot – allege

that Defendants' statement about its then-existing agreements was "contradicted by a concrete,

existing fact that [Defendants] either intentionally failed to disclose or negligently failed to

discover." *Pacnet Network Ltd.*, 78 A.D.3d at 479, 912 N.Y.S.2d at 180. Agreements to develop

hotels sometimes fall through, whether because of global economic conditions or an owner's

change of heart. This turn of events does not render statements that were true when made

somehow tortious. Accordingly, Plaintiff's allegation that Defendants made a negligent

misrepresentation about agreements to develop EDITION hotels is "indefinite and conclusory,

and therefore not actionable" under New York law. *Id.* Because Plaintiff has not alleged any

actionable facts constituting negligent misrepresentation, its claim should be dismissed.

*M Waikiki v. Marriott Hotel Services,*                                      Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

**D.    Any Reliance By Plaintiff on Marriott's Projections of Future Performance
       Was Unreasonable as a Matter of Law.**

Even assuming Defendants' representations concerning the Hotel's future performance

constitute actionable statements of existing fact, they cannot support Plaintiff's negligent

misrepresentation claim because any reliance on them was unreasonable as a matter of law.

In Section 11.10 of the Management Agreement, Plaintiff "acknowledge[d]" that any

financial projections or pro formas provided by Marriott are "for information purposes only" and

that Marriott "*do[es] not guarantee that the Hotel will achieve the results* set forth in any such

projections [or] pro formas . . . ." M.A. at 47, § 11.10 (emphasis added). Plaintiff "further

acknowledge[d]" that because such projections are merely estimates, "*the actual results achieved

by the Hotel are likely to vary from the estimates contained in any such projections, pro formas,

or other similar information and such variations might be material." Id.* (emphasis added). This

provision not only establishes that Marriott's projections are provided for information purposes

only, but also disclaims any guarantee that the Hotel will meet those projections.

Under these circumstances, any contention by Plaintiff – a sophisticated business entity –

that it reasonably relied on Marriott's projections in executing and/or performing under the TSA

and Management Agreement "is belied by the specific terms of the agreements." *Republic Nat'l

Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999) (concluding that defendant's claim of

reasonable reliance was foreclosed by contractual provisions contradicting the oral

representations upon which defendant purportedly relied), *aff'd* 4 F. App'x 15 (2d Cir. 2001); *se

also Casano v. New 19 W. LLC*, 920 N.Y.S.2d 240, 2010 WL 4630269, at *5 (N.Y. Sup. Ct.

2010) (unpublished table decision) (finding reliance unjustifiable based on contract). As Justice

Kapnick noted in *Madison 92nd Street Associates, LLC*, plaintiff "cannot establish reasonable

reliance" upon allegedly false projections "since plaintiff acknowledged in § 11.10 of the

*M Waikiki v. Marriott Hotel Services,*                                    Index No. 651457/2011
*I.S. International, LLC, & Ian Schrager*

Management Agreement that 'any written or oral projections, . . . or other similar information . . .

provided by Marriott . . . is for information purposes only' and Marriott does 'not guarantee that

the Hotel will achieve the results set forth' therein." *Madison 92nd Street Assocs., LLC v.*

*Courtyard Mgmt. Corp.*, No. 602762/09, slip op. at 11.  Dismissal is therefore appropriate.[16]

## CONCLUSION

For the foregoing reasons, Marriott's motion to dismiss should be granted and Plaintiff's

Complaint should be dismissed in its entirety.

Respectfully submitted,

Dated:  New York, New York                   JENNER & BLOCK LLP
        August 1, 2011
                                             By:

                                             Richard F. Ziegler
                                             Brian J. Fischer
                                             Colleen A. Harrison
                                             919 Third Avenue, 37th Floor
                                             New York, New York 10022
                                             Telephone:  (212) 891-1600
                                             Fax: (212) 891-1699

                                             David A. Handzo (pro hac application
                                                 forthcoming)
                                             Michael B. DeSanctis
                                             Lindsay C. Harrison (pro hac application
                                                 forthcoming)
                                             Kelly D. Gardner
                                             1099 New York Avenue, NW, Suite 900
                                             Washington, DC 20001
                                             Telephone: (202) 639-6000
                                             Fax: (202) 661-4956

---

[16] *See Greater N.Y. Mut. Ins. Co. v. White Knight Restoration, Ltd.*, 7 A.D.3d 292, 293, 776 N.Y.S.2d 257, 258 (1st Dep't 2004) (affirming dismissal where disclaimer rendered reliance unreasonable); *Prestige Foods, Inc. v. Whale Sec. Co., L.P.*, 243 A.D.2d 281, 282, 663 N.Y.S.2d 14, 15 (1st Dep't 1997) (affirming dismissal where contracts "[f]latly contradict[ed]" claim of reasonable reliance); *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d at 74, 709 N.Y.S.2d at 75 (dismissing claim where purported misrepresentations were "contradicted by the written agreement").